**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

ROBERT J ANDRIS, and
AVONDALE DÉCOR, LLC,

Plaintiffs,

v.

CAPITAL SOLUTIONS BANCORP, LLC,

Defendant.

Case No.

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Avondale Décor LLC and Robert J. Andris, by and through the undersigned counsel, file this Complaint against Defendant Capital Solutions Bancorp, LLC, and state as follows:

**PARTIES**

1. Plaintiff Robert Andris ("Andris") is a natural person and a resident of the state of Virginia.

2. Plaintiff Avondale Décor, LLC ("Avondale") is a corporation that is incorporated in Virginia and has its principal place of business in Virginia.

3. Defendant Capital Solutions Bancorp, LLC ("Capital Solutions") is a Florida limited liability company with its principal address in Fort Myers, Florida.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the Defendant, as a resident of Florida, is subject to the personal jurisdiction of this district and a substantial part of the events giving rise to the claim occurred in this district.

6. All conditions precedent to the bringing of this action have either been performed or they have been waived.

## FACTS

### I. Background

7. Avondale is a company that designs and manufactures a variety of home décor.

8. Capital Solutions is a company that provides financing to other companies using loans and factoring agreements.

### II. The Loan Agreement

9. On February 12, 2019, Avondale, through Andris and his sister, and Capital Solutions agreed to the Accounts Receivable Purchase Agreement (the "Loan Agreement"). *See* Loan Agreement, **Exhibit 1.**

10. The parties attempted to describe the Loan Agreement as a factoring agreement accompanied by a personal guaranty in an attempt to disguise the true nature of the Loan Agreement.

11. Under the Loan Agreement, Avondale would receive an advanced amount in exchange for transferring its accounts receivable to Capital Solutions, which would receive the full amount of its investment in return upon maturity of the receivables. *See* **Ex. 1**, p. 4.

12. As part of the Loan Agreement, Capital Solutions would reserve 20% of the face value, which could be charged against by Capital Solutions if any account debtors were insolvent or otherwise were in default. *See* **Ex. 1**, p. 5-6.

13. Additionally, Avondale would be charged a service charge of 0.77% of the face amount of the purchased account every week until the date the purchased account is closed. *See* **Ex. 1**, p. 23.

14. The Loan Agreement defines a "week" as the general seven-day period. *See* **Ex. 1**, p. 23.

15. Therefore, if the account was closed on day four or five of a week, the fee is charged just the same as if the account was closed on day one. *See id.*

16. The service charge of 0.77% was applied to the face amount of the invoice, despite twenty percent of the face amount being reserved by Capital Solutions.

17. Therefore, a service charge of 0.77% applied to the face amount, of which Avondale only receives 80%, is equal to an APR of 50.05%.

18. Further, depending on the timing of the repayment of the advanced funds and when in the "week" the account is closed, the interest rate could be even higher. *See id.*

19. Even if the service charge of 0.77% was applied to the amount advanced to Avondale, the service charge would be equal to no less than an APR of 40.4%.

20. Upon information and belief, Capital Solutions knew that the interest rate charged weekly would far exceed the maximum interest rate for non-usurious loans.

21. Avondale was also responsible for repurchasing any accounts on demand by Capital Solutions. *See* **Ex. 1**, p. 7.

22. Additionally, under the Loan Agreement, Capital Solutions would reserve 20% of the face value, which could be charged against by Capital Solutions if any account debtors were insolvent or otherwise were in default. *See* **Ex. 1**, p. 5-6.

23. Within the Loan Agreement, Robert Andris ("Andris") agreed with Capital Solutions to an Individual Guaranty and Security Agreement ("Guaranty Clauses"). *See* **Ex. 1**, p. 27.

24. Under the Guaranty Clauses, Andris was personally obligated to guarantee the payment of any accounts receivable in the case of any default. *See id*, p. 28.

25. Specifically, the Guaranty Clauses provided that:

> Guarantor unconditionally and irrevocably guarantees to [Capital Solutions] the prompt payment and performance of the Guaranteed Obligations whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, ***this being a guaranty of payment*** and not a guaranty of collection.

**Ex. 1**, p. 27.

26. As defined in the Guaranty Clauses, "Guaranteed Obligations" is defined as:

> All present and future obligations of [Avondale] to [Capital Solutions], including but not limited to obligations arising out of the Credit Documents including fees and other compensation to be paid to [Capital Solutions], that, but for the filing of a petition under the Bankruptcy Code with respect to [Avondale], would have accrued on any such obligations, and attorneys' fees.

**Ex. 1**, p. 28.

27. Therefore, Capital Solutions did not bear an actual or speculative risk of non-payment and complete loss.

28. Under the Loan Agreement, Avondale, as the seller, bore substantially all, if not all, the risk of loss, as Capital Solutions has near full recourse against Avondale and its owners whenever there is any loss, whether by Andris' personal guaranty or Capital Solutions' ability to charge against the reserves.

29. Accordingly, the Loan Agreement is subject to usury laws.

30. On April 20, 2020, Avondale and Capital Solutions agreed to the Second Amendment to the Loan Agreement. *See* Second Amendment, **Exhibit 2.**

31. Under the Second Amendment, which was applied retroactively, Avondale was required to repurchase any account, at the value of the unpaid face amount of the account at Capital Solutions' demand. *See* **Ex. 2**, p. 2.

32. On January 1, 2022, Avondale and Capital Solutions agreed to the Third Amendment to the Loan Agreement. *See* Third Amendment, **Exhibit 3.**

33. The Third Amendment added a monthly inflation adjustment, which adjusted the service charge based on changes to the Consumer Price Index. *See id.*

34. To date, Avondale has already transferred Capital Solutions $13,883,951.50 in invoices "purchased" and incurred $1,256,964.00 in total interest from service fees, despite several of these invoices being paid within no more than a couple of months.

## III. Overcharging of Service Charge

35. According to the Loan Agreement, the "service charge" was calculated by multiplying 0.77% by the "face amount" of a purchased account. *See* **Ex. 1**, p. 23.

36. The Loan Agreement defines "face amount" as the amount due on an Account at the time of purchase. *See* **Ex. 1**, p. 21.

37. Capital Solutions regularly discounted the face value of the invoice when calculating the amount to advance, to account for any expected chargebacks from retailers.

38. The result of these discounts is a lower face amount for each account. *See* **Ex. 1**, p. 21.

39. Capital Solutions regularly used the lower face amount to calculate the amount advanced to Avondale.

40. However, Capital Solutions, when determining the service charge, regularly calculated the service charge using the undiscounted face amount, resulting in frequent overcharged service fees, based on otherwise disregarded face values.

41. Over the course of the Loan Agreement, Capital Solutions has overcharged Avondale to a total amount of $354,113.56.

## IV. Secured Promissory Note

42. By September 2023, Avondale and Capital Solutions no longer wished to continue further invoice transactions.

43. On September 19, 2023, Avondale and Capital Solutions agreed to the Secured Promissory Note, where Avondale would pay the outstanding balance on all pending invoices. *See* Promissory Note, **Exhibit 4.**

44. Under the Promissory Note, Avondale would pay a total balance of $657,540.00. *See* **Ex. 4.**

45. In a payment schedule provided by Capital Solutions to Avondale, Capital Solutions divided the total balance into separate balances of principal and interest. *See* Loan Schedule, **Exhibit 5.**

46. Specifically, in the payment schedule, Capital Solutions designated $267,540.00 as scheduled interest on the $390,000.00 principal. *See* **Ex. 5.**

47. Further, the payment schedule specifically designates the arrangement on Capital Solutions' asset list as a loan. *See* **Ex. 5.**

48. On September 6, 2024, Avondale and Capital Solutions agreed to the First Amendment to the Promissory Note, reducing payments during September, October, and November of 2024 to $4,000 per week. *See* Note Amendment, **Exhibit 6.**

49. To date, Avondale has paid $515,902.00 of the total owed under the Promissory Note, including $199,519.06 in interest payments. *See* **Ex. 5.**

**COUNT I**
**CRIMINAL USURY**

50. Plaintiff incorporates and re-alleges paragraphs 1 through 49 above, as though fully set forth herein.

51. Under Florida Law, a loan for over $500,000 is usurious, and therefore unlawful, if it charges an interest rate "exceeding 25 percent per annum." § 687.071(2), Fla. Stat.

52. Avondale and Capital Solutions agreed to the Loan Agreement with the intent for the agreement to serve as a loan rather than a sale.

53. In reaching the Loan Agreement, the parties always intended that Capital Solutions would receive full compensation for the advancements provided to Avondale.

54. To ensure this, Capital Solutions reserved twenty percent of the value of the invoice, as money that could be reached by Capital Solutions in the event of default by a debtor. *See* **Ex. 1**, p. 5-6.

55. The only risk that Capital Solutions hypothetically could bear under the Loan Agreement was the risk of insolvency of a debtor, however, the Guaranty Clauses required Andris to personally guarantee the payments due to Capital Solutions. *See* **Ex. 1**.

56. Further under the Second Amendment, Avondale was required to repurchase, at the amount of the unpaid face amount of the account, any unpaid fees on demand by Capital Solutions. *See* **Ex. 2**.

57. Therefore, Capital Solutions did not bear any actual or speculative risk of non-payment and complete loss, regardless of insolvency.

58. Among the terms of the Loan Agreement was a "service charge" charged to Avondale of 0.77% of the face amount of the receivables every week. *See* **Ex. 1**, p. 23

59. The weekly service charge was intended by the parties to act as an interest rate, rather than as a bona fide cost of the transaction.

60. In the Promissory Note, which the parties agreed to in order to settle Avondale's outstanding balance under the Loan Agreement, Capital Solutions recognized $267,540 of Avondale's outstanding balance as interest accumulated, from the service charge, on the $390,000 principal. *See* **Ex. 5.**

61. If the service charge was applied to the amount advanced to Avondale, without the amount reserved, the service charge is equivalent to an APR of 50.05%.

62. Even if the service charge was applied to the total face value, which Avondale would only receive 80% at most, it would still be equivalent to an APR of 40.04%, well above the limit for non-usurious loans.

63. Depending on the timing of the account closure, and when in the "week" it occurred, the interest can be even higher, due to the Loan Agreement's restrictive definition of a "week" for purposes of calculating the service charge. *See* **Ex. 1**, p. 23.

64. Accordingly, the Loan Agreement charged an interest rate above the twenty-five percent per annum limit for non-usurious transactions with a value greater than $500,000. *See* § 687.0071(2).

65. At all relevant times, Capital Solutions knowingly acted, with corrupt intent, to charge Avondale a usurious rate of interest in the Loan Agreement.

66. As a result of the usurious agreement, Avondale has suffered damages, including money spent on the usurious interest and lost business opportunities as a result of its direct lost wages.

WHEREFORE, Plaintiffs Avondale Décor, LLC and Robert Andris demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

67. Plaintiff incorporates and realleges paragraphs 1 through 49 above, as though fully set forth herein.

68. On February 12, 2019, Avondale and Capital Solutions agreed to the subject Loan Agreement.

69. Under the Loan Agreement, Avondale would be charged a service charge of 0.77% of the face amount of the purchased account upon closure of the account. *See* **Ex. 1**, p. 23.

70. The face amount is defined in the Loan Agreement as the amount due on an Account at the time of purchase. *See* **Ex. 1**, p. 21.

71. To account for any chargebacks from retailers, Capital Solutions regularly discounted the face value of the invoice, resulting in a lower face amount.

72. Pursuant to the Loan Agreement, Capital Solutions used the discounted face amount when calculating the amount advanced to Avondale.

73. However, in breach of the Loan Agreement's explicit formula for calculating the service charge, Capital Solutions calculated the service charge using the original undiscounted face amount, which was no longer being used.

74. As a result of Capital Solutions' breach of the Loan Agreement's terms regarding the calculation of the service charge, Avondale has suffered damages, being overcharged $354,113.56 throughout the term of the Loan Agreement.

WHEREFORE, Plaintiffs Avondale Décor, LLC and Robert Andris demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT III
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## (Fla. Stat. § 501.201 et seq.)

75. Plaintiff incorporates and realleges paragraphs 1 through 49 as though fully set forth herein.

76. This is an action for actual damages pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

77. The purpose of this act is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

78. A *per se* violation of FDUTPA stems from the transgression of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices." *Blair v. Wachovia Mortg. Corp.*, No. 11-cv-566-Oc-37TBS, 2012 U.S. Dist. LEXIS 33941, at *3 (M.D. Fla. Mar. 14, 2012).

79. Avondale is a "consumer" under FDUTPA. *See* § 501.203(7), Fla. Stat.

80. At all times pertinent to the bringing of this action, Capital Solutions was engaged in "trade or commerce," as defined by FDUTPA. *See* § 501.203(8).

81. Therefore, FDUTPA imposes a duty on Capital Solutions to refrain from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat.

82. Capital Solutions engaged in unconscionable and unfair methods when it charged interest rates higher than the legal limit for non-usurious loans established in Fla. Stat. § 687.03(1).

83. Additionally, Capital Solutions engaged in unconscionable and unfair methods when it disguised an otherwise usurious interest rate as a weekly "service charge" to avoid liability under Florida's usury laws. *See* **Ex. 1**, p. 23.

84. Finally, Capital Solutions engaged in unconscionable and unfair methods when it calculated the service fee using the original face amount of the invoice, rather than the discounted value used to calculate advancements made to Avondale.

85. As a result of these unfair and unconscionable acts, Capital Solutions has caused Avondale to suffer damages, with Avondale having spent $1,256,964 in usurious interest payments, being overcharged $354,113.56 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.

86. "In any civil litigation resulting from an act or practice involving a violation of [FDUTPA] . . . the prevailing party . . . may receive his or her reasonable attorney's fees and costs from the nonprevailing party." § 501.2105(1), Fla. Stat.

WHEREFORE, Plaintiffs Avondale Décor, LLC and Robert Andris demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

**<u>COUNT IV</u>**
**UNJUST ENRICHMENT**
*(Plead in the Alternative)*

87. Plaintiff incorporates and realleges paragraphs 1 through 49 above, as though fully set forth herein.

88. Florida law recognizes a claim for unjust enrichment when: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2002) (internal quotations omitted).

89. Avondale conferred a benefit to Capital Solutions when it transferred it $13,883,951.50 in invoices "purchased," and spent $1,256,964 in interest payments.

90. Capital Solutions voluntarily accepted the benefit of the total $15,140,915 in invoices and interest paid.

91. However, Capital Solutions has charged an unlawful, usurious interest rate on the invoices and has purposefully miscalculated the interest rate to maximize its gain to the detriment of Avondale.

92. Accordingly, the circumstances of this case are such that it would be inequitable for Capital Solutions to retain the benefit of the total $15,140,915 received from Avondale.

WHEREFORE, Plaintiffs Avondale Décor, LLC and Robert Andris demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

**COUNT V**
**INJUNCTIVE RELIEF**

93. Plaintiff incorporates and realleges paragraphs 1 through 49 above, as though fully set forth herein.

94. As of the filing of this Complaint, Capital Solutions is continuing to enforce both the Loan Agreement and the accompanying Promissory Note. *See* **Ex. 5.**

95. In enforcing the agreements, Capital Solutions is continuing to charge Avondale usurious interest rates.

96. Capital Solutions' actions have caused Avondale to suffer damages, including lost income, additional expenses, and missed financial opportunities.

97. As a result of the lost wages and missed opportunities, Avondale is in danger of insolvency.

98. Therefore, an injunction barring Capital Solutions from enforcing the Loan Agreement and the Promissory Note is necessary to protect Avondale from the irreparable danger of pending potential insolvency.

WHEREFORE, Plaintiff Robert Andris and Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) an injunction barring Capital Solutions from continued enforcement of the Loan Agreement and Promissory Note; (b) costs, interest, and reasonable attorney's fees; and (c) all other relief that this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands trial by jury of all issues so triable.

Dated: May 27, 2025

Respectfully submitted,

By: */s/Eduardo A. Maura*

Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
Ryan M. Sawal, Esq.
Florida Bar No. 1038500
rsawal@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiffs*

By: *<u>/s/Eduardo A. Maura</u>*
Eduardo A. Maura, Esq.
Florida Bar No. 91303