# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

ROBERT J ANDRIS, and
AVONDALE DÉCOR, LLC,

    Plaintiffs,

v.

CAPITAL SOLUTIONS BANCORP, LLC,

    Defendant.

Case No.: 2:25-cv-450-JES-NPM

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Robert J. Andris ("Andris") and Avondale Décor, LLC ("Avondale"), by and through undersigned counsel, submit this response in opposition to Defendant Capital Solutions Bancorp, LLC's ("Capital Solutions") Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint [D.E. 15], and state:

## BACKGROUND

1. On May 28, 2025, Plaintiffs filed their Complaint against Capital Solutions, asserting claims for: (i) Criminal Usury; (ii) Breach of Contract; (iii) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (iv) Unjust Enrichment; (v) Injunctive Relief. *See* D.E. 1.

2. On June 2, 2025, Plaintiffs filed their Amended Complaint against Capital Solutions, alleging the same claims against Capital Solutions. *See* D.E. 5.

3. This dispute arises out of a Business Loan Agreement between Plaintiffs and Capital Solutions, executed on February 12, 2019. *See id.*, Ex. 1.

1

4. The Business Loan Agreement contains clauses with competing choice of law provisions, for Florida law and Virginia law. *See id.*, Ex. 1, p. 41, 47.

5. The Agreement, while framed as a factoring agreement, was always intended to provide Capital Solutions with full compensation for its advancements. *See id.*, ¶ 53.

6. Despite the Agreement containing a representation by Capital Solutions that it would not charge a rate above the legal limit, the Agreement charges an interest rate equal to at least an APR of 40.04%. *See id.*, ¶ 62.

7. On July 14, 2025, Capital Solutions filed its Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint, baselessly alleging that Plaintiffs' Amended Complaint fails to state a claim for criminal usury and violation of FDUTPA under Virginia law and that Andris waived the right to bring a claim of usury under the Agreement. *See* D.E. 15.

## LEGAL STANDARD

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lemquist v. Carnival Corp.*, 2023 U.S. Dist. LEXIS 32032, at *4 (S.D. Fla. Feb. 27, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and ***take its factual allegations as true***." *Lemquist*, 2023 U.S. Dist. LEXIS 32032, at *5 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)) (emphasis added).

In Florida, the "longstanding rule" is that "the court's review is limited to an examination solely of the complaint and its attachments." *Santiago v. Mauna Loa Invs., LLC*, 189 So. 3d 752, 755-57 (Fla. 2016); *see also Crabb v. Ingram*, 2024 U.S. Dist. LEXIS 62358, at *2 (S.D. Fla. Mar. 18, 2024). Otherwise, "[e]xtrinsic material that is referred to in the operative complaint and

2

attached to a motion to dismiss may be considered by the court at the pleading stage if the attached material is (1) central to the plaintiff's claim and (2) the authenticity of the document is not challenged." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024). Lastly, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks*, 116 F.3d at 1369. "According to the *Erie* doctrine, federal courts sitting in diversity must apply the forum state's choice of law rules." *Chemische Fabrik Budenheim Kg v. Bavaria Corp. Int'l*, 2009 U.S. Dist. LEXIS 137308, at * 5 (M.D. Fla. July 8, 2009).

## ARGUMENT

**I.  Florida Law applies over Plaintiff's claims pursuant to the Florida choice of law provision contained within the Agreement.**

The Guaranty Clauses within the Business Loan Agreement, having been executed by the same parties at the same time and as part of a single transaction, should be interpreted together to form a single contract. *See Hopfenspirger v. West*, 949 So. 2d 1050, 1053 (Fla. 5th DCA 2006) ("Florida law is well-settled that where two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together").

**A.  Any ambiguity or contradiction between the choice of law provisions within the Agreement should be construed against the drafter of the Agreement.**

The choice of law clause in the Guaranty Clauses specifically defines the "chosen state" that will provide the choice of law and venue as Florida. *See* D.E. 5, Ex. 1 p. 41, 47. While the choice of law clause in the Guaranty Clauses conflicts with the choice of law previously stated in the Agreement, that conflict within the Agreement should be construed against the drafter of the whole Agreement, which was Capital Solutions. *See Kendall Imps., LLC v. Diaz*, 215 So. 3d 95,

3

109 (Fla. 3d DCA 2017) ("[U]nder basic contract principles, conflicts within the written agreement are to be construed against the drafter"); *see also Stateline Power Corp. v. Kremer*, 148 F. App'x 770, 771 (11th Cir. 2005) ("Plaintiff drafted the agreement, hence, the ambiguity must be resolved in favor of the defendant"). Accordingly, this Court must construe the meaning and applicability of the competing choice of law provisions in the Agreement against Capital Solutions, as the drafter, and apply the clause found in the Guaranty Clauses, which is the interpretation favored by Plaintiffs, as the non-drafters. *Cf. Eastman v. Life Ins. Co. of N. Am.*, 322 F. Supp. 3d 1255, 1258-59 (M.D. Ala. 2018) (Holding that conflicting choice of law provisions created ambiguity, which should be resolved in favor of the non-drafter's interpretation of the controlling choice of law provision).

      **B.**    **The Guaranty Clauses, which removed any risk of loss under the Agreement for Defendant, contains a Florida choice of law provision.**

Furthermore, the dispute regarding whether the Agreement as a whole is usurious is specifically rooted in the Guaranty Clauses, which establish that the alleged factoring transaction was a disguised loan. *See* D.E. 5, ¶ 55; *see also Foster v. Weber*, 578 So. 2d 857, 858 (Fla. 5th DCA 1991) (emphasis added) ("[O]ne of the badges of a disguised usurious transaction can be a discounted transfer of an instrument in which the transferee is ***required to endorse or otherwise guarantee payment of the underlying instrument***"). Without the Guaranty Clauses, which protect Capital Solutions from any risk of loss under the Agreement, the Agreement would not run afoul of usury law, which is the primary basis for Plaintiffs' claims within the Complaint. *See* D.E. 5, ¶ 57; *see also Beausejour Corp. N.V. v. Offshore Dev. Co., Inc.,* 802 F.2d 1319, 1322 (11th Cir. 1986) ("A financing transaction may be exempted from the usury statute if there is a substantial risk, i.e., a change of losing one's whole investment"). Because the interest rate in the Agreement is so grossly usurious, exceeding even the threshold for criminal usury, the public policy of Florida

4

strongly favors application of the Florida choice of law provision. *See Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 Fed. Appx. 865, 873 (11th Cir. 2018) ("[A] party may overcome [the presumptively enforceability of choice of law provisions] by showing that a provision contravenes the strong public policy of Florida or is unjust or unreasonable"). Additionally, the Agreement bears the most significant relationship with Florida, having been drafted by a Florida corporation and with the substantial majority of its performance being done in Florida. Specifically, under the Agreement, Capital Solutions, a Florida corporation, received Plaintiff's receivables and was responsible for charging applicable service fees and reserve fees on the receivables. *See* D.E. 5, ¶ 11-13, Ex. 1. The Agreement's only tether to Virginia is the choice of law provision, which Defendant relies upon, which is contradicted by the Florida choice of law provision within the same Agreement.

      Defendant disguised a usurious loan agreement by requiring the Plaintiff to sign a personal guaranty removing all risk of non-payment. Defendants included a Florida choice-of-law provision within this Guaranty Clause, leading Plaintiffs to expect that the Agreement would be interpreted under Florida law, including Florida usury law and the protections therein. For Defendant to now refuse to allow the Plaintiffs to avail themselves of this choice of law provision is not only nonsensical, it is fundamentally deceptive and unfair.

      Therefore, Plaintiffs' claims of criminal usury towards the Agreement as a whole arise from, and necessarily entail, the Guaranty Clauses. Accordingly, the Agreement should be governed by and construed under the parties' choice of law as stated in the Guaranty Clauses.

## II. The purported waiver in the Guaranty Clauses is not an enforceable waiver against Andris.

### A. A claim for Criminal Usury cannot be waived.

"The penalties for civil usury include forfeiture of double the interest actually charged and collected. The civil penalty for criminal usury is significantly greater: forfeiture of the right to collect the debt at all." *Velletri v. Dixon*, 44 So. 3d 187, 189 (Fla. 2d DCA 2010); *see also* § 687.071(7), Fla. Stat. ("No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state"). Florida law is clear that "any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum . . . whether directly or indirectly, or conspires to do so, commits a misdemeanor of the second degree." § 687.071(2), Fla. Stat. "The Legislature deems the charging of higher rates of interest as criminal, and has imposed severe penalties on persons engaged in criminal usurious practices…" *Oregrund Ltd. P'ship v. Sheive*, 873 So. 2d 451, 456 (Fla. 5th DCA 2004). *See also*, *Title & Tr. Co. v. Parker*, 468 So. 2d 520, 524 (Fla. 1st DCA 1985) ("It is clear that Chapter 687, Florida Statutes, is a legislative declaration of a public policy against usury, as the statute contemplates both the forfeiture of usurious interest, [Section 687.04](), as well as the non-enforcement of a criminally usurious debt").

"The theory upon which laws against usury have been enacted, and the principle which has governed in their interpretation, have always been, that the borrower was at the mercy of the lender, and subject to his utmost exactions and avaricious demands, unless protected by laws." *Pushee v. Johnson*, 166 So. 847, 849 (Fla. 1936). Such laws "are designed for the borrower's protection and benefit, and the protection and benefit of those thus representing him, when he or they has or have suffered loss or injury from the unlawful exactions of the lender, or may suffer such loss or injury

6

from the performance of the usurious contract, and when likewise he or they see fit not to waive the sanction or penalty of the statute in his favor." *Id.*

In the present matter, Defendant attempts to circumvent the well-established protections afforded by Florida usury law by relying upon a purported waiver of usury claims however, such a provision cannot save what is an unenforceable criminally usurious loan agreement. Even in the presence of a usury "savings clause" the Florida Supreme Court has "reject[ed] the use of a savings clause as an absolute bar to a usury claim [as] . . . a contrary holding would permit a lender to "relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done[. . .]." *Jersey Palm-Gross v. Paper*, 658 So. 2d 531, 535 (Fla. 1995). "If approved . . . this practice would undermine public policy as set by the legislature and defeat the purpose of Florida's usury statute.…" *Id.*

Accordingly, there can be no waiver of Andris' claim for Criminal Usury, and this Honorable Court should not dismiss Count I of Plaintiffs' Amended Complaint.

**B.     Andris did not voluntarily and intentionally waive his right to a claim of usury.**

"Waiver is the voluntary, intentional relinquishment of a known right." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994). "Waiver requires (1) the existence, at the time of the waiver, of a right, privilege, advantage, or benefit which may be waived, (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *Witt v. Metro Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014). "[T]here can be no waiver if the party against whom the waiver is invoked did not know all of the material facts . . . or was misled about the material facts." *Winans v. Weber*, 979 So. 2d 269, 274 (Fla. 2d DCA 2007); *see also Allen v. Jacksonville*, 2022 U.S. Dist. LEXIS 225338, at * 35 (M.D. Fla.

Dec. 14, 2022) ("[T]o waive the right, the party must know it existed and know all the material facts").

Capital Solutions made multiple misrepresentations of material fact about the Agreement to Plaintiffs. Capital Solutions described the Agreement as a factoring agreement accompanied by a personal guaranty in order to disguise the true nature of the Agreement as a loan. *See* D.E. 5, ¶ 10. Additionally, in the Agreement, Capital Solutions claimed that "in no contingency or event whatsoever, shall the fees and charges paid or agreed to be paid to Purchaser exceed the highest lawful rate." *See id.*, Ex. 1, p. 29. Finally, in the Agreement, Capital Solutions represented that "[i]f, from any circumstances whatsoever, the fulfillment of a provision hereof…shall involve transcending the limit of validity…, then the fees and charges to be paid to Purchaser shall be reduced to the limit of such validity and, Purchaser shall promptly refund such excess to Seller." *See id.* Based on these representations, Andris agreed to the waiver found in the guaranty clause, with the belief that Plaintiffs would never be expected to pay a usurious rate, without a subsequent credit and refund.

However, under the terms of the Agreement, the fees and charges to be paid to Capital Solutions were equivalent to at least an APR of 40.04%, above the limit for non-usurious loans. *See id.*, ¶ 61-62. Despite charging this usurious rate, Capital Solutions never credited or refunded Plaintiffs for the amount charged in excess of the 25% limit established by Fla. Stat. § 687.071(2). Since Andris' purported waiver of her right to a claim of usury was based on Capital Solutions' misrepresentation of material facts, it is not an enforceable waiver. *See Winans*, 979 So. 2d at 274. Therefore, this Honorable Court should not dismiss Count I of Plaintiffs' Amended Complaint.

8

### III.   Plaintiffs have alleged both a *per se* and traditional violation of FDUTPA.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. "FDUTPA violation can occur two ways: (1) *per se*, when premised on the violation of another law proscribing unfair or deceptive practice, or (2) a traditional violation involving some other unfair or deceptive practice." *Tymar Distrib. LLC v. Mitchell Grp. United States, LLC*, 558 F. Supp. 3d 1275, 1289 (S.D. Fla. 2021). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). "An act is deceptive if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Tymar Distrib.*, 558 F. Supp. 3d at 1289.

Plaintiffs alleged that Capital Solutions engaged in a *per se* violation of FDUTPA by engaging in an unfair practice when it charged interest rates higher than the legal limit for non-usurious loans. *See* D.E. 5, ¶ 82. However, Plaintiff further alleged a traditional violation of FDUTPA because Capital Solutions engaged in deceptive practices when it disguised the otherwise usurious interest rate as a weekly "service charge" and falsely represented to Plaintiffs that it would refund any rate charged in excess of the statutory limit. *See id.*, ¶ 83; Ex. 1, p. 29. Additionally, Capital Solutions engaged in an additional unfair practice when it calculated the service fee to be charged using the non-discounted amount of the invoice, leading to overcharges to Avondale. *See id.*, ¶ 84. Therefore, in addition to the *per se* violation of Florida's criminal usury statute, Plaintiffs have sufficiently alleged a traditional violation of FDUTPA. *See Tymar Distrib.*, 558 F. Supp. 3d at 1289.

## CONCLUSION

WHEREFORE, Plaintiffs Robert J. Andris and Avondale Décor LLC respectfully request that the Court enter an order denying Defendant Capital Solutions Bancorp, LLC's Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint, and granting any and all other relief that this Court deems just, proper, and equitable.

Dated: July 29, 2025

                                                Respectfully submitted,

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303
    eduardo@ayalalawpa.com
    Luis F. Quesada Machado, Esq.
    Florida Bar No. 1010305
    lquesada@ayalalawpa.com
    Ryan M. Sawal, Esq.
    Florida Bar No. 1038500
    rsawal@ayalalawpa.com
    **Ayala Law, P.A.**
    2490 Coral Way, Ste 401
    Miami, FL 33145
    P: (305) 570-2208
    F: (305) 503-7206
    *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303
