```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION

AVONDALE  DECOR,  LLC,  and
ROBERT J. ANDRIS,

        Plaintiffs,

v.                                 Case No: 2:25-cv-450-JES-NPM

CAPITAL  SOLUTIONS  BANCORP.
LLC,

        Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on defendant's Partial Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint (Doc. #15) filed on July 14, 2025. Plaintiff filed a Response (Doc. #16) on July 29, 2025. For the reasons set forth below, the motion is granted, with leave to file a second amended complaint.

**I.**

Plaintiff Avondale Décor, LLC (Avondale) is a Virginia limited liability company which designs and manufactures home décor. Plaintiff Robert Andris, a citizen of Virginia, is an "Officer" and "Vice President" of Avondale. (Doc. #5-1, at pp. 19, 24.) His sister Linda Andris, a non-party to this case, is the sole member of Avondale. (Doc. #5 at ¶ 2.)

In February 2019, Avondale entered into an Amended and Restated Business Loan Agreement (the 2019 Loan Agreement) with

Capital Solutions Bancorp, LCC (Capital Solutions or defendant) effective February 12, 2019. (Doc. #5-1 at p. 4, Introductory Paragraph.) Avondale is identified as the "Seller" of certain accounts receivable, while Capital Solutions is identified as the "Purchaser" of the accounts. (Doc. #5-1 at 4, 19.) The 2019 Loan Agreement "amends and restates in its entirety" a prior Business Loan Agreement dated May 24, 2016. (Id. at 18, ¶ 32.1). The parties agreed that the 2019 Loan Agreement and all transactions under it are governed by the law of Virginia. (Id. at ¶¶ 27.1, 36.8.)

The 2019 Loan Agreement provided that from time-to-time Avondale would sell Capital Solutions some or all of its account receivables. (Id. at p. 4.) In a letter dated February 12, 2019, Avondale advised its customers that it had assigned its present and future accounts receivable to Capital Solutions and directed its customers to make their payments to Capital Solutions. (Id. at 35.) In the 2019 Loan Agreement, Avondale agreed to pay certain fees and expenses to Capital Solutions (Id. at 6-7), the amount of which the parties agreed would not exceed applicable laws, including usury, (Id. at 15). The 2019 Loan Agreement was amended several times by the parties, but the amendments do not affect the resolution of the motion to dismiss.

The parties further agreed that the provisions of the 2019 Loan Agreement would control over the provisions of other

agreements. (Id.) In one such other agreement, Robert and Linda Andris agreed to an Individual Guaranty and Security Agreement (Guaranty). (Id. at 27-34.) Robert and Linda Andris obligated themselves to guarantee the prompt payment and performance of all present and future obligations of Avondale to Capital Solutions. (Id. at 27-28.) The Guaranty states that it is governed by Florida law (Id. at 27, 33), and that guarantors waived any claim of usury (Id. at 30, ¶ 8.4).

Avondale and Robert Andris have filed a five-count Amended Complaint against Capital Solutions asserting state law claims. Federal jurisdiction is premised on diversity of citizenship. In Count I, both plaintiffs allege a claim of usury under Florida law. In Count II, both plaintiffs allege a claim of breach of contract for overcharging fees under the 2019 Loan Agreement. In Count III, both plaintiffs allege a claim of violation of the Florida Deceptive and Unfair Trade Practice Act (FDUTPA) for enforcing a contract calling for usurious interest rates. In Count IV, both plaintiffs allege an alternative claim for Unjust Enrichment pursuant to Florida law. In Count V, both plaintiffs allege a claim for injunctive relief to preclude continued enforcement of a contract with usurious rates.

**II.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take

them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007). The Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). In deciding whether a complaint states a claim upon which relief may be granted, a district court considers the factual allegations in the complaint and the exhibits attached to the complaint or incorporated into the complaint by reference. MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co., 40 F.4th 1295, 1303 (11th Cir. 2022) (citation omitted); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).

As noted earlier, subject matter jurisdiction over this case is based on the diversity of citizenship of the parties. 28 U.S.C. § 1332(a). "According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." Cassirer v. Thyssen-Bornemisza Collection Found., 596 U.S. 107, 115 (2022) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). See also Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 100 (4th Cir. 2013) ("A federal

court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits."); McMahan v. Toto, 256 F.3d 1120, 1131 (11th Cir. 2001) (same), amended on reh'g, 311 F.3d 1077 (11th Cir. 2002).

Because this case was filed in a federal court sitting in Florida, the Court applies Florida's conflict of laws rules. Klaxon, 313 U.S. at 496 (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 74–77 (1938)). In Florida, "[a]n agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State." Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So. 3d 73, 80 (Fla. 2012) (citing Mazzoni Farms, Inc. v. E.I. DuPont De Nemours Co., 761 So. 2d 306, 311 (Fla. 2000)). See also Viridis Corp. v. TCA Glob. Credit Master Fund, LP, 721 F. App'x 865, 873 (11th Cir. 2018) ("Under Florida law, contractual choice-of-law provisions are presumptively enforceable." (citation omitted)). "This rule is premised on the presumption that choice-of-law provisions are valid unless the party seeking to avoid enforcement of them sufficiently carries the burden of showing that the foreign law contravenes strong public policy of the forum jurisdiction." Walls v. Quick & Reilly, Inc., 824 So. 2d 1016, 1018 (Fla. 5th DCA 2002).

**III.**

Capital Solutions moves to dismiss Counts I and III of the Amended Complaint. For the reasons stated below, the motion is granted, and these counts are dismissed without prejudice. Additionally, all counts by Robert Andris are dismissed without prejudice.

**A. Count I: Usury Under Florida Law**

In Count I, plaintiffs assert that the formula for interest provided in the 2019 Loan Agreement results in a usurious rate which contravenes Florida law. Plaintiffs allege that a loan of over $500,000 is usurious under Florida law, Fla. Stat. § 687.071(2), if the interest rate exceeds 25 percent per annum, and that the rate exceeds that amount in the 2019 Loan Agreement. Count I alleges that Avondale and Capital Solutions entered the 2019 Loan Agreement with the intent that it serve as a loan rather than a sale, and that it was always intended that Capital Solutions would receive full compensation for advancements provided to Avondale. Capital Solutions reserved 20% of the value of the invoice in case of default, and its only risk was insolvency, which was covered by the personal Guarantee and a requirement to repurchase any unpaid fees on demand. Count I asserts that the weekly service charge was intended as an interest rate, which

6

resulted in an equivalent annual percentage rate of 50.05%. (Doc. #5 at ¶¶ 51-61.)

Defendant seeks to dismiss Count I, arguing that Virginia law applies to the 2019 Loan Agreement, not Florida law, and that criminal usury does not exist under Virginia law. Additionally, Capital Solutions argues that any claim of usury was waived by Andris in the Guaranty. Plaintiffs respond that Florida law applies and controls because the 2019 Loan Agreement must be read in the light most favorable to the non-drafting party and must be construed along with the Guaranty, which is clearly subject to Florida law.

The 2019 Loan Agreement between Avondale and Capital Solutions is governed by Virginia law. The 2019 Loan Agreement contains a "Governing Law" section which provides that the "Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the Chosen State." (Doc. #5-1 at ¶ 27.1.) The "Chosen State" is identified as Virginia. (Id. at ¶ 36.8.) Florida law presumptively honors the parties' choice of law agreement unless the party seeking to avoid enforcement shows that Virginia law contravenes the strong public policy of Florida.

Plaintiffs do not assert that applying Virginia law would violate a Florida public policy consideration. As a result, the

2019 Loan Agreement is governed by Virginia law, and need not comply with the usury law of another jurisdiction such as Florida. Accordingly, since Count I asserts the 2019 Loan Agreement is governed by and violates Florida law, it does not state a claim for relief which may be granted. Court I is dismissed without prejudice.

Plaintiffs argue, however, that the Loan Agreement and Guaranty should be interpreted together as a single contract and that any "ambiguity" should be construed against the drafter of the "whole Agreement." The Guaranty has a Choice of Law provision providing that the Guaranty is governed by the laws of the "Chosen State". (Id. at ¶ 16.) The "Chosen State" is defined as Florida. (Id. at ¶ 1.4.) These provisions, however, do not impact the law which governs the 2019 Loan Agreement. The 2019 Loan Agreement contains a conflict of law provision which states that "[u]nless otherwise expressly stated in any other agreement between Purchaser and Seller, if a conflict exists between the provisions of this Agreement and the provisions of such other agreement, the provisions of this Agreement shall control." (Id. at ¶ 22.1.) Nothing in the Guaranty expressly states that the 2019 Loan Agreement is governed by the same law which governs the Guaranty.

Plaintiffs' reliance on Hopfenspirger v. West, 949 So. 2d 1050, 1053 (Fla. 5th DCA 2006) is misplaced. In Hopfenspirger, the loan agreement was governed by Minnesota law and the personal

8

guarantee and other documents were executed as part of the same transaction but with no separate or conflicting choice of law provision in the guarantee.  The court held that Florida recognizes a choice of law provision as long as the jurisdiction chosen has a normal relationship with the transaction. That standard is not violated in this case.

Additionally, there is nothing in the Amended Complaint which suggests that the Guaranty has ever been drawn on by Capital Solutions.  Count I is centered on the terms of the Loan Agreement and the Guaranty is only mentioned as an example of the limited risk to defendant.  (Doc. #5 at ¶ 55.)  Nothing precludes parties from choosing the law of different states to govern different contracts.

## B. Count III: FDUTPA

In Count III, plaintiffs seek damages under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.202(2), as a consumer subjected to unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in trade or commerce.  Plaintiff also alleges a *per se* violation under the Florida statute.  Plaintiffs allege that Capital Solutions disguised a usurious interest rate as a weekly service charge to avoid Florida's usury laws and used an unfair method to calculate the service fee using the original face amount of the invoice.  (Doc. #5 at ¶¶ 76-84.)  "As a result of these

9

unfair and unconscionable acts, Capital Solutions has caused Avondale to suffer damages, with Avondale having spent $1,256,964 in usurious interest payments, being overcharged $354,113.56 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540." (Id. at ¶ 85.)

"FDUTPA prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.[1] [] To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." Puig v. Sazerac Co., Inc., No. 2:23-CV-856-JES-NPM, 2024 WL 3046248, at *3 (M.D. Fla. June 18, 2024) (internal quotation marks and citations omitted). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003) (internal quotation marks and citations omitted).

But Count III fails to set forth a plausible claim because the 2019 Loan Agreement is governed by Virginia's usury law, not

---

[1] "'Trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

Florida's. There is no plausible showing that the formula in the contract was usurious under Virginia law, and therefore no viable claim is presented. Count III is dismissed without prejudice.

**C. Standing of Robert Andris**

As discussed earlier, both Avondale and Robert Andris are the named plaintiffs in each of the five counts. The injury asserted in all counts was directed at Avondale, the party to the 2019 Loan Agreement, not its employee/officer Andris. Without any personal injury, Andris has not pled a plausible basis for standing, which is a jurisdictional matter. See, e.g., Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. Unit B Apr. 1981)[2] ("An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation."); Snyder v. HMS Techs., Inc., No. 8:21-CV-2078-VMC-AEP, 2024 WL 493086, at *4 (M.D. Fla. Feb. 8, 2024) (dismissing for lack of subject matter jurisdiction because of a lack of standing without a direct harm), appeal dismissed, No. 24-12026-C, 2024 WL 5241171 (11th Cir. July 30, 2024), and appeal dismissed sub nom. Snyder v. Sierra 7, Inc., No. 24-12056-CC, 2024 WL 5261888 (11th Cir. Dec.

---

[2] Decisions by Unit B of the former Fifth Circuit are binding on this Court. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

11

20, 2024). Accordingly, the Court will dismiss all five counts as to Andris without prejudice and with leave to amend.

Accordingly, it is now

**ORDERED**:

1. Defendant's Partial Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint (Doc. #15) is **GRANTED** and Counts I and III are dismissed without prejudice.
2. Counts I through V are dismissed without prejudice as to Robert Andris for lack of standing to assert the claims.
3. Plaintiffs may file a second amended complaint within **twenty-one (21) days** of the date of this Opinion and Order. If no second amended complaint is filed, defendant shall respond to the portion of the Amended Complaint still pending within **fourteen (14) days** of the expiration of the twenty-one days.

**DONE AND ORDERED** at Fort Myers, Florida, this __18th__ day of August 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

12