## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

ROBERT J ANDRIS, and
AVONDALE DÉCOR, LLC,

      Plaintiffs,

v.

CAPITAL SOLUTIONS BANCORP,
LLC,

      Defendant.

Case No.: 2:25-cv-450-JES-NPM

**JURY TRIAL DEMANDED**

### PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Avondale Décor LLC and Robert J. Andris, by and through the undersigned counsel, file this Second Amended Complaint against Defendant Capital Solutions Bancorp, LLC, and state as follows:

### PARTIES

1.      Plaintiff Robert Andris ("Andris") is a natural person and a citizen of the state of Virginia who is domiciled in Albemarle County, Virginia.

2.      Plaintiff Avondale Décor, LLC ("Avondale") is a Virginia limited liability company that has its principal place of business in Louisa, Virginia. Avondale's sole member is Linda Andris. Linda Andris is a citizen of the United States who is permanently domiciled in Bergen County, New Jersey.

3.      Defendant Capital Solutions Bancorp, LLC ("Capital Solutions") is a Florida limited liability company whose principal address is in Fort Myers, Florida. Upon information and belief, Capital Solutions' sole members are Carlos Weil and Pablo Simko. Carlos Weil is a citizen

1

of the United States who is permanently domiciled in Lee County, Florida. Pablo Simko is a citizen of the United States who is permanently domiciled in Lee County, Florida.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the Defendant, a Florida limited liability corporation whose members are domiciled in Florida, is subject to the personal jurisdiction of this district and a substantial part of the events giving rise to the claim occurred in this district.

6.      All conditions precedent to the bringing of this action have either been performed or they have been waived.

## FACTS

I.  **Background**

7.      Avondale is a company that designs and manufactures a variety of home décor.

8.      Capital Solutions is a company that provides financing to other companies using loans and factoring agreements.

II.  **The Loan Agreement**

9.      On February 12, 2019, Avondale, through Andris and his sister, and Capital Solutions agreed to enter into the Accounts Receivable Purchase Agreement (the "Loan Agreement"). *See* Loan Agreement, **Exhibit 1.**

10.     Though the Loan Agreement holds itself out to be a non-recourse accounts receivable purchase agreement, in reality it is a disguised loan agreement, which attempts to charge the debtor with usurious interest rates.

11.     Under the Loan Agreement, payments on each account receivable were to be made directly to Capital Solutions.

12.     Paragraph 1.1.2 of the Loan Agreement purports to describe itself as a non-recourse factoring agreement by claiming that Capital Solutions is subject to risk of non-payment of a purchased account receivable in the event the account debtor becomes insolvent, however for the reasons set forth below, this risk of non-payment for Capital Solutions is illusory, and the Loan Agreement creates an unconditional obligation for repayment of the amounts advanced to Avondale. *See* **Ex. 1**., p. 4.

13.     At the same time and as part of the same transaction as the Loan Agreement, Robert Andris ("Andris") agreed with Capital Solutions to the Individual Guaranty and Security Agreement ("Guaranty Clauses"). *See* **Ex. 1**, p. 27.

14.     Under the Guaranty Clauses, Andris was personally obligated to guarantee the payment of any accounts receivable in the case of any default. *See id*, p. 28.

15.     Specifically, the Guaranty Clauses provided that:

Guarantor unconditionally and irrevocably guarantees to [Capital Solutions] the prompt payment and performance of the Guaranteed Obligations whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, ***this being a guaranty of payment*** and not a guaranty of collection.

**Ex. 1**, p. 27.

16.     As defined in the Guaranty Clauses, "Guaranteed Obligations" is defined as:

All present and future obligations of [Avondale] to [Capital Solutions], including but not limited to obligations arising out of the Credit Documents including fees and other compensation to be paid to [Capital Solutions], that, but for the filing of

3

a petition under the Bankruptcy Code with respect to [Avondale], would have accrued on any such obligations, and attorneys' fees.

**Ex. 1**, p. 28.

17.     Additionally, in practice, during the term of the Loan Agreement, Capital Solutions advanced funds to Avondale, and in return they would directly be paid by the vendor for each respective invoice.

18.     This payment would be received by Capital Solutions in Florida, where it would take its calculated deduction, before sending the remaining amount to Avondale.

19.     If an invoice took longer than average to be paid by the vendor, Capital Solutions would arbitrarily declare that invoice void, and use a more recent invoice to pay off its balance of fees.

20.     This structure ensured that there was no risk of non-payment for the loans given by Capital Solutions under the Loan Agreement.

21.     Moreover, Capital Solutions created a "Reserve Account" as discussed within section 2 of the Loan Agreement, wherein Capital Solutions would reserve 20% of the face value, which could be charged against by Capital Solutions, in the event any account debtors were insolvent or otherwise in default, to further eliminate any risk of non-payment of the loans under its Loan Agreement with Avondale. *See* **Ex. 1**, p. 5-6.

22.     Capital Solutions attempted to describe the Loan Agreement as a factoring agreement accompanied by a personal guaranty in an attempt to disguise the true nature of the Loan Agreement.

23.     Under the Loan Agreement, Avondale, as the seller, bore substantially all, if not all, the risk of loss, as Capital Solutions has near full recourse against Avondale and its owners

whenever there is any loss, whether by Andris' personal guaranty or Capital Solutions' ability to charge against the reserves.

24.     Accordingly, the Loan Agreement is subject to usury laws.

25.     Under the Loan Agreement, Avondale would receive an advanced amount in exchange for transferring its accounts receivable to Capital Solutions, which would receive the full amount of its investment in return upon maturity of the receivables. *See* **Ex. 1**, p. 4.

26.     Additionally, Avondale would be charged a service charge of 0.77% of the face amount of the purchased account every week until the date the purchased account is closed. *See* **Ex. 1**, p. 23.

27.     The Loan Agreement defines a "week" as the general seven-day period. *See* **Ex. 1**, p. 23.

28.     Therefore, if the account was closed on day four or five of a week, the fee is charged just the same as if the account was closed on day one. *See id.*

29.     The service charge of 0.77% was applied to the face amount of the invoice, despite twenty percent of the face amount being reserved by Capital Solutions.

30.     Therefore, a service charge of 0.77% applied to the face amount, of which Avondale only receives 80%, is equal to an APR of 50.05%.

31.     Depending on the timing of the repayment of the advanced funds and when in the "week" the account is closed, the interest rate would be even higher. *See id.*

32.     Further, Capital Solutions adds an additional three "clearance days," impacting the fees being charged, despite the payment being processed immediately. *See id.*, p. 8.

33.     Even if the service charge of 0.77% was applied to the amount advanced to Avondale, the service charge would be equal to no less than an APR of 40.4%.

34.     Upon information and belief, Capital Solutions knew that the interest rate charged weekly would far exceed the maximum interest rate for non-usurious loans.

35.     Avondale was also responsible for repurchasing any accounts on demand by Capital Solutions. *See* **Ex. 1**, p. 7.

36.     On April 20, 2020, Avondale and Capital Solutions entered into the Second Amendment to the Loan Agreement. *See* Second Amendment, **Exhibit 2.**

37.     Under the Second Amendment, which was applied retroactively, Avondale was required to repurchase any account, at the value of the unpaid face amount of the account at Capital Solutions' demand. *See* **Ex. 2**, p. 2.

38.     On January 1, 2022, Avondale and Capital Solutions entered into the Third Amendment to the Loan Agreement. *See* Third Amendment, **Exhibit 3.**

39.     The Third Amendment added a monthly inflation adjustment, which adjusted the service charge based on changes to the Consumer Price Index, resulting in an even higher effective interest rate. *See id.*

40.     To date, Avondale has already transferred Capital Solutions $13,883,951.50 in invoices "purchased" and incurred $1,256,964.00 in total interest from service fees, despite several of these invoices being paid within no more than a couple of months.

## III.     <u>Choice of Law Provision</u>

41.     Despite the Loan Agreement's significant relationship with Florida, Capital Solutions attempted to select Virginia law as the choice of law, despite Virginia lacking a serious reasonable relationship to the execution and performance transaction, in an effort to exculpate themselves from liability under Florida's usury laws.

42.    Capital Solutions chose Virginia Law as the applicable law despite Capital Solutions, as both the lender and the drafter of the Loan Agreement, being located in Florida and the Loan Agreement's actual performance being conducted in Florida, with Capital Solutions being the party responsible for managing all transactions and charges conducted under the Loan Agreement.

43.    In direct contradiction with their previous provision, Capital Solutions included an additional choice of law provision in the Guaranty Clauses, which lists Florida law as the applicable law, with the intent of misrepresenting or otherwise obscuring the applicable law for the Loan Agreement. *See id.*, p. 27.

44.    Finally, Capital Solutions misrepresented the character of the Loan Agreement entirely, describing the agreement as a factoring agreement with a non-usurious interest rate.

45.    As a result of these misrepresentations, Andris and Avondale were not aware of the Loan Agreement's effective chosen law or its effect on the validity of the Loan Agreement's interest rate, which they were led to believe would be non-usurious.

46.    Therefore, Andris and Avondale did not knowingly agree to and contract for the Loan Agreement's chosen law to be Virginia.

47.    The application of Virginia Law in this case would validate these misrepresentations, deprive Andris and Avondale of their right to knowingly contract for the choice of law, and allow Capital Solutions, a Florida Corporation, to contract against liability for an otherwise usurious transaction under the laws of the state the Loan Agreement was drafted and performed.

IV.    **Overcharging of the Service Charge**

48.    According to the Loan Agreement, the "service charge" was calculated by multiplying 0.77% by the "face amount" of a purchased account. *See* **Ex. 1**, p. 23.

49.    The Loan Agreement defines "face amount" as the amount due on an Account at the time of purchase. *See* **Ex. 1**, p. 21.

50.    Capital Solutions regularly diluted the face value of the invoice when calculating the amount to advance to account for any expected chargebacks from retailers.

51.    The result of this dilution is a lower face amount for each account. *See* **Ex. 1**, p. 21.

52.    Capital Solutions regularly used the lower face amount to calculate the amount advanced to Avondale.

53.    However, Capital Solutions, when determining the service charge, regularly calculated the service charge using the undiluted face amount, resulting in frequent overcharged service fees, based on otherwise disregarded face values.

54.    Over the course of the Loan Agreement, Capital Solutions has overcharged Avondale to a total amount of $192,590.98.

V.    **Retroactive Misapplication of Late Payment Fee**

55.    Under the Loan Agreement, Avondale was responsible for paying the "Late Payment Fee on the date on which a Purchased Account is closed." **Ex. 1**, p. 7.

56.    The Loan Agreement states the Late Payment Fee, defined as 0.95% per week, would be "multiplied by the Face Amount of a Purchased Account, for each [week]…that any portion thereof remains unpaid, computed from the [ninety days from date on which a Purchased Account was purchased] to and concluding the date on which a Purchased Account is Closed." *See id.*, p. 21.

57.     Therefore, under the Loan Agreement, Capital Solutions was only supposed to apply the late payment fee for each subsequent week after the "Late Payment Date."

58.     However, Capital Solutions, when applying the late payment fee, regularly applied the charge retroactively, applying the late payment fee percentage for every week the account remained open, dating back to the date the account was "purchased."

59.     In effect, Capital Solutions was applying a late payment fee on accounts for dates when the accounts were not even past due, in direct contradiction with the process outlined in the Loan Agreement.

## VI.    **Secured Promissory Note**

60.     By September 2023, Avondale and Capital Solutions no longer wished to continue further invoice transactions.

61.     On September 19, 2023, Avondale and Capital Solutions agreed to the Secured Promissory Note, where Avondale would pay the outstanding balance on all the remaining invoices. *See* Promissory Note, **Exhibit 4.**

62.     Under the Promissory Note, Avondale would pay a total balance of $657,540.00. *See* **Ex. 4.**

63.     In a payment schedule provided by Capital Solutions to Avondale, Capital Solutions divided the total balance into separate balances of principal and interest. *See* Loan Schedule, **Exhibit 5.**

64.     Specifically, in the payment schedule, Capital Solutions designated $267,540.00 as scheduled interest on the $390,000.00 principal. *See* **Ex. 5.**

65.     Further, the payment schedule specifically designates the arrangement on Capital Solutions' asset list as a loan. *See* **Ex. 5.**

66.     On September 6, 2024, Avondale and Capital Solutions agreed to the First Amendment to the Promissory Note. *See* Note Amendment, **Exhibit 6.**

67.     To date, Avondale has paid $617,070.00 of the total owed under the Promissory Note, including over $200,000.00 in interest payments. *See* **Ex. 5.**

<u>COUNT I</u>
**CRIMINAL USURY**

68.     Plaintiffs incorporate and re-allege paragraphs 1 through 67 above, as though fully set forth herein.

69.     Capital Solutions made a loan or otherwise made or engaged in an advance of money, as used in Florida Statutes section 687.02, to Avondale, as shown in the Loan Agreement.

70.     Under Florida Law, a loan for over $500,000 is usurious, and therefore unlawful, if it charges an interest rate "exceeding 25 percent per annum." § 687.071(2), Fla. Stat.

71.     Avondale and Capital Solutions agreed to the Loan Agreement with the intent for the agreement to serve as a loan rather than a sale.

72.     The parties understood that in reality, Avondale, either individually or through the personal guaranty of Andris, would repay the funds advanced back to Capital Solutions.

73.     To ensure this, Capital Solutions reserved twenty percent of the value of the invoice, as money that could be reached by Capital Solutions in the event of default by a debtor. *See* **Ex. 1**, p. 5-6.

74.     The only risk that Capital Solutions hypothetically could bear under the Loan Agreement was the risk of insolvency of a debtor, however, the Guaranty Clauses required Andris to personally guarantee the payments due to Capital Solutions. *See* **Ex. 1**.

75.     Additionally, under the Second Amendment, Avondale was required to repurchase, at the amount of the unpaid face amount of the account, any unpaid fees on demand by Capital Solutions, including in cases where a debtor becomes insolvent. *See* **Ex. 2**.

76.     Therefore, Capital Solutions did not bear any actual or speculative risk of non-payment and complete loss, regardless of insolvency.

77.     Among the terms of the Loan Agreement was a "service charge" charged to Avondale of 0.77% of the face amount of the receivables every week. *See* **Ex. 1**, p. 23

78.     The weekly service charge was intended by the parties to act as an interest rate, rather than as a bona fide cost of the transaction.

79.     In the Promissory Note, which the parties agreed to in order to settle Avondale's outstanding balance under the Loan Agreement, Capital Solutions recognized $267,540 of Avondale's outstanding balance as interest accumulated, from the service charge, on the $390,000 principal. *See* **Ex. 5.**

80.     Assuming the service charge was calculated based upon the total face value—which Avondale only received 80% at most—the service charge is equivalent to an APR of 50.05%.

81.     Assuming the service charge was calculated based upon simply the 80% that Avondale actually received, it is equivalent to an APR of 40.04%.

82.     Depending on the timing of the account closure, and when in the "week" it occurred, the interest can be even higher, due to the Loan Agreement's restrictive definition of a "week" for purposes of calculating the service charge. *See* **Ex. 1**, p. 23.

83.     Accordingly, the Loan Agreement charged an interest rate above the twenty-five percent per annum limit for non-usurious transactions with a value greater than $500,000. *See* § 687.0071(2).

84.     At all relevant times, Capital Solutions knowingly acted, with corrupt intent, to charge Avondale a usurious rate of interest in the Loan Agreement.

85.     As a result of the usurious agreement, Avondale has suffered damages, including money spent on the usurious interest and lost business opportunities.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

<u>COUNT II</u>
**BREACH OF CONTRACT**

86.     Plaintiffs incorporate and reallege paragraphs 1 through 67 above, as though fully set forth herein.

87.     On February 12, 2019, Avondale and Capital Solutions agreed to the subject Loan Agreement. *See* **Ex. 1**.

88.     Under the Loan Agreement, Avondale would be charged a service charge of 0.77% of the face amount of the purchased account upon closure of the account. *See* **Ex. 1**, p. 23.

89.     The face amount is defined in the Loan Agreement as the amount due on an Account at the time of purchase. *See* **Ex. 1**, p. 21.

90.     To account for any chargebacks from retailers, Capital Solutions regularly diluted the face value of the invoice, resulting in a lower face amount.

91.     Pursuant to the Loan Agreement, Capital Solutions used the discounted face amount when calculating the amount advanced to Avondale.

92.     However, in breach of the Loan Agreement's explicit formula for calculating the service charge, Capital Solutions calculated the service charge using the original undiluted face amount, which was no longer being used.

93.     Additionally, under the Loan Agreement, Capital Solutions was authorized to charge a late payment on all past due amounts due from Avondale. *See* **Ex. 1**, p. 7.

94.     The Loan Agreement specifically states that Capital Solutions would multiply the late payment fee "by the Face Amount of a Purchased Account, for each [week]…that any portion thereof remains unpaid, computed from the [ninety days from the date on which a Purchased Account was purchased] to and concluding the date on which a Purchased Account is Closed." *See* **Ex. 1**, p. 21.

95.     However, in breach of the Loan Agreement's specific process for applying the late payment fee, Capital Solutions regularly applied the charge retroactively, applying the late payment fee percentage for every week the account remained open, dating back to the date the account was "purchased."

96.     As a result of Capital Solutions' breach of the Loan Agreement's terms regarding the calculation of the service charge and application of the late payment fee, Avondale has suffered damages, being charged incorrect retroactive late payment fees and being otherwise overcharged $192,590.98 throughout the term of the Loan Agreement.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT III
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.201 et seq.)

97.     Plaintiffs incorporate and reallege paragraphs 1 through 67 as though fully set forth herein.

98.     This is an action for actual damages pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

99.     The purpose of this act is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

100.    Avondale is a "consumer" under FDUTPA. *See* § 501.203(7), Fla. Stat.

101.    At all times pertinent to the bringing of this action, Capital Solutions was engaged in "trade or commerce," as defined by FDUTPA. *See* § 501.203(8).

102.    Therefore, FDUTPA imposes a duty on Capital Solutions to refrain from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat.

103.    "FDUTPA violations can occur two ways: (1) *per se*, when premised on the violation of another law proscribing unfair or deceptive practice, or (2) a traditional violation involving some other unfair or deceptive practice." *Tymar Distrib. LLC v. Mitchell Grp. United States, LLC*, 558 F. Supp. 3d 1275, 1289 (S.D. Fla. 2021).

104.    In this case, Capital Solutions has committed both *per se* and traditional violations of FDUTPA.

105.    Capital Solutions engaged in unconscionable and unfair methods when it charged interest rates higher than the legal limit for non-usurious loans established in Fla. Stat. § 687.03(1).

14

106.    Capital Solutions engaged in unconscionable and unfair methods when it disguised an otherwise usurious interest rate as a weekly "service charge" to avoid liability under Florida's usury laws. *See* **Ex. 1**, p. 23.

107.    Capital Solutions engaged in unconscionable and unfair methods when it included a Virginia choice of law provision in the Loan Agreement, despite the Agreement being drafted and performed in Florida and Guaranty Clauses containing a competing Florida choice of law provision, in an effort to further exculpate themselves from liability under Florida's usury laws.

108.    Capital Solutions engaged in unconscionable and unfair methods when it required an additional three "clearance days," affecting the fees being charged, despite the payments being processed immediately. *See* **Ex. 1**, p. 8.

109.    Capital Solutions engaged in further unconscionable and unfair methods when it calculated the service fee using the original face amount of the invoice, rather than the diluted value used to calculate advancements made to Avondale.

110.    Finally, Capital Solutions engaged in unconscionable and unfair methods when it applied the late payment fee retroactively, in violation of the process defined in the Loan Agreement, resulting in late payment fees for times when the accounts were not past due. *See* **Ex. 1**, p. 21.

111.    As a result of these unfair and unconscionable acts, Capital Solutions has caused Avondale to suffer damages, with Avondale having spent $1,256,964.00 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

112.    "In any civil litigation resulting from an act or practice involving a violation of [FDUTPA] . . . the prevailing party . . . may receive his or her reasonable attorney's fees and costs from the nonprevailing party." § 501.2105(1), Fla. Stat.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

**COUNT IV**
**UNJUST ENRICHMENT**
*(Plead in the Alternative)*

113.    Plaintiffs incorporate and reallege paragraphs 1 through 67 above, as though fully set forth herein.

114.    Florida law recognizes a claim for unjust enrichment when: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2002) (internal quotations omitted).

115.    Avondale conferred a benefit to Capital Solutions when it transferred Capital Solutions $13,883,951.50 in invoices "purchased," and spent $1,256,964.00 in interest payments.

116.    Capital Solutions voluntarily accepted the benefit of the total $15,140,915.00 in invoices and interest paid.

117.    However, Capital Solutions has charged an unlawful, usurious interest rate on the invoices, purposefully miscalculated the interest rate to maximize its gain to the detriment of

16

Avondale, and intentionally misapplied the late payment fee, in a retroactive fashion, to charge Avondale late payment fees for times when the accounts were not past due.

118.    Accordingly, the circumstances of this case are such that it would be inequitable for Capital Solutions to retain the benefit of the total $15,140,915 received from Avondale.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT V
## FRAUDULENT MISREPRESENTATION

119.    Plaintiffs incorporate and reallege paragraphs 1 through 67 above, as though fully set forth herein.

120.    Capital Solutions made a representation of material fact to Avondale and Andris when it disguised an otherwise usurious interest rate as a weekly "service charge." *See* **Ex. 1**, p. 23.

121.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated that in the event it charged fees "transcending the limit of validity," it would refund "such excess to Seller." *See* **Ex. 1**, p. 15.

122.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated it would only charge 0.77% per week with no "nickel and dime fees." *See* **Ex. 1**, p. 1.

123.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated in the Loan Agreement that it would charge the service charge on the undiluted face amount of the purchased account, or the amount due at time of purchase. *See* **Ex. 1**, p. 21, 23.

17

124.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account became due, rather than retrospectively. *See* **Ex. 1**, p. 21.

125.    Capital Solutions made a representation of material fact to Avondale and Andris when it included a choice of law provision for Florida Law in the Guaranty Clauses, despite the conflicting provision in the Loan Agreement. *See* **Ex. 1**, p. 20.

126.    At the time Capital Solutions made these representations, it knew that these representations were false.

127.    Capital Solutions made these representations during negotiations for, and within, the Loan Agreement, in an effort to induce Andris and Avondale to agree to the Loan Agreement.

128.    Avondale and Andris relied on these representations by Capital Solutions in agreeing to the Loan Agreement. *See* **Ex. 1**.

129.    As a result of Avondale and Andris' justifiable reliance, Avondale and Andris have suffered damages, with Avondale having spent $1,256,964 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

WHEREFORE, Plaintiffs Avondale Décor, LLC and Robert Andris demand judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

<u>**COUNT VI**</u>
**NEGLIGENT MISREPRESENTATION**
*(Plead in the Alternative)*

130.    Plaintiffs incorporate and reallege paragraphs 1 through 67 above, as though fully set forth herein.

131.    Capital Solutions made a representation of material fact to Andris and Avondale when it disguised an otherwise usurious interest rate as a weekly "service charge." *See* **Ex. 1**, p. 23.

132.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated that in the event it charged fees "transcending the limit of validity," it would refund "such excess to Seller." *See* **Ex. 1**, p. 15.

133.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated it would only charge 0.77% per week with no "nickel and dime fees." *See* **Ex. 1**, p. 1.

134.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated in the Loan Agreement that it would charge the service charge on the face amount of the purchased account, or the amount due at the time of purchase. *See* **Ex. 1**, p. 21, 23.

135.    Capital Solutions made a representation of material fact to Avondale and Andris when it stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account became due. *See* **Ex. 1**, p. 21.

136.    Capital Solutions made a representation of material fact to Avondale and Andris when it included a choice of law provision for Florida Law in the Guaranty Clauses, despite the conflicting provision in the Loan Agreement. *See* **Ex. 1**, p. 20.

137.    At the time the representations were made, Capital Solutions owed a duty to Avondale and Andris to truthfully state the terms of the Loan Agreement, and how they would be applied.

138.    When Capital Solutions made these statements, it knew or should have known these statements were false.

139.    Capital Solutions made these representations during negotiations for, and within, the Loan Agreement, in an effort to induce Avondale and Andris to agree to the Loan Agreement.

140.    Avondale and Andris relied on these representations by Capital Solutions in agreeing to the Loan Agreement. *See* **Ex. 1**.

141.    As a result of Avondale and Andris' justifiable reliance, Avondale and Andris have suffered damages, with Avondale having spent $1,256,964 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

WHEREFORE, Plaintiffs Avondale Décor, LLC and Robert Andris demand judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT VII
## INJUNCTIVE RELIEF

142.    Plaintiffs incorporate and reallege paragraphs 1 through 67 above, as though fully set forth herein.

143.    As of the filing of this Complaint, Capital Solutions is continuing to enforce both the Loan Agreement and the accompanying Promissory Note. *See* **Ex. 5.**

144.    In enforcing the agreements, Capital Solutions is continuing to charge Avondale usurious interest rates.

145.    Capital Solutions' actions have caused Avondale to suffer damages, including lost income, additional expenses, and missed financial opportunities.

146.    As a result of the lost wages and missed opportunities, Avondale is in danger of insolvency.

147.    Therefore, an injunction barring Capital Solutions from enforcing the Loan Agreement and the Promissory Note is necessary to protect Avondale from the irreparable danger of pending potential insolvency.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) an injunction barring Capital Solutions from continued enforcement of the Loan Agreement and Promissory Note; (b) costs, interest, and reasonable attorney's fees; and (c) all other relief that this Court deems just and proper.

<u>**COUNT VIII**</u>
**RESCISSION**
*(Plead in the Alternative)*

148.    Plaintiffs incorporate and reallege paragraphs 1 through 67 above, as though fully set forth herein.

149.     Capital Solutions made a false representation of material fact to Avondale and Andris when it disguised an otherwise usurious interest rate as a weekly "service charge." *See* **Ex. 1**, p. 23.

150.    Capital Solutions made a false representation of material fact to Avondale and Andris when it stated that in the event it charged fees "transcending the limit of validity," it would refund "such excess to Seller." *See* **Ex. 1**, p. 15.

151.    Capital Solutions made a false representation of material fact to Avondale and Andris when it stated in the Loan Agreement that it would charge the service charge on the face amount of the purchased account, or the amount due at the time of purchase. *See* **Ex. 1**, p. 21, 23.

152.    Capital Solutions made a false representation of material fact to Avondale and Andris when it stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account reached ninety days. *See* **Ex. 1**, p. 21.

153.    Capital Solutions made a false representation of material fact to Avondale and Andris when it included a choice of law provision for Florida Law in the Guaranty Clauses, despite the conflicting provision in the Loan Agreement. *See* **Ex. 1**, p. 20.

154.    In reliance on Capital Solutions' misrepresentations, Andris, on behalf of Avondale, entered into the Loan Agreement. *See* **Ex. 1**.

155.    Capital Solutions' multiple misrepresentations hid the true usurious nature of the Loan Agreement, deprived Andris and Avondale of their remedies under the Loan Agreement, and resulted in Avondale being charged in excess of the agreed amount.

156.    Avondale and Andris seek to rescind the Loan Agreement as it has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for recission would be.

157.    Rescission of the Loan Agreement, including the Guaranty Clauses, would be fair and equitable, in light of Capital Solutions' multiple fraudulent and wrongful actions, to the detriment of both Avondale and Andris.

158.    Rescission of the Loan Agreement would not unduly burden Capital Solutions.

WHEREFORE, Plaintiffs Robert Andris and Avondale Décor, LLC demand judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be

determined at trial; (b) costs, interest, and reasonable attorney fees; (c) rescission of the Loan

Agreement; and (d) awarding any other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury of all issues so triable.

Dated: September 8, 2025

Respectfully submitted,

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303
    eduardo@ayalalawpa.com
    Luis F. Quesada, Esq.
    Florida Bar No. 1010305
    lquesada@ayalalawpa.com
    Ryan M. Sawal, Esq.
    Florida Bar No. 1038500
    rsawal@ayalalawpa.com
    **Ayala Law, P.A.**
    2490 Coral Way, Ste 401
    Miami, FL 33145
    P: (305) 570-2208
    F: (305) 503-7206
    *Counsel for Plaintiffs*

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303