

**Mr. Robert Andris**
**AVONDALE DECOR, LLC**
195 Duke Street
Louisa, VA 23093

Tuesday, February 12, 2019


Robert & Linda:

Enclosed please find the draft of our **'ACCOUNTS RECEIVABLE PURCHASE AGREEMENT'**.
Allow me a few comments that will help you in your review...

Conceptually, the Agreement is best divided up into the 3 Sections:

1.  **Operational Issues**: dealing with what the procedures are and "what happens ifs..."; Sections 1 through 16;

2.  **Standard Contractual Issues**: Where notices are to be sent, choice of law, Jurisdictions, etc. Sections 17 through 34;

3.  **Definitions**: Terms (and fees) are defined; Section 35.


Aside from the fact that you will want to review the whole contract, let me direct your attention to the following pages to find the most relevant fees and other important definitions. These should correspond to the ones stated in the Non-binding letter we exchanged a few days ago:

•   ***"Termination; Effective Date"*** (page 12): Deals with how you can leave the Agreement, anytime, no questions asked (you will not find a deal with fewer strings attached than this one!)

•   ***"Advance Rate"*** (page 17): 80%

•   ***"Administration Fee"*** (page 17): Refers to the Admin. Fee, which we are waiving for you;

•   ***"Early Termination Fee"*** (page 18): Zero.

•   ***"Service Charge"*** and ***"Service Charge Percentage"*** (page 21): Refers to the 0.77% (per week or "Service Charge Period")'


Because you signed up for the **GOLD PACKAGE**, there are no recurrent, nickel and dime fees (like wire fees, etc., so common in the industry).

The signature page is #22.

For your guidance, the last two pages of the Agreement are a sample of the **General Release** document we would use when we decide to part ways. They are not to be signed now.

DocuSign Envelope ID: 42FE-1XA5Q04E513YFCUK-HQ4LA-BB4DX6X

Capital Solutions Bancorp

I draw your attention to page 18 and 19…"Early Termination Fee", "Minimum Monthly Fee", "Minimum Funding Fee", etc. etc. Almost all other vendors in our space will nickel and dime you. We just want you to know we don't.

You will also receive a copy of our **INDEMNITY**. We are not asking that you guaranty the creditworthiness of your customers nor are we asking that you even guaranty the creditworthiness of your own company. All we are asking you to guaranty is that your company is going to act fairly in accordance with the Agreement.

There are three parties to this Indemnification:
- **AVONDALE DECOR, LLC**: The Seller (of Accounts), who engages in an Agreement with…
- Capital Solutions: The Purchaser of Accounts;
- The Indemnitors: the ones that guarantee that the Seller will abide by the contract.

This is a fairly standard Indemnity. The signature page is #8 (if each partner is not going to email the document directly to me, then please have them notarize their signature. Thank you).

I would like to go through these documents with you at your convenience (they really are much more user friendly than what it looks at first impression). I will follow up with you shortly.

Cordially,

Carlos Weil, C.E.O
Capital Solutions

PS: If you find some fees (in the 'Agreement') that we didn't discuss before, those are only applicable in case something unusual happens. Example: Assume that we buy an invoice from you and advance you money on it. When that invoice is due the client sends **AVONDALE DECOR, LLC** the money, instead of sending it to us (it happens sometimes). If you cash that check and keep the money, there is an additional fee that applies. For your guidance (and since this happens every once in a while), the correct thing to do in this case would be to let us know that you received that check and put it in an envelope addressed to us the following business day. No problem.

PPS: In the Agreement, the paragraph on "Late Payment Fee" also deserves some explanation. We can discuss it next time we talk.

PPPS: You will also find a letter which simply states that you authorize the assignment of Invoices.

Capital Solutions Bancorp Building    |    12761 World Plaza Lane    |    Fort Myers, Florida 33907
Toll Free: (800) 499-6179    |    www.CapitalSolutionsBancorp.com    |    Fax (239) 277-5408



## AMENDED AND RESTATED

## BUSINESS LOAN AGREEMENT

## AVONDALE DECOR, LLC

## CAPITAL SOLUTIONS BANCORP

## FEBRUARY 2019

## AMENDED AND RESTATED
## BUSINESS LOAN AGREEMENT

THIS AMENDED AND RESTATED <u>Business Loan Agreement</u> is made as of <s>February 12, 2019</s> 2/12/2019by and between **AVONDALE DECOR, LLC** ("Seller") and **CAPITAL SOLUTIONS BANCORP, LLC** ("Purchaser").

## 1. **Sale; Purchase Price; Billing**

### 1.1. **Assignment and Sale.**

1.1.1. From time to time, Seller may offer to sell to Purchaser, as absolute owner, some or all of Seller's Accounts.

1.1.2. Upon purchase, Purchaser will assume the risk of non-payment on the Purchased Accounts, up to the Advanced Amount, only if: (i) the cause of non-payment is **solely** due to an Account Debtor becoming Insolvent, and (ii) the Account Debtor is not an Affiliate of Seller.

1.1.3. Seller shall provide to Purchaser such documentation supporting and evidencing the Account, as Purchaser shall from time to time request.

1.1.4. Purchaser may in its sole discretion purchase from Seller such Accounts as Purchaser determines to be Eligible Accounts.

1.1.5. Upon Purchaser's payment of the Purchase Price of any Purchased Account, less any amounts due to Purchaser from Seller, Seller shall be deemed to have sold to Purchaser, and Purchaser shall be deemed to have purchased all right, title, ownership, and interest of Seller in the Account.

1.2. **Billing.** Purchaser may send monthly statements to all Payors itemizing their account activity during the preceding billing period. All Payors will be instructed to make payments to Purchaser.

## 2. **Reserve Account.**

2.1. Seller shall pay to Purchaser on demand the amount of any Reserve Shortfall.

2.2. Purchaser shall pay to Seller any amount by which the Reserve Account exceeds the Required Reserve Amount on the 15th

and the last Business Day of each month. **Upon termination of
this Agreement or upon the occurrence of any Event of Default,
whether or not cured or waived, these payments by Purchaser to
Seller shall be made no more frequently than once a month.**

2.3. Purchaser may charge the Reserve Account with any
Obligation.

2.4. Purchaser may pay any amounts due Seller hereunder by a
credit to the Reserve Account.

2.5. On the Insolvency Date, Purchaser shall credit the
Reserve Account with the unpaid Purchase Price, up to the
Advanced Amount, of a Purchased Account (other than a
Repurchased Account) owed by an Insolvent Account Debtor.

2.6. Purchaser may retain the Reserve Account until Complete
Termination.

2.7. Special Reserve Account.

2.7.1. At the request of Seller, Purchaser may, in its sole
discretion:

(a)   Notwithstanding Section 2.1. above, charge all or
any portion of any Reserve Shortfall to the Special Reserve
Account; and

(b)  Charge the unpaid Face Amount of any Purchased
Account which Seller is required to repurchase pursuant to
Section 6.1.2. together with any unpaid fees relating to such
Purchased Account, to the Special Reserve Account.

3. **Exposed Payments.**

3.1. Upon termination of this Agreement, Seller shall pay to
Purchaser (or Purchaser may retain), to hold in a non-segregated
non-interest bearing account the amount of all Exposed Payments
(the "Preference Reserve").

3.2. Purchaser may charge the Preference Reserve with the
amount of any Exposed Payments that Purchaser pays to the
bankruptcy estate of the Payor that made the Exposed Payment, on
account of a claim asserted under Section 547 of the Bankruptcy
Code.

3.3. Purchaser shall refund to Seller from time to time that
balance of the Preference Reserve for which a claim under

Avondale - Agreement.docx

Section 547 of the Bankruptcy Code can no longer be asserted due to the passage of the statute of limitations, settlement with the bankruptcy estate of the Payor or otherwise.

4. **Authorization for Purchases**.

4.1. Subject to the terms and conditions of this Agreement, Purchaser is authorized to purchase Accounts upon telephonic, email, facsimile or other instructions received from anyone purporting to be an officer, employee or representative of Seller.

5. **Fees and Expenses**.  Seller shall pay to Purchaser:

5.1. **Origination Fee.**  The Origination Fee prior to Purchaser's first purchase of $100,000 of Accounts hereunder.

5.2. **Approval Process Expenses**. Purchaser's Approval Process Expenses prior to Purchaser's first purchase of Accounts hereunder.  Purchaser shall provide Seller with a written accounting of the Approval Process Expenses, which accounting shall be presumed correct and binding upon Seller unless objected to in writing by Seller within three Business Days of Seller's receipt of the accounting. This **fee is waived, except** for:

5.2.1. attorneys' fees; and

5.2.2. if the Purchaser has not purchased any Accounts for 30 days from today's date.

5.3. **Service Charge.**  The Service Charge on the date on which a Purchased Account is Closed.

5.4. **Minimum Monthly Fee.** The amount by which the Service Charges earned by Purchaser in any month (prorated for partial months) is less than the Minimum Monthly Fee, on the first day of the following month.

5.5. **Misdirected Payment Fee.**  Any Misdirected Payment Fee immediately upon its accrual.  It is recognized that the costs imposed upon Purchaser by the Seller's action or inaction resulting in the imposition of this fee are difficult to ascertain, and this fee represents the good faith effort to compensate Purchaser without imposing upon the parties the expensive burden of litigating that cost, and is the agreed liquidated damages with result therefrom.

5.6. **Late Charge.**  The Late Charge, on demand, on all past due amounts due from Seller to Purchaser hereunder.

5.7. **Special Reserve Account Fee.**  The Special Reserve Account Fee, on demand, on all amounts charged to the Special Reserve Account under section 2.7.

5.8. **Out-of-pocket Expenses.**  The out-of-pocket expenses directly incurred by Purchaser in the administration of this Agreement such as wire transfer fees, postage and audit fees. Seller shall not be required to pay for more than four audits per twelve-month period. This fee, except for attorney's fees, is waived.

5.9. **Late Payment Fee.**  The Late Payment Fee on the date on which a Purchased Account is Closed.

6.  **Repurchase Of Accounts.**

6.1.  Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount, together with any unpaid fees relating to the Purchased Account, on demand according to the following:

6.1.1. **Notwithstanding Insolvency.**  Notwithstanding an Account Debtor becoming Insolvent:

(a)  Any Purchased Account:

(i) The payment of which has been disputed by the Payor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute; or

(ii) For which Seller has breached any warranty as set forth in the Section 13.4.

(b)  Purchased Accounts upon the occurrence of an Event of Default, or upon the Termination Date of this Agreement.

6.1.2. **Absent Insolvency of an Account Debtor.**  If an Account Debtor has not become Insolvent on or prior to the Late Payment Date, any Purchased Account which remains unpaid beyond the Late Payment Date ("Repurchased Account").

6.2  Purchase of Repurchased Account.  Purchaser shall purchase from Seller any Repurchased Account on the Insolvency Date so long as Seller has provided written notice within 30 days of the applicable Account Debtor becoming Insolvent.

7. **Security Interest**.

   7.1. As collateral securing the Obligations, Seller grants to Purchaser a continuing security interest in the Collateral.

   7.2. Notwithstanding the creation of this security interest, the relationship of the parties shall be that of Purchaser and Seller of accounts, and not that of lender and borrower.

8. **Clearance Days**.

   8.1. For all purposes under this Agreement, Clearance Days will be added to the date on which Purchaser receives any payment.

9. **Authorization to Purchaser**.

   9.1. Seller irrevocably authorizes Purchaser at Seller's expense, to exercise at any time any of the following powers until all of the Obligations have been paid in full:

      9.1.1. Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, proceeds of any Collateral;

      9.1.2. Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon Purchaser's Accounts;

      9.1.3. With respect to any of the following established or issued for the benefit of Seller, either individually or as a member of a class or group, file any claim under (i) any bond or (ii) under any trust fund.

      9.1.4. Pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in any assets of Seller, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

      9.1.5. File in the name of Seller or Purchaser or both:

         (a) Liens or related notices, or

         (b) Claims under any payment bond, in connection with goods or services sold by Seller in connection with the improvement of realty;

9.1.6.  Notify any Payor obligated with respect to any Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser;

9.1.7.  Communicate directly with Seller's Payors to verify the amount and validity of any Account created by Seller.

9.1.8.  After an Event of Default:

(a)  Change the address for delivery of mail to Purchaser and to receive and open mail addressed to Seller;

(b)  Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Accounts and discharge or release any Account Debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such Account Debtor), without affecting any of the Obligations;

9.1.9.  File any initial financing statements and amendments thereto that:

(a)  Indicate the collateral as all assets of the Seller or words of similar effect, regardless of whether any particular asset comprised in the collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail;

(b)  Contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether the Seller is an organization, the type of organization, and any organization identification number issued to the Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the collateral relates; and

(c)  Contain a notification that the Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortiously interfering with Purchaser's rights;

(d)  Advise third parties that any notification of Seller's Account Debtors will interfere with Purchaser's collection rights.

9.2.  Seller authorizes Purchaser to accept, endorse and deposit on behalf of Seller any checks tendered by an Account Debtor "in full payment" of its obligation to Seller.  Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the Uniform Commercial Code, or otherwise.

10.  **ACH Authorization**.

10.1.  In order to satisfy any of the Obligations, Seller authorizes Purchaser to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller.

11.  **Covenants By Seller**.

11.1.  After written notice by Purchaser to Seller, and automatically, without notice, after an Event of Default, Seller shall not (a) grant any extension of time for payment of any of its Accounts, (b) compromise or settle any of its Accounts for less than the full amount thereof, (c) release in whole or in part any Payor, or (d) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of the Accounts.

11.2.  From time to time as requested by Purchaser, at the sole expense of Seller, Purchaser shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser to make copies of such books and records or extracts therefrom as Purchaser may request.  Without expense to Purchaser, Purchaser may use any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of Accounts and realization on other Collateral as Purchaser, in its sole discretion, deems appropriate.  Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Seller.

Avondale - Agreement.docx

11.3.  Before sending any Invoice to an Account Debtor, Seller shall mark same with such notice of assignment as Purchaser may require.

11.4.  Seller shall pay when due all payroll and other taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require.

11.5.  Seller shall not create, incur, assume or permit to exist any lien upon or with respect to any assets in which Purchaser now or hereafter holds a security interest;

11.6.  Notwithstanding Seller's obligation to pay the Misdirected Payment Fee, Seller shall pay to Purchaser on the next Banking Day following the date of receipt by Seller the amount of:

11.6.1.  Any payment on account of a Purchased Account.

11.6.2.  After the occurrence of an Event of Default, any payment on account of any Account.

11.7.  Avoidance Claims.

11.7.1.  Seller shall indemnify Purchaser from any loss arising out of the assertion of any Avoidance Claim other than such claims that relate to Purchased Accounts that are owed by an Account Debtor which was Insolvent at the time the subject payment was received by Purchaser, and shall pay to Purchaser on demand the amount thereof.

11.7.2.  Seller shall notify Purchaser within two Business Days of it becoming aware of the assertion of an Avoidance Claim.

11.7.3.  This provision shall survive termination of this Agreement.

12. **Account Disputes**.

12.1.  Seller shall notify Purchaser within one Business Day of any dispute relating to or concerning the Purchased Account.  If requested by Purchaser, Seller will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense.  Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "Resolve") the dispute upon such terms, as Purchaser in its sole discretion deem advisable, for Seller's account and risk and at Seller's

sole expense.  Upon the occurrence of an Event of Default
Purchaser may Resolve such issues with respect to any Account of
Seller.

13.  **Representation and Warranties**.  Seller represents and
warrants that:

   13.1.  It is fully authorized to enter into this Agreement and
to perform hereunder;

   13.2.  This Agreement constitutes its legal, valid and binding
obligation; and

   13.3.  Seller is solvent and in good standing in the
jurisdiction of its organization.

   13.4.  The Purchased Accounts are and will remain:

     13.4.1.  Bona fide existing obligations created by the sale
and delivery of goods or the rendition of services in the
ordinary course of Seller's business;

     13.4.2.  To the best of Seller's knowledge, unconditionally
owed and will be paid to Purchaser without defenses, disputes,
offsets, counterclaims, or rights of return or cancellation,
other than Accounts owed by an Account Debtor which was
Insolvent.

     13.4.3.  Not sales to any entity that is affiliated with
Seller or in any way not an "arm's length" transaction.

   13.5.  Seller has not received notice or otherwise learned of
actual or imminent bankruptcy, insolvency, or material
impairment of the financial condition of any applicable Account
Debtor regarding Purchased Accounts.

14.  **Indemnification**.

   14.1.  Seller agrees to defend, indemnify and hold Purchaser
harmless from any and all manner of suits, claims, liabilities,
demands and expenses (including reasonable attorneys' fees and
collection costs) resulting from or arising out of Seller's
breach of this Agreement.

15.  **Disclaimer of Liability**.

   15.1.  In no event will Purchaser be liable to Seller for any
lost profits, lost savings or other consequential, incidental or

DocuSign Envelope ID: 2EE53A0C4501-3EF5-UNIFIE-C88F029H

special damages resulting from or arising out of or in
connection with this agreement, the transactions or
relationships contemplated hereby or purchaser's performance or
failure to perform hereunder, even if purchaser has been advised
of the possibility of such damages.

16. **Default.**

   16.1. **Events of Default.** The following events will constitute
an Event of Default hereunder: (a) Seller defaults in the
payment of any Obligations or in the performance of any
provision hereof or of any other agreement now or hereafter
entered into with Purchaser, or any warranty or representation
contained herein proves to be false in any way, howsoever minor,
(b) Seller or any guarantor of the Obligations becomes subject
to any debtor-relief proceedings, (c) any such guarantor fails
to perform or observe any of such guarantor's obligations to
Purchaser or shall notify Purchaser of its intention to rescind,
modify, terminate or revoke any guaranty of the Obligations, or
any such guaranty shall cease to be in full force and effect for
any reason whatever, (d) Purchaser for any reason, in good
faith, deems itself insecure with respect to the prospect of
repayment or performance of the Obligations.

   16.2. **Waiver of Notice.** PURCHASER'S FAILURE TO CHARGE FEES,
EXPENSES, OR CHARGES PROVIDED FOR BY THIS AGREEMENT AT ANY
"DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY
PURCHASER OF ITS CLAIM THERETO.

   16.3. **Effect of Default.**

     16.3.1. Upon the occurrence of any Event of Default, in
addition to any rights Purchaser has under this Agreement or
applicable law, Purchaser may immediately terminate this
Agreement, at which time all Obligations shall immediately
become due and payable without notice.

     16.3.2. The Late Charge shall accrue and is payable on
demand on any Obligation not paid when due.

17. **Account Stated.**

   17.1. Purchaser shall render to Seller a statement setting
forth the transactions arising hereunder. Each statement shall
be considered correct and binding upon Seller as an account
stated, except to the extent that Purchaser receives, within
sixty (60) days after the mailing of such statement, written

Avondale - Agreement.docx

notice from Seller of any specific exceptions by Seller to that
statement, and then it shall be binding against Seller as to any
items to which it has not objected.

## 18. **Amendment and Waiver**.

18.1. Only a writing signed by all parties hereto may amend
this Agreement.  The failure of Purchaser to insist on the
strict performance of any provision of this Agreement or to
exercise any remedy for any default shall not be construed as a
waiver.  The waiver of any noncompliance with this agreement
shall not prevent subsequent similar noncompliance from being a
default. The remedies of Purchaser as provided herein shall be
cumulative and concurrent and may be pursued singly,
successively or together, at the sole discretion of Purchaser,
and may be exercised as often as occasion therefore shall occur;
and the failure to exercise any such right or remedy shall in no
event be construed as a waiver or release thereof.  Purchaser
shall not be deemed, by any act of omission or commission, to
have waived any of its rights or remedies hereunder unless such
waiver is in writing and signed by Purchaser, and then only to
the extent specifically set forth in the writing.

## 19. **Termination; Effective Date**.

19.1. This Agreement will be effective on the date it is
signed by the Parties.

19.2. Either Party may terminate this Agreement by giving the
other Party prior written notice of termination ("Termination
Notice"), whereupon this Agreement shall terminate ("Termination
Date").

19.3. All Obligations shall be due and payable on the
Termination Date.

## 20. **No Lien Termination without Release**.

20.1. In recognition of the Purchaser's right to have its
attorneys' fees and other expenses incurred in connection with
this Agreement secured by the Collateral, notwithstanding
payment in full of all Obligations by Seller, Purchaser shall
not be required to record any terminations or satisfactions of
any of Purchaser's liens on the Collateral unless and until
Complete Termination has occurred.  Seller understands that this
provision constitutes a waiver of its rights under §9-513 of the
UCC.

DocuSign Envelope ID: 2FE1-12AB8-45C13EF5-UNFFME-C88F9384

21. **Construction of Agreement**.

21.1. Notwithstanding anything to the contrary set forth in
this Agreement, in no event shall the amount of fees or other
charges be deemed interest under applicable law. All agreements
herein are expressly limited so that, in no contingency or event
whatsoever, shall the fees and charges paid or agreed to be paid
to the Purchaser exceed the highest lawful rate permissible
under laws governing this agreement, including without
limitation, the laws governing usury.  If, from any
circumstances whatsoever, the fulfillment of any provision
hereof, at the time performance of such provision shall be due,
shall involve transcending the limit of validity prescribed by
law which a court of competent jurisdiction may deem the
obligations to violate the laws governing this agreement, then
the fees and charges to be paid to Purchaser shall be reduced to
the limit of such validity and, Purchaser shall promptly refund
such excess to Seller and shall not otherwise be penalized.  In
determining whether the fees and charges  contracted for,
charged, or received by Purchaser exceeds the Maximum Rate,
Purchaser may, to the extent permitted by applicable law, (a)
characterize any payment that is not principal as an expense,
fee, charge, or premium rather than interest, (b) exclude
voluntary prepayments and the effects thereof, and (c) amortize,
prorate, allocate, and spread in equal or unequal parts the
total amount of interest throughout the contemplated term of the
Obligations hereunder.

22. **Conflict**.

22.1. Unless otherwise expressly stated in any other agreement
between Purchaser and Seller, if a conflict exists between the
provisions of this Agreement and the provisions of such other
agreement, the provisions of this Agreement shall control.

23. **Severability**.

23.1. In the event any one or more of the provisions contained
in this Agreement is held to be invalid, illegal or
unenforceable in any respect, then such provision shall be
ineffective only to the extent of such prohibition or
invalidity, and the validity, legality, and enforceability of
the remaining provisions contained herein shall not in any way
be affected or impaired thereby.

24. **Relationship of Parties**.

Avondale - Agreement.docx

24.1.  The relationship of the parties hereto shall be that of
Seller and Purchaser of Accounts, and Purchaser shall not be a
fiduciary of the Seller, although Seller may be a fiduciary of
the Purchaser.

25. **Attorneys' Fees**.  Seller agrees to reimburse Purchaser on
demand for:

25.1.  The actual amount of all costs and expenses, including
attorneys' fees, which Purchaser has incurred or may incur in:

25.1.1. Negotiating, preparing, or administering this
Agreement and any documents prepared in connection herewith;

25.1.2.  Any way arising out of  or in connection with this
Agreement, and whether or not  arising out of a dispute which
does not involve Purchaser;

25.1.3.  Protecting, preserving or enforcing any lien,
security or other right granted by Seller to Purchaser or
arising under applicable law, whether or not suit is brought,
including but not limited to the defense of any Avoidance Claims
or the defense of Purchaser's lien priority;

25.2.  The actual costs, including photocopying (which, if
performed by Purchaser's employees, shall be at the rate of
$.10/page), travel, and attorneys' fees and expenses incurred in
complying with any subpoena or other legal process in any way
relating to Seller. This provision shall survive termination of
this Agreement.

25.3.  The actual amount of all costs and expenses, including
attorneys' fees, which Purchaser may incur in enforcing this
Agreement and any documents prepared in connection herewith, or
in connection with any federal or state insolvency proceeding
commenced by or against Seller, including those (i) arising out
the automatic stay, (ii) seeking dismissal or conversion of the
bankruptcy proceeding or (ii) opposing confirmation of Seller's
plan there under.

26. **Entire Agreement**.

26.1.  No promises of any kind have been made by Purchaser or
any third party to induce Seller to execute this Agreement.  No
course of dealing, course of performance or trade usage, and no
parole evidence of any nature, shall be used to supplement or
modify any terms of this Agreement.

27. **Governing Law**.

27.1.  This Agreement and all transactions contemplated
hereunder and/or evidenced hereby shall be governed by,
construed under, and enforced in accordance with the internal
laws of the Chosen State.

28. **Jury Trial Waiver**.

28.1.  **IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY
RESULT FROM A JURY TRIAL, THE PARTIES HERETO WAIVE ANY RIGHT TO
TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION
(A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR
RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR
ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW
EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT
OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO
CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN
WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR
HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS
THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE
DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO
MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH
ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES
HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

29. **Venue; Jurisdiction**.

29.1.  Any suit, action or proceeding arising hereunder, or the
interpretation, performance or breach hereof, shall, if
Purchaser so elects, be instituted in any court sitting in the
Chosen State, in the city in which Purchaser's chief executive
office is located, or if none, any court sitting in the Chosen
State (the "Acceptable Forums").  Seller agrees that the
Acceptable Forums are convenient to it and submits to the
jurisdiction of the Acceptable Forums and waives any and all
objections to jurisdiction or venue.  Should such proceeding be
initiated in any other forum, Seller waives any right to oppose
any motion or application made by Purchaser to transfer such
proceeding to an Acceptable Forum.

30. **Time of the Essence**.

30.1.  It is agreed that time is of the essence in all matters
herein.

31. **Service of Process**.

31.1. Seller agrees that Purchaser may effect service of process upon Seller by regular mail at the address set forth herein or at such other address as may be reflected in the records of Purchaser, or at the option of Purchaser by service upon Seller's agent for the service of process.

## 32. **Amendment and Restatement.**

32.1. This contract amends and restates in its entirety that certain Business Loan Agreement dated 05/24/2016.

## 33. **Assignment**

33.1. Purchaser may assign its rights and delegate its duties hereunder. Upon such assignment, Seller shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Purchaser.

## 34. **Counterparts.**

34.1. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

## 35. **Notice.**

35.1. All notices required to be given to any party other than Purchaser shall be deemed given upon the first to occur of (i) deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means to a receiver under the control of such party, or (iii) actual receipt by such party or an employee or agent of such party. All notices to Purchaser shall be deemed given upon actual receipt by a responsible officer of Purchaser.

35.2. For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such party may in writing hereafter indicate:

**SELLER**

Address:        **AVONDALE DECOR, LLC**
                195 Duke Street

                Louisa, VA 23093


Officer:     Mr. Robert Andris

Email address: robert.j.andris@avondaledecor.com


**PURCHASER**

Address:        **CAPITAL SOLUTIONS BANCORP LLC**
                12761 World Plaza Lane
                Fort Myers, Florida 33907

Officer:     Mr. Carlos Weil

Email address: cweil@capitalsolutionsbancorp.com


36. **Definitions and Index to Definitions**.  The following terms used herein shall have the following meaning.  All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code:

  36.1. "**Advanced Amount**" – With respect to a Purchase Account, (i) the Purchase Price, less (ii) the Purchase Price multiplied by the Reserve Percentage.

  36.2. "**Advance Rate**" – 80%.

  36.3. "**Administration Fee**" – 0.00% of the Face Amount of a Purchased Account.

  36.4. "**Affiliate**" –Any person or entity (i) which directly or indirectly controls, or is controlled by or is under common control with Seller or a subsidiary of Seller; (ii) which directly or indirectly beneficially owns 10% or more of any class of voting stock of Seller or a subsidiary of Seller; or (iii) 10% or more of the voting stock of which is directly or indirectly beneficially owned by Seller or any subsidiary of Seller.

Avondale – Agreement.docx

36.5. "**Approval Process Expenses**" – Purchaser's actual expenses incurred in connection with its due diligence and approval process.

36.6. "**Avoidance Claim**" – Any claim that any payment received by Purchaser is avoidable under the Bankruptcy Code or any other debtor relief statute.

36.7. "**Business Day**" – A day, other than one on which national banks are required to be closed.

36.8. "**Chosen State**" – Virginia.

36.9. "**Clearance Days**" – Three Business Days.

36.10. "**Closed**" – A Purchased Account is closed upon receipt of full payment by Purchaser from a Payor or from the Seller (including its being charged to the Reserve Account).

36.11. "**Collateral**"– All Seller's now owned and hereafter acquired Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles.

36.12. "**Complete Termination**" – Complete Termination occurs upon satisfaction of the following conditions:

36.12.1. Payment in full of all Obligations of Seller to Purchaser;

36.12.2. If Purchaser has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Seller, acknowledgement from any beneficiaries thereof that Purchaser or any other issuer has no outstanding direct or contingent liability therein.

36.12.3. Seller has executed and delivered to Purchaser a general release in the form of Exhibit 36.12.3. attached hereto.

36.13. "**Early Termination Date**" – See Section 19. hereof.

36.14. "**Early Termination Fee**" – $0.00

36.15. "**Eligible Account**" – An Account that is acceptable for purchase as determined by Purchaser in the exercise of its reasonable sole credit or business judgment.

36.16. "**Events of Default**" – See Section 16.1.

36.17. "**Exposed Payments**" – Payments received by Purchaser from or for the account of a Payor that has become subject to a bankruptcy proceeding, to the extent such payments cleared the Payor's deposit account within ninety days of the commencement of said bankruptcy case.

36.18. "**Face Amount**" – The face amount due on an Account at the time of purchase.

36.19. "**Initial Fee**" – Zero.

36.20. "**Insolvency Date**" – The date on which Purchaser has reasonably determined that an Account Debtor has become Insolvent.

36.21. "**Insolvent**" – An Account Debtor has become Insolvent if it fails to pay a Purchased Account **solely** as a result of its financial inability to pay, including without limitation, the filing for protection under any state or federal bankruptcy law or assignment for the benefit of creditors, or similar law. The burden of proof as to the insolvency of an Account Debtor shall rest solely on the Seller, with it being presumed that at all relevant times an Account Debtor is not Insolvent.

36.22. "**Invoice**" – The document that evidences or is intended to evidence an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

36.23. "**Late Charge**" – 0.25% per day.

36.24. "**Late Payment Date**" – Ninety days from the date on which a Purchased Account was Purchased.

36.25. "**Late Payment Fee**" – The Late Payment Fee Percentage multiplied by the Face Amount of a Purchased Account, for each Late Payment Fee Period or portion thereof, that any portion thereof remains unpaid, computed from the Late Payment Date to and including the date on which a Purchased Account is Closed.

36.26. "**Late Payment Fee Percentage**" – 0.95%.

36.27. "**Late Payment Fee Period**" – 1 Week.

36.28. "**Minimum Advance Amount**" – $0.00.

36.29. "**Minimum Funding Fee**" – $0.00.

36.30.  **"Minimum Monthly Fee"** $0.00

36.31.  **"Minimum Service Charge per Invoice"** – $0.00

36.32.  **"Misdirected Payment Fee"** – 15% of the amount of any payment (but in no event less than $1,000) on account of a Purchased Account (and, after the occurrence of an Event of Default, payments on accounts of any Account) which has been received by Seller or a third party and not paid by Seller to Purchaser on the next Business Day following the date of receipt by Seller or the date of Seller's knowledge of receipt by such third party, or 30% of the amount of any such payment which has been received by Seller or any third party as a result of any action taken by Seller to cause such payment to be made to Seller or any third party.

36.33.  **"Obligations"** – All present and future obligations owing by Seller to Purchaser whether arising hereunder or otherwise, and whether arising before, during or after the commencement of any bankruptcy case in which Seller is a Debtor.

36.34.  **"Origination Fee"** – 4%

36.35.  **"Parties"** – Seller and Purchaser.

36.36.  **"Payor"** – An Account Debtor or other obligor on an Account, or entity making payment thereon for the account of such party.

36.37.  **"Purchase Date"** – **The date on which Purchaser pays the Purchase Price of a Purchased Account to Seller.**

36.38.  **"Purchase Price"** – The Face Amount of a Purchased Account less the Administration Fee.

36.39.  **"Purchased Accounts"** – Accounts purchased hereunder which have not been Closed.

36.40.  **"Repurchased"** – An Account has been repurchased when Seller has paid to Purchaser the then unpaid Face Amount.

36.41.  **"Required Reserve Amount"** – The Reserve Percentage multiplied by the unpaid balance of Purchased Accounts

36.42.  **"Reserve Account"** – A bookkeeping account on the books of the Purchaser representing the portion of the Purchase Price which has not been paid by Purchaser to Seller, maintained by

Purchaser to ensure Seller's performance with the provisions hereof.

36.43. "**Reserve Percentage**" – 20.0%.

36.44. "**Reserve Shortfall**" – The amount by which the Reserve Account is less than the Required Reserve Amount.

36.45. "**Schedule of Accounts**" – Any document that identifies which of Seller's Account are purchased by Purchaser.

36.46. "**Service Charge**" – The Service Charge Percentage multiplied by the Face Amount of a Purchased Account, for each Service Charge Period or portion thereof, that any portion thereof remains unpaid, computed from the Purchase Date to and including the date on which a Purchased Account is Closed.

36.47. "**Service Charge Percentage**" – 0.77%.

36.48. "**Service Charge Period**" – 1 Week.

36.49. "**Special Reserve Account**" – A bookkeeping account on the books of the Purchaser representing the amount Seller owes Purchaser under Section 2.7.

36.50. "**Special Reserve Account Fee**" – 0.17% per day.

36.51. "**Term**" – A one-year period, computed from the date hereof.

36.52. "**Termination Date**" – See Section 19.

36.53. "**Termination Notice**" – See Section 19.

36.54. "**Termination Notice Period**" – See Section 19.

36.55. "**UCC**" – The Uniform Commercial Code as adopted in the Chosen State.

36.56. "**Week**" – Seven days.

*[This section is blank – Signature page follows]*

     This agreement is considered null and void if not signed by all parties within 15 days of the date above mentioned.

     IN WITNESS WHEREOF, the Parties have executed this agreement on the day and year first above written.

SELLER:                 **AVONDALE DECOR, LLC.**

By:   *Robert J. Andris*
          79E083064AC54B3...

Name:  Robert J. Andris

Title:  Vice President


PURCHASER:            **CAPITAL SOLUTIONS BANCORP LLC.**

By:   *Carlos Weil*
          5C75BDDCAABE480...
      Carlos Weil, CEO

Avondale - Agreement.docx

**EXHIBIT 36.12.3.** [1]

## <u>GENERAL RELEASE</u>

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and adequacy of which are hereby acknowledged, the undersigned and each of them (collectively "Releasor") hereby forever releases, discharges and acquits CAPITAL SOLUTIONS BANCORP LLC ("Releasee"), its parent, directors, shareholders, agents and employees, of and from any and all claims of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore existing, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, to the extent that they arise out of or are in way connected to or are related to that certain Accounts Receivable Purchase Agreement dated _____ [2].

Releasor agrees that the matters released herein are not limited to matters which are known or disclosed, and the Releasor waives any and all rights and benefits which it now has, or in the future may have:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST
> HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR**

Releasor acknowledges that factual matters now unknown to it may have given or may hereafter give rise to Claims which are presently unknown, unanticipated and unsuspected, and it acknowledges that this Release has been negotiated and agreed upon in light of that realization and that it nevertheless hereby intends to release, discharge and acquit the Releasee from any such unknown Claims.

Acceptance of this Release shall not be deemed or construed as an admission of liability by any party released.

In the event of any litigation arising out of or related to this Release, the prevailing party shall recover its reasonable attorney's fees and expenses from the unsuccessful party.  It shall be presumed (subject to rebuttal only by the introduction of competent evidence to the contrary) that the amount recoverable is the amount billed to the prevailing party by its counsel and that such amount will be reasonable if based on the billing rates charged to the prevailing party by its counsel in similar matters.

Releasor acknowledges that either (a) it has had advice of counsel of its own choosing in negotiations for and the preparation of this release, or (b) it has knowingly determined that such advice is not needed.

DATED: _____ [3]

Individual Releasor: [4]

_____

[*Name of individual*], individually

_____

This is only an exhibit, and the actual release is not signed until the Seller requests a UCC Termination.

[2] Date of Accounts Receivable Purchase agreement. Supply the date of execution.

[4] Use this signature block if an individual is signing the release. Any individual guarantors should sign.

Avondale – Agreement.docx

Entity Releasor:[5]

_____ [6]

By: _____

Name: _____

Title: _____

---

[5] Use this signature block if an entity such as a corporation, partnership or limited liability company is signing release.

[6] Supply name of entity signing release.

Avondale – Agreement.docx

DocuSign Envelope ID: 2BF53AD0-4B9C-13EB-9NPM-E88D83B4

# INDIVIDUAL GUARANTY AND SECURITY AGREEMENT

## THIS DOCUMENT CONTAINS A WAIVER OF TRIAL BY JURY

This INDIVIDUAL GUARANTY AND SECURITY AGREEMENT dated as of February 12, 2019, is made by the entities or individuals which have signed below (individually or collectively, "Guarantor"), in favor of **Capital Solutions Bancorp, LLC** ("Creditor").

FOR GOOD AND VALUABLE CONSIDERATION, and to induce Creditor to extend financial accommodations to Debtor (as defined below), Guarantor agrees as follows:

1. **DEFINITIONS AND CONSTRUCTION.  AS USED HEREIN:**

1.1  "**Acceptable Forums**" – See Section 18.1 hereof.

1.2  "**Agreement**" – This Guaranty, as amended.

1.3  "**Bankruptcy Code**" – Title 11 of the United States Code.

1.4  "**Chosen State**" – Florida.

1.5  "**Collateral** – All Guarantor's present and future Accounts, Chattel Paper; Goods, including Inventory and Equipment; Instruments, Investment Property; Consumer Goods, Documents; and General Intangibles and the proceeds thereof;

1.6  "**Credit Documents**" –

1.6.1That certain Accounts Receivable Purchase Agreement dated of essentially even date herewith between, Debtor and Creditor, all documents executed in connection therewith, and all amendments or renewals to or of any of the foregoing, or any other document evidencing a Guaranteed Obligation.

1.7  "**Creditor**" – See Preamble.

1.8  "**Debtor**" – AVONDALE DÉCOR, LLC, and all its successors-in-interest by operation of law or otherwise, including any Trustee (as defined in the Bankruptcy Code) or debtor-in-possession, and any successor-in-interest arising out of any merger or reorganization involving such entity, whether it is the surviving or the disappearing entity.

1.9  "**Guaranteed Obligations**" – All present and future obligations of Debtor to Creditor, including but not limited to obligations arising out of the Credit Documents, including fees and other compensation to be paid to Creditor, that, but for the filing of a petition under the Bankruptcy Code with respect to Debtor, would have accrued on any such obligations, and attorneys' fees.

1.10  "**Guarantor**" – See Preamble.

DocuSign Envelope ID: 2BEE13AD84A3D13EF9UNFIMEC88PV484

## 2. **GUARANTY**

**2.1  Promise to Pay and Perform**.  Guarantor unconditionally and irrevocably guarantees to Creditor the prompt payment and performance of the Guaranteed Obligations whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, this being a guaranty of payment and not a guaranty of collection.

**2.2  Cumulative Obligations**.  The obligations hereunder are in addition to any other obligations of Guarantor under any other guaranties of the indebtedness or other obligations of Debtor or any other person at any time given to Creditor.  This Agreement shall not affect or invalidate any such other guaranties.

**2.3  Continuing Guaranty**.  This Agreement shall remain in full force and effect notwithstanding the fact that, at any particular time, no Guaranteed Obligations may be outstanding.

**2.4  Joint and Several Obligation; Independent Obligation**.  Guarantor is directly, jointly, and severally with all other guarantors of the Guaranteed Obligations liable to Creditor.  The obligations of Guarantor hereunder are direct and primary and are independent of the obligations of Debtor or any other such guarantor, and a separate action may be brought against Guarantor irrespective of whether an action is brought against Debtor or any other guarantor or whether Debtor or any such other guarantor is joined in such action.  Guarantor's liability hereunder shall not be contingent upon the exercise or enforcement by Creditor of any remedies it may have against Debtor or any other guarantor or the enforcement of any lien or realization upon any security Creditor may at any time possess.  Any release that may be given by Creditor to Debtor or any other guarantor shall not release Guarantor.

## 3. **COVENANTS.**

**3.1**  Guarantor shall keep informed of Debtor's financial condition as well as all other circumstances that bear upon the risk of nonpayment of the Guaranteed Obligations.

**3.2**  Guarantor shall, from time to time, at the expense of Guarantor, promptly execute and deliver all further documents and take all further action that may be necessary, or that Creditor may reasonably request, to enable Creditor to exercise and enforce its rights and remedies hereunder.

**3.3**  Guarantor shall not create, incur, assume or permit to exist any non-purchase-money lien upon or with respect to any of its assets.  Guarantor authorizes Creditor to record a record in any public records filing office advising third parties that the taking of any such lien by them may constitute the tortuous interference with Creditor's rights hereunder.

## 4. **GRANT OF SECURITY INTEREST.**

4.1  To secure the payment and performance in full of Guarantor's obligations hereunder, Guarantor grants to Creditor a security interest in the Collateral and all proceeds and products thereof.

## 5. **PAYMENTS.**

5.1  **Nature and Application of Payments.**  Creditor may apply any payment with respect to the Guaranteed Obligations or any other amounts due hereunder in such order, as Creditor shall in its sole and absolute discretion determine, irrespective of any contrary instructions received from any other person.

5.2  **Indefeasible Payment; Revival.**  If any portion of any payment to Creditor hereunder is set aside and repaid by Creditor for any reason after being made by Guarantor, the amount so set aside shall be revived as a Guaranteed Obligation and Guarantor shall be liable for the full amount Creditor is required to repay plus all costs and expenses (including attorneys' fees, costs, and expenses) incurred by Creditor in connection therewith**.**

## 6. **PROCEEDS HELD IN TRUST**

6.1  Guarantor acknowledges that, pursuant to the Credit Documents, proceeds of Collateral (as defined therein) are held in trust for Creditor and, except to the extent that Creditor authorizes Debtor to use any such proceeds for some other purpose:

6.1.1  Debtor must deliver such proceeds to Creditor as required in the Credit Documents, and

6.1.2  Until such proceeds are delivered to Lender, Debtor must maintain such proceeds separate from Debtor's other property and must administer, protect, and care for such proceeds for Lender's benefit.

6.1.3  Guarantor acknowledges that the above duties of Debtor are fiduciary obligations.

6.1.4  Guarantor shall assist Debtor in complying with and fulfilling these fiduciary duties and shall not in any way interfere with Debtor's compliance therewith.

## 7. **REPRESENTATIONS AND WARRANTIES.**

7.1  Guarantor represents and warrants as follows (which representations and warranties shall be true, correct, and complete at all times):

7.1.1  This Agreement is not made by Guarantor in reliance on any representation or warranty, express or implied, by Creditor concerning the financial condition of Debtor, the nature, value, or extent of any security for the Guaranteed Obligations, or any other matter, and no promises have been made to Guarantor by any person to induce Guarantor to enter into this Agreement, except as set forth in this

DocuSign Envelope ID: 2BEE3A9824BC13EF5C4FDFC88DF2484

Agreement.  Guarantor is presently informed of the financial condition of Debtor and of all other circumstances that a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations.

        7.1.2  The consideration received by Guarantor in connection with this Agreement is adequate and satisfactory in all respects, and represents reasonably equivalent value, to support this Agreement and Guarantor's obligations hereunder.

## 8. <u>WAIVERS.  GUARANTOR WAIVES:</u>

8.1  ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING BY CONTRACT, STATUTE OR BY OPERATION OF LAW.

8.2  Notice of (a) any adverse change in the financial condition of any Debtor, (b) any default in the performance of the Guaranteed Obligations; and (c) any other notice to which Guarantor might be entitled.

8.3  Any defense or claim arising out of (a) the release of any collateral securing the Guaranteed Obligations or (b) any fact that may increase Guarantor's risk hereunder.

8.4  Any claim of usury.

8.5  Any other defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully paid) of Debtor including any defense arising from any statute of limitations.

8.6  Any defense based on the invalidity, irregularity, or unenforceability of all or any part of the Guaranteed Obligations or any other circumstance which might constitute a defense of a guarantor.

8.7  Any claim or defense based on (a) the validity, legality or enforceability in whole or in part of the Guaranteed Obligations, (b) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement relating to Guaranteed Obligations, (c) any setoff, counterclaim or any circumstances which might constitute a defense or discharge of Guarantor.

8.8  Any lack of power or authority of Debtor.

8.9  Any defense to payment hereunder resulting from Creditor's releasing the Debtor or any other obligor owing the Guaranteed Obligations from their obligation to pay the Guaranteed Obligations, as well as Creditor's failure to give Guarantor notice thereof.

8.10  All Guarantor's rights of reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor.

8.11  All rights and defenses arising out of an election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the Debtor.

Avondale - Indemnity.docx

## 9. **ACKNOWLEDGEMENTS AND AGREEMENTS.**

9.1 **Modifications to Credit Documents and Guaranteed Obligations.** Without notice to Guarantor and without affecting or impairing the obligations of Guarantor hereunder, Creditor may, compromise or settle, extend the period of duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, release any obligor of the Guaranteed Obligations or may grant other indulgences to Debtor in respect thereof, or may amend the Credit Documents, or may enforce, exchange, release, or waive any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations.

## 10. **NOTICES.**

10.1 All notices shall be effective upon: (a) the sending of an email to one of the email addresses below or (b) delivery to a recognized overnight delivery service of a properly addressed notice, delivery prepaid, with instructions to make delivery on the next business day. For purposes hereof, the addresses of the parties are as set forth below or as may otherwise be specified from time to time in a writing sent by one party to the other in accordance with the provisions hereof:

### Guarantors

| | |
|---|---|
| Address: | Robert J. Andris |
| | 1623 Gatewick Place |
| | Keswick, VA 22947 |
| Email address: | Robert.j.andris@avondaledecor.com |

| | |
|---|---|
| Address: | Linda M. Andris |
| | 30 Charles Street Apt 4C |
| | Westwood, NJ 07675 |
| Email address: | linda.m.andris@avondaledecor.com |

### Creditor

| | |
|---|---|
| Address: | 12761 World Plaza Lane |
| | Ft. Myers, FL 33907 |
| Officer: | Carlos Weil |
| Email address: | cweil@capitalsolutionsbancorp.com |

## 11. **AMENDMENT AND WAIVER.**

11.1 Only a writing signed by all parties hereto may amend this Agreement. No failure or delay in exercising any right hereunder shall impair any such right that Creditor may have, nor shall any waiver by Creditor hereunder be deemed a waiver of any default or breach subsequently occurring. Creditor's rights and remedies herein are cumulative

Avondale - Indemnity.docx

and not exclusive of each other or of any rights or remedies that Creditor would otherwise have.

## 12. **COSTS AND EXPENSES.**

12.1  Guarantor agrees to reimburse Creditor on demand for the actual costs including attorneys' fees, which Creditor has incurred or may incur in enforcing this Agreement or in connection with any federal or state insolvency proceeding commenced by or against Guarantor, including those (a) arising out of the automatic stay, (b) seeking dismissal or conversion of the bankruptcy proceeding or (c) opposing confirmation of Guarantor's plan thereunder.

## 13. **SUCCESSORS AND ASSIGNS.**

13.1  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

13.2  Creditor may assign its rights and delegate its duties hereunder in connection with an assignment of the Guaranteed Obligations.  Upon such assignment, Guarantor shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Creditor.

## 14. **ENTIRE AGREEMENT.**

14.1  No promises of any kind have been made by Creditor or any third party to induce Guarantor to execute this Agreement.  No course of dealing, course of performance or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

## 15. **REVOCATION.**

15.1  Guarantor waives any right to revoke the Agreement as to future Guaranteed Obligations.

15.2  If, contrary to the express intent of this agreement, any such revocation is attempted by Guarantor:

15.2.1  It shall not be effective until thirty days after written notice thereof has been actually received by any officer of Creditor;

15.2.2  It shall not apply to any Guaranteed Obligations in existence on such date (including any subsequent continuation, extension, or renewal thereof);

15.2.3  It shall not apply to any Guaranteed Obligations made or created after such date pursuant to a commitment of Creditor which was, or is believed in good faith by Creditor to be, in existence on the date of such revocation;

Avondale - Indemnity.docx

15.2.4  No payment by any other guarantor or Debtor, or from any other source, prior to the date of such revocation shall reduce the obligations of Guarantor hereunder; and

15.2.5  Payment by any other Guarantor or Debtor, or from any other source shall be first applied to Guaranteed Obligations, if any, as to which the revocation by Guarantor is effective and, to the extent so applied, shall not reduce the obligations of Guarantor hereunder.

## 16. **CHOICE OF LAW**

16.1  This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the Chosen State.

## 17. **WAIVER OF TRIAL BY JURY.**

**17.1  IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

## 18. **VENUE; JURISDICTION.**

18.1 Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Creditor so elects, be instituted in any court sitting in the Chosen State, nearest to Ft. Myers, Florida (the "Acceptable Forum").  Guarantor agrees that the Acceptable Forum is convenient to it, and submits to the jurisdiction of the Acceptable Forum and waives any and all objections to jurisdiction or venue.  Should such proceeding be initiated in any other forum, Guarantor waives any right to oppose any motion or application made by Creditor to transfer such proceeding to the Acceptable Forum.

DocuSign Envelope ID: 5FE43A0B4F3F13EF3C19FD4EC88D8D9A

19. **SERVICE OF PROCESS.**

   19.1  Guarantor agrees that Creditor may effect service of process upon Guarantor by regular mail at the address set forth herein or at such other address as may be reflected in the records of Creditor, or at the option of Creditor by service upon Guarantor's agent for the service of process.

   IN WITNESS WHEREOF, Guarantor has executed this Agreement as of the date first written above.



_(signature)_

Robert J. Andris
_____, individually
_(your name)_

Linda M Andris
_____, individually
_(your name)_

Avondale - Indemnity.docx

February 12, 2019

TO WHOM IT MAY CONCERN:

     Re: **Assignment of Accounts Receivable**

Ladies and Gentlemen:

     This letter confirms that we have assigned our present and future accounts receivable to **Capital Solutions Bancorp LLC** ("CSB"), to whom all payments must be made, and constitutes "reasonable proof that the assignment has been made" as that term is used in Section 9-406(c) of the Uniform Commercial Code.

     You may rely on an electronic copy of this letter in lieu of the original.

     This letter supersedes any prior communication which you may have received concerning the above, and may be rescinded **only by CSB in writing**. It may not be rescinded by us.

     Very truly yours,

     **Avondale Decor, LLC**

Signature: _Robert J. Andris_
               79E083064AC54B3...

Name: Robert J. Andris

Title: Vice President

**CONFIRMED:**

**CAPITAL SOLUTIONS BANCORP LLC**

By: _Ms. Ana Kukaj_
         607B82110BA34E1
Ana Kukaj, Controller