UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ROBERT J ANDRIS, and
AVONDALE DÉCOR, LLC,

    Plaintiffs,

v.

CAPITAL SOLUTIONS BANCORP, LLC,

    Defendant.

Case No.: 2:25-cv-450-JES-NPM

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO
<u>DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

Plaintiffs Robert J. Andris ("Andris") and Avondale Décor, LLC ("Avondale"), by and through undersigned counsel, submit this response in opposition to Defendant Capital Solutions Bancorp, LLC's ("Capital Solutions") Partial Motion to Dismiss Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint [D.E. 27], and state:

**<u>BACKGROUND</u>**

1. On May 28, 2025, Plaintiffs filed their Complaint against Capital Solutions, asserting claims for: (i) Criminal Usury; (ii) Breach of Contract; (iii) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (iv) Unjust Enrichment; (v) Injunctive Relief. *See* D.E. 1.

2. On June 2, 2025, Plaintiffs filed their Amended Complaint against Capital Solutions, alleging the same claims against Capital Solutions. *See* D.E. 5.

3. On September 8, 2025, Plaintiffs filed their Second Amended Complaint against Capital Solutions, alleging additional claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Rescission. *See* D.E. 25.

1

4. This dispute arises out of a Business Loan Agreement between Plaintiffs and Capital Solutions, executed on February 12, 2019. *See id.*, Ex. 1.

5. The Business Loan Agreement contains clauses with competing choice of law provisions, for Florida law and Virginia law. *See id.*, ¶ 41; Ex. 1, p. 41, 47.

6. The Agreement, while framed as a factoring agreement, was always intended to provide Capital Solutions with full compensation for its advancements, and was in reality a usual loan agreement. *See id.*, ¶ 53.

7. Despite the Agreement containing representations by Capital Solutions that it would not charge a rate above the legal limit, the Agreement charges an interest rate equal to at least an APR of 40.04%. *See id.*, ¶ 62.

8. On July 14, 2025, Capital Solutions filed its Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint, baselessly alleging that Plaintiffs' Amended Complaint fails to state a claim for criminal usury and violation of FDUTPA under Virginia law and that Andris waived the right to bring a claim of usury under the Agreement. *See* D.E. 15.

9. On August 18, 2025, this Court entered an order dismissing Counts I and III of Plaintiffs' Amended Complaint. *See* D.E. 18.

10. On September 8, 2025, Plaintiffs filed a Second Amended Complaint, addressing the previous alleged bases for dismissal and adding three new claims for fraudulent misrepresentation, negligent misrepresentation, and rescission. *See* D.E. 25.

11. On September 18, 2025, Capital Solutions filed its Motion to Dismiss Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint, raising the same bases for dismissal as it alleged in its first Motion to Dismiss. *See* D.E. 27.

## LEGAL STANDARD

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lemquist v. Carnival Corp.*, 2023 U.S. Dist. LEXIS 32032, at *4 (S.D. Fla. Feb. 27, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and ***take its factual allegations as true***." *Lemquist*, 2023 U.S. Dist. LEXIS 32032, at *5 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)) (emphasis added).

In Florida, the "longstanding rule" is that "the court's review is limited to an examination solely of the complaint and its attachments." *Santiago v. Mauna Loa Invs., LLC*, 189 So. 3d 752, 755-57 (Fla. 2016); *see also Crabb v. Ingram*, 2024 U.S. Dist. LEXIS 62358, at *2 (S.D. Fla. Mar. 18, 2024). Otherwise, "[e]xtrinsic material that is referred to in the operative complaint and attached to a motion to dismiss may be considered by the court at the pleading stage if the attached material is (1) central to the plaintiff's claim and (2) the authenticity of the document is not challenged." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024). Lastly, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks*, 116 F.3d at 1369. "According to the *Erie* doctrine, federal courts sitting in diversity must apply the forum state's choice of law rules." *Chemische Fabrik Budenheim Kg v. Bavaria Corp. Int'l*, 2009 U.S. Dist. LEXIS 137308, at * 5 (M.D. Fla. July 8, 2009).

## ARGUMENT

**I.    This Court should apply Florida Law to Plaintiffs' usury claims.**

**A.    The State chosen by the choice of law provision bears no reasonable relationship to the Loan Agreement.**

"Florida courts will generally enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Walls v. Quick & Reilly*, 824 So. 2d 1016, 1018 (Fla. 5th DCA 2002). "Florida Courts will recognize a choice of law provision provided by the parties so long as the jurisdiction chosen in the contract has a normal relationship with the transaction." *Continental Mortgage Investors v. Sailboat Key, Inc.*, 395 So. 2d 507, 508 (Fla. 1981); *see also May v. United States Leasing Corp.*, 239 So. 2d 73, 75 (Fla. 4th DCA 1970) ("Effect with be given to the intention of the parties only as far as that intention is directed to the law of the place that has a real and vital, and not merely fictitious, connection with the transaction"). "[P]arties could contract for a higher interest allowed by either place of performance, place of execution, or a place with a vital and natural connection." *Continental Mortg.*, 395 So. 2d at 508; *see also Morgan Walton Properties, Inc. v. International City Bank & Trust Co.*, 404 So. 2d 1059, 1063 (Fla. 1981) (Applying the choice of law provision for Louisiana because Louisiana "was not only the place of contracting and performance, but was also the state of the lender's domicile").

In this case, the state chosen as the choice of law, Virginia, does not have a normal and reasonable relation to the transaction. The Loan Agreement was drafted by Capital Solutions, a Florida corporation. *See* D.E. 25, ¶ 42. The Loan Agreement's performance was substantially conducted in Florida, with Capital Solutions "being the party responsible for managing all transactions and charges conducted under the Loan Agreement." *See id.* The only connection to

4

Virginia Capital Solutions alleges was the basis for the choice of law clause, is that Avondale is domiciled in Virginia. *See* D.E. 27, p. 5. However, as alleged by Plaintiffs, Avondale's sole member is Linda Andris, whose residence is in the state of New Jersey. *See id.*, ¶ 2. Therefore, Avondale is domiciled in the state of New Jersey. *See Lovers Indus. USA, LLC v. Lovers Indus. Corp.*, 2025 U.S. Dist. 82004, at * 6 (S.D. Fla. April 30, 2025) ("It is well-established that the citizenship of a limited liability company is determined based on the citizenship of its members"). Further, at the time this action was filed, Avondale's principal place of business was located in the state of New Jersey. Accordingly, at the time this action was filed, the Loan Agreement, and the parties to it, had no meaningful or reasonable connection to the state of Virginia. Accordingly, this Court should not apply the choice of law provision in the Loan Agreement, as not reasonably connected to the Loan Agreement and included by Capital Solutions in bad faith.

      **B.     Any ambiguity or contradiction between the choice of law provisions within the Agreement should be construed against the drafter of the Agreement.**

The Guaranty Clauses within the Business Loan Agreement, having been executed by the same parties at the same time and as part of a single transaction, should be interpreted together to form a single contract. *See Hopfenspirger v. West*, 949 So. 2d 1050, 1053 (Fla. 5th DCA 2006) ("Florida law is well-settled that where two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together").

The choice of law clause in the Guaranty Clauses specifically defines the "chosen state" that will provide the choice of law and venue as Florida. *See* D.E. 25, Ex. 1 p. 50, 56. While the choice of law clause in the Guaranty Clauses conflicts with the choice of law previously stated in the Agreement, that conflict within the Agreement should be construed against the drafter of the whole Agreement, which was Capital Solutions. *See Kendall Imps., LLC v. Diaz*, 215 So. 3d 95,

5

109 (Fla. 3d DCA 2017) ("[U]nder basic contract principles, conflicts within the written agreement are to be construed against the drafter"); *see also Stateline Power Corp. v. Kremer*, 148 F. App'x 770, 771 (11th Cir. 2005) ("Plaintiff drafted the agreement, hence, the ambiguity must be resolved in favor of the defendant"). Accordingly, this Court must construe the meaning and applicability of the competing choice of law provisions in the Agreement against Capital Solutions, as the drafter, and apply the clause found in the Guaranty Clauses, which is the interpretation favored by Plaintiffs, as the non-drafters. *Cf. Eastman v. Life Ins. Co. of N. Am.*, 322 F. Supp. 3d 1255, 1258-59 (M.D. Ala. 2018) (Holding that conflicting choice of law provisions created ambiguity, which should be resolved in favor of the non-drafter's interpretation of the controlling choice of law provision).

      **C.**    **The Guaranty Clauses, which removed any risk of loss under the Agreement for Defendant, contain a Florida choice of law provision.**

Furthermore, the dispute regarding whether the Agreement as a whole is usurious is specifically rooted in the Guaranty Clauses, which establish that the alleged factoring transaction was a disguised loan. *See* D.E. 25, ¶ 74; *see also Foster v. Weber*, 578 So. 2d 857, 858 (Fla. 5th DCA 1991) (emphasis added) ("[O]ne of the badges of a disguised usurious transaction can be a discounted transfer of an instrument in which the transferee is ***required to endorse or otherwise guarantee payment of the underlying instrument***"). Without the Guaranty Clauses, which protect Capital Solutions from any risk of loss under the Agreement, the Agreement would not run afoul of usury law, which is the primary basis for Plaintiffs' claims within the Complaint. *See* D.E. 25, ¶ 76; *see also Beausejour Corp. N.V. v. Offshore Dev. Co., Inc.,* 802 F.2d 1319, 1322 (11th Cir. 1986) ("A financing transaction may be exempted from the usury statute if there is a substantial risk, i.e., a change of losing one's whole investment").

6

Capital Solutions disguised a usurious loan agreement by requiring the Plaintiff to sign a personal guaranty removing all risk of non-payment. Capital Solutions included a Florida choice-of-law provision within this Guaranty Clause, leading Plaintiffs to expect that the Agreement would be interpreted under Florida law, including Florida usury law and the protections therein. *See* D.E. 25, ¶ 43. For Capital Solutions to now refuse to allow the Plaintiffs to avail themselves of this choice of law provision is not only nonsensical, it is fundamentally deceptive and unfair. Therefore, Plaintiffs' claims of criminal usury towards the Agreement as a whole arise from, and necessarily entail, the Guaranty Clauses. Accordingly, the Agreement should be governed by and construed under the parties' choice of law as stated in the Guaranty Clauses.

## II.     The purported waiver in the Guaranty Clauses is not an enforceable waiver against Andris.

### A.     A claim for Criminal Usury cannot be waived.

"The penalties for civil usury include forfeiture of double the interest actually charged and collected. The civil penalty for criminal usury is significantly greater: forfeiture of the right to collect the debt at all." *Velletri v. Dixon*, 44 So. 3d 187, 189 (Fla. 2d DCA 2010); *see also* § 687.071(7), Fla. Stat. ("No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state"). Florida law is clear that "any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum . . . whether directly or indirectly, or conspires to do so, commits a misdemeanor of the second degree." § 687.071(2), Fla. Stat. "The Legislature deems the charging of higher rates of interest as criminal, and has imposed severe penalties on persons engaged in criminal usurious practices…" *Oregrund Ltd. P'ship v. Sheive*, 873 So. 2d 451, 456 (Fla. 5th DCA 2004); *see also*, *Title & Tr. Co. v. Parker*, 468 So. 2d 520, 524 (Fla. 1st DCA 1985) ("It is clear that Chapter 687,

7

Florida Statutes, is a legislative declaration of a public policy against usury, as the statute contemplates both the forfeiture of usurious interest, Section 687.04, as well as the non-enforcement of a criminally usurious debt").

"The theory upon which laws against usury have been enacted, and the principle which has governed in their interpretation, have always been, that the borrower was at the mercy of the lender, and subject to his utmost exactions and avaricious demands, unless protected by laws." *Pushee v. Johnson*, 166 So. 847, 849 (Fla. 1936). Such laws "are designed for the borrower's protection and benefit, and the protection and benefit of those thus representing him, when he or they has or have suffered loss or injury from the unlawful exactions of the lender, or may suffer such loss or injury from the performance of the usurious contract, and when likewise he or they see fit not to waive the sanction or penalty of the statute in his favor." *Id.*

In the present matter, Defendant attempts to circumvent the well-established protections afforded by Florida usury law by relying upon a purported waiver of usury claims however, such a provision cannot save what is an unenforceable criminally usurious loan agreement. Even in the presence of a usury "savings clause" the Florida Supreme Court has "reject[ed] the use of a savings clause as an absolute bar to a usury claim [as] . . . a contrary holding would permit a lender to "relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done[. . .]." *Jersey Palm-Gross v. Paper*, 658 So. 2d 531, 535 (Fla. 1995). "If approved . . . this practice would undermine public policy as set by the legislature and defeat the purpose of Florida's usury statute.…" *Id.*

Accordingly, there can be no waiver of Andris' claim for Criminal Usury, and this Honorable Court should not dismiss Count I of Plaintiffs' Amended Complaint.

8

### B. Andris did not voluntarily and intentionally waive his right to a claim of usury.

"Waiver is the voluntary, intentional relinquishment of a known right." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994). "Waiver requires (1) the existence, at the time of the waiver, of a right, privilege, advantage, or benefit which may be waived, (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *Witt v. Metro Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014). "[T]here can be no waiver if the party against whom the waiver is invoked did not know all of the material facts . . . or was misled about the material facts." *Winans v. Weber*, 979 So. 2d 269, 274 (Fla. 2d DCA 2007); *see also Allen v. Jacksonville*, 2022 U.S. Dist. LEXIS 225338, at * 35 (M.D. Fla. Dec. 14, 2022) ("[T]o waive the right, the party must know it existed and know all the material facts").

Capital Solutions made multiple misrepresentations of material fact about the Agreement to Plaintiffs. Capital Solutions described the Agreement as a factoring agreement accompanied by a personal guaranty in order to disguise the true nature of the Agreement as a loan. *See* D.E. 25, ¶ 10. Additionally, in the Agreement, Capital Solutions claimed that "in no contingency or event whatsoever, shall the fees and charges paid or agreed to be paid to Purchaser exceed the highest lawful rate." *See id.*, Ex. 1, p. 38. Finally, in the Agreement, Capital Solutions represented that "[i]f, from any circumstances whatsoever, the fulfillment of a provision hereof…shall involve transcending the limit of validity…, then the fees and charges to be paid to Purchaser shall be reduced to the limit of such validity and, Purchaser shall promptly refund such excess to Seller." *See id.* Based on these representations, Andris agreed to the waiver found in the guaranty clause, with the belief that Plaintiffs would never be expected to pay a usurious rate, without a subsequent credit and refund.

However, under the terms of the Agreement, the fees and charges to be paid to Capital Solutions were equivalent to at least an APR of 40.04%, above the limit for non-usurious loans. *See id.*, ¶ 80-81. Despite charging this usurious rate, Capital Solutions never credited or refunded Plaintiffs for the amount charged in excess of the 25% limit established by Fla. Stat. § 687.071(2). Since Andris' purported waiver of her right to a claim of usury was based on Capital Solutions' misrepresentation of material facts, it is not an enforceable waiver. *See Winans*, 979 So. 2d at 274. Therefore, this Honorable Court should not dismiss Count I of Plaintiffs' Second Amended Complaint.

### III. This Court should not dismiss Plaintiffs' claims for violation of FDUTPA.

FDUTPA "does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract." *Mgmt. Computer Controls. Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 632 (Fla. 1st DCA 1999). Instead, FDUTPA generally prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. "FDUTPA violation can occur two ways: (1) *per se*, when premised on the violation of another law proscribing unfair or deceptive practice, or (2) a traditional violation involving some other unfair or deceptive practice." *Tymar Distrib. LLC v. Mitchell Grp. United States, LLC*, 558 F. Supp. 3d 1275, 1289 (S.D. Fla. 2021). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). "An act is deceptive if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Tymar Distrib.*, 558 F. Supp. 3d at 1289.

### A. This Court should apply Florida Law to Plaintiffs' FDUTPA claims.

"Florida courts will generally enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Walls*, 824 So. 2d at 1018. Several courts have held that the application of choice of law and forum selection clauses to FDUTPA claims violates Florida's public policy. *See Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1309 (M.D. Fla. June 6, 2017) (Holding that the Maryland choice of law provision should not apply to the plaintiffs' FDUTPA claim because of FDUTPA's "broader statutory purpose [of] protect[ing] the consuming public and legitimate business enterprises"); *Am. Online, Inc. v. Pasieka*, 870 So. 2d 170, 172 (Fla. 1st DCA 2004) (Upholding the trial court's denial of the defendant's motion to dismiss based on the forum selection clause because a "the purpose and effectiveness of the FDUTPA would be seriously undermined if the claims here were required to be brought in Virginia"); *Mgmt. Computer Controls*, 743 So. 2d at 633 (Reversing dismissal of plaintiff's FDUTPA claim because application of the venue clause would "undermine the purpose of the statute upon which the claim is based…"). Accordingly, Plaintiffs' FDUTPA claims should be governed by Florida Law, in light of the substantial public policy and purpose of FDUTPA.

### B. Plaintiffs sufficiently stated a claim against Capital Solutions for a violation of FDUTPA.

In this case, Plaintiffs have alleged that Capital Solutions committed both *per se* and traditional violations of FDUTPA. D.E. 25, ¶ 104. Plaintiffs alleged that Capital Solutions engaged in a *per se* violation of FDUTPA by engaging in an unfair practice when it charged interest rates higher than the legal limit for non-usurious loans. *See id.*, ¶ 105. While Florida laws, including its usury laws should apply, for the reasons explained above, Plaintiff additionally alleged multiple separate traditional violations of FDUTPA, which do not require application of Florida usury law. *See id.*, ¶ 107-110.

11

Because several courts have held that application of choice of law and forum selection clauses to FDUTPA claims violates Florida's public policy, this court should apply Florida law in addressing Plaintiffs' claims for a traditional violation of FDUTPA. *See Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1309 (M.D. Fla. June 6, 2017) (Holding that the Maryland choice of law provision should not apply to the plaintiffs' FDUTPA claim because of FDUTPA's "broader statutory purpose [of] protect[ing] the consuming public and legitimate business enterprises"); *Am. Online, Inc. v. Pasieka*, 870 So. 2d 170, 172 (Fla. 1st DCA 2004) (Upholding the trial court's denial of the defendant's motion to dismiss based on the forum selection clause because a "the purpose and effectiveness of the FDUTPA would be seriously undermined if the claims here were required to be brought in Virginia"); *Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 633 (Fla. 1st DCA 1999) (Reversing dismissal of plaintiff's FDUTPA claim because application of the venue clause would "undermine the purpose of the statute upon which the claim is based…"). Accordingly, Plaintiffs' FDUTPA claims should be governed by Florida Law, in light of the substantial public policy and purpose of FDUTPA.

Plaintiffs alleged that Capital Solutions committed a traditional violation of FDUTPA when it "included a Virginia choice of law provision in the Loan Agreement, despite the Agreement being drafted and performed in Florida and the Guaranty Clauses containing a competing Florida choice of law provision, in an effort to further exculpate themselves from liability under Florida's usury laws." *See id.*, ¶ 107. Plaintiffs alleged that Capital Solutions committed another traditional violation of FDUTPA when it required an additional three clearance days, despite payment processing immediately, to increase the fees charged. *See id.*, ¶ 108. Plaintiffs alleged that Capital Solutions committed a third traditional violation of FDTUAP when it calculated the service fee using the undiluted value, rather than the diluted value advanced to

Avondale. *See id.*, ¶ 109. Finally, Plaintiffs alleged that Capital Solutions engaged in a traditional violation of FDUTPA when it applied the late payment fee retroactively, including to dates when the payment was not yet past due. *See id.*, ¶ 110. Therefore, in addition to the *per se* violation of Florida's criminal usury statute, Plaintiffs have sufficiently alleged several traditional violations of FDUTPA. *See Tymar Distrib.*, 558 F. Supp. 3d at 1289. Accordingly, this Court should not dismiss Count III of Plaintiffs' Second Amended Complaint.

## IV. This Court should not dismiss Plaintiffs' claims for fraudulent misrepresentation.

"To state a claim for fraud in the inducement, a plaintiff must allege (1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003).

"The independent tort doctrine is a general principle of law that provides a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Costa Invs., LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 632 (Fla. 4th DCA 2022). "If fraud occurs in connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." *Allen v. Stephan Co.*, 784 So. 2d 456, 457 (Fla. 4th DCA 2000); *see also Gonzalez v. Indep. Order of Foresters*, 2023 U.S. Dist. LEXIS 20050, at *5 (S.D. Fla. Feb. 6, 2023) ("Fraudulent inducement is generally a tort independent from a breach of contract because it requires the plaintiff to prove the facts separate and distinct from the facts necessary to prove the breach of contract"). "In assessing whether fraud in the inducement is distinct from a

13

claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." *Kaye v. Ingenion, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 20214 U.S. Dist. LEXIS 73180, at *5 (S.D. Fla. May 9, 2014).

Plaintiffs alleged Capital Solutions made several representations of material fact, including, but not limited to, that the interest rate was a "weekly service charge" or that it would only charge 0.77% per week with no "nickel and dime fees." *See* D.E. 25, ¶ 120-125. Despite Capital Solutions' allegations to the contrary, the representations' inclusion in the Loan Agreement does not bar their basis for a claim of fraudulent misrepresentation. *See La Pesca Grande Charters v. Moran*, 704 So. 2d 710, 713[1] (Fla. 5th DCA 1998) ("[T]he notion that a knowing fraud perpetrated to induce someone to enter a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract makes no sense"); *Harbaugh v. Greslin*, 2004 U.S. Dist. LEXIS 28598 (S.D. Fla. Dec. 13, 2004) ("[T]he inclusion of misrepresentations in a contract do[es] not extinguish a fraud in the inducement claim"). The cases cited by Capital Solutions in support of its proposition relate to cases where the representations were expressly contradicted by the later written agreement, negating any justifiable reliance. *See Giallo v. New Piper Aircraft, Inc.*, 855 So. 2d 1273, 1275 (Fla. 4th DCA 2003) (Dismissing plaintiff's fraudulent misrepresentation claim because the agreement's terms explicitly contradicted the representation plaintiff alleges the defendant made); *see also Mac-Gray Servs. v. DeGeorge*, 913 So. 3d 630, 634 (Fla. 4th DCA 2005) (Finding the contract precludes reliance by the plaintiff because "the purchasers specifically agreed that the seller was not guaranteeing any level of profitability…and

---

[1] Capital Solutions' Motion alleges that the quote "[t]he mere failure to perform a promise or a contractual obligation does not constitute fraud" is found in this case. *See* D.E. 27, p. 10. However, that quote, or any similar language, is not found within the text of the case.

14

the purchasers also agreed they were not relying on the seller's expertise or any representations made by the seller").

In this case, the representations made by Capital Solutions in negotiations for the Loan Agreement were explicitly restated within the terms of the Loan Agreement, without any disclaimer of reliance on the statements. As alleged by Plaintiffs, Capital Solutions knew these statements were false and made the representations during negotiations to induce Plaintiffs to rely on the representations and act on the representations in agreeing to the Loan Agreement. *See* D.E. 25, ¶ 126-27. Finally, Plaintiffs allege that they justifiably relied on the representations in agreeing to the Loan Agreement, resulting in injury. *See* D.E. 25, ¶ 128-29. Therefore, Plaintiffs' allegations of fraud, taken as true at this stage, are based on the damage of having entered into the Loan Agreement, separate and distinct from any failure to perform. *See La Pesca Grande*, 704 So. 2d at 713 ("In a fraud in the inducement situation, if there is damage based on a decision to contract that would otherwise not be made, a cause of action for fraud exists"). Therefore, Plaintiffs have sufficiently alleged a claim for fraud in the inducement, separate and distinct from a breach of contract action. Accordingly, this Court should not dismiss Count V of Plaintiffs' Second Amended Complaint.

**V. This Court should not dismiss Plaintiffs' claims for negligent misrepresentation.**

"To establish negligent misrepresentation, a party is required to prove: (1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury. *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017).

15

"The independent tort doctrine is a general principle of law that provides a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Costa Invs., LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 632 (Fla. 4th DCA 2022). The independent tort doctrine "applies to misrepresentations made during the performance of a contract but does not apply to misrepresentations made independently of the contract." *Kelly v. Lee Cnty. RV Sales Co.*, 2018 U.S. Dist. LEXIS 106429, at * 2 (M.D. Fla. June 26, 2018); *see also Aslin Bear Co., LLC v. Brewfab, LLC*, 2023 U.S. Dist. LEXIS 100933, at * 7 ("[F]raudulent inducement type claims, where misrepresentations allegedly induced one to enter into a contract in the first place, are generally considered to be independent from a breach of contract").

In this case, Plaintiffs allege that Capital Solutions made multiple misrepresentations, including, but not limited to, that the interest rate was a "weekly service charge" or that it would only charge 0.77% per week with no "nickel and dime fees." *See* D.E. 25, ¶ 131-36. Plaintiffs allege that "[w]hen Capital Solutions made these statements, it knew or should have known the[] statements were false." *See id.*, ¶ 138. Further, Plaintiffs allege that Capital Solutions made the representations "in an effort to induce Avondale and Andris to agree to the Loan Agreement." *See id.*, ¶ 139. Finally, Plaintiffs allege that they justifiably relied on the representations, inducing them into entering into the Loan Agreement. *See id.*, ¶ 140-41. Because Plaintiffs' negligent misrepresentation claim is based on misrepresentations which they allege induced them into entering into the Loan Agreement, the negligent misrepresentation claim is an independent tort, not barred by the independent tort doctrine. *C.f. Aslin Beer*, 2023 U.S. Dist. LEXIS 100933, at * 7 (Denying the defendant's motion to dismiss plaintiff's negligent misrepresentation claim because the claim "alleges misrepresentations…that induced [plaintiff] to enter into the contract"); *Gonzalez*, 2023 U.S. Dist. LEXIS 20050, at *5 (Finding the plaintiff's negligent misrepresentation

16

claim was not barred by the independent tort doctrine because the claim was based on "pre-contract false representations which caused Plaintiff to enter into the [contract]"); *Prime Prop. v. Kepali Grp., Inc.*, 2022 U.S. Dist. LEXIS 238761, at * 9, (S.D. Fla. October 28, 2022) (Holding defendant's negligent misrepresentation counterclaim is not barred by the independent tort doctrine because it is "based on purported misrepresentation that induced [the defendant] to continue with the insurance policy"). Therefore, Plaintiffs have sufficiently alleged a claim for negligent misrepresentation, separate and distinct from a breach of contract action. Accordingly, this Court should not dismiss Count VI of Plaintiffs' Second Amended Complaint.

## VI. This Court should not dismiss Plaintiffs' claim for rescission.

Capital Solutions alleges that Plaintiffs fail to state a cause of action for rescission because its allegations are "nothing more than allegations of a breach of contract." *See* D.E. 27, p. 10-11. However, the independent tort doctrine does not bar Plaintiffs' equitable rescission claim. *See Costa Invs.*, 353 So. 3d at 632 ("The independent tort doctrine is a general principle of law that provides a plaintiff may not ***recover in tort*** for a contract dispute unless the tort is independent of any breach of contract"); *TTSI Irreovcable Trust v. ReliaStar Life Ins. Co.*, 60 So. 3d 1148, 1150 (Fla. 5th DCA 2011) ("Rescission is an ***equitable remedy*** where the primary obligation is to undo the original transaction and restore the former status of the parties"). Florida courts have explicitly allowed rescission as a remedy in actions involving breach of contract where there is "fraud or some independent ground for equitable relief therefrom." *Pinellas Cent. Bank & Trust Co. v. International Aerodyne, Inc.*, 233 So. 2d 872, 879 (Fla. 3d DCA 1970); *Bank of N.Y. Mellon v. Reyes*, 126 So. 3d 304, 307 (Fla. 3d DCA 2013). In this case, Plaintiffs allege that Capital Solutions' multiple fraudulent and wrongful misrepresentations constitute an independent equitable ground for rescission. *See* D.E. 25, ¶ 155-57. Therefore, Plaintiffs are allowed to pursue

their claim for rescission in the alternative to their breach of contract claim. Accordingly, this Court should not dismiss Count VIII of Plaintiff's Second Amended Complaint.

### VII. Andris possesses standing to assert these claims.

To possess standing Plaintiff must show (1) "that he suffered an injury in fact that is concrete, particularized, and actual or imminent," (2) that the injury is traceable to—that is, "was likely caused by"—the defendant's legal violation, and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "The normal remedy for a lack of subject matter jurisdiction is dismissal without prejudice." *Haddon v. FS Invs. of Am., Inc.*, 2024 U.S. Dist. LEXIS 223782, at * 7 (M.D. Fla. December 11, 2024).

In this case, Andris is only individually asserting claims for fraudulent misrepresentation, negligent misrepresentation, and rescission. "To establish standing for a negligent or fraudulent misrepresentation claim, Plaintiff must demonstrate either that the Defendants' misrepresentation was directly made to it and Plaintiff relied on the misrepresentation to its detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon." *Branch Banking & Trust Co. v. Appraisal First, Inc.*, 2010 U.S. Dist. 166153, at * 9 (S.D. Fla. July 7, 2010). Plaintiffs allege that Capital Solutions made the misrepresentations to both Avondale and Andris. *See* D.E. 25, ¶ 120-25, 131-36. Plaintiffs allege that both Avondale and Andris relied on the representations in agreeing to the Loan Agreement. *See id.*, ¶ 128, 140. As part of their reliance, Andris suffered a personal injury, distinct from Avondale, agreeing to the Guaranty Clauses, subjecting himself to personal financial liability under the Loan Agreement. *See id.*, ¶ 13-16. Andris' personal liability

18

under the Guaranty Clauses, caused by his reliance on the representations made by Capital Solutions, is a separate and distinct injury sufficient to grant him standing to assert these claims. Accordingly, this Court should not dismiss Plaintiffs' claims for lack of standing.

## CONCLUSION

WHEREFORE, Plaintiffs Robert J. Andris and Avondale Décor LLC respectfully request that the Court enter an order denying Defendant Capital Solutions Bancorp, LLC's Motion to Dismiss Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint, and granting any and all other relief that this Court deems just, proper, and equitable.

Dated: October 7, 2025

                      Respectfully submitted,

                      By: */s/Eduardo A. Maura*
                          Eduardo A. Maura, Esq.
                          Florida Bar No. 91303
                          eduardo@ayalalawpa.com
                          Luis F. Quesada Machado, Esq.
                          Florida Bar No. 1010305
                          lquesada@ayalalawpa.com
                          Ryan M. Sawal, Esq.
                          Florida Bar No. 1038500
                          rsawal@ayalalawpa.com
                          **Ayala Law, P.A.**
                          2490 Coral Way, Ste 401
                          Miami, FL 33145
                          P: (305) 570-2208
                          F: (305) 503-7206
                          *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303