UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AVONDALE DECOR, LLC, and
ROBERT J. ANDRIS,

      Plaintiffs,

v.                              Case No: 2:25-cv-450-JES-NPM

CAPITAL SOLUTIONS BANCORP.
LLC,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Partial Motion to Dismiss Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint (Doc. #27) filed on September 18, 2025. Plaintiff filed a Response (Doc. #28) on October 7, 2025. For the reasons set forth below, the motion is granted.

**I.**

On August 18, 2025, the Court issued an Opinion and Order (Doc. #17) dismissing Counts I and III of the Amended Complaint without prejudice because Florida law did not apply and dismissing Counts I through V without prejudice as to Robert Andris for lack of standing. Leave to amend was granted, and on September 8, 2025, plaintiffs filed the Second Amended Complaint (SAC) (Doc. #25), which is now the operative pleading. Defendant now moves to dismiss five of the eight counts in the SAC.

The basic facts alleged in the SAC remain the same as in the prior Amended Complaint, so the Court will simply quote from its prior Opinion and Order (without the citations to the Amended Complaint):

Plaintiff Avondale Décor, LLC (Avondale) is a Virginia limited liability company which designs and manufactures home décor. Plaintiff Robert Andris, a citizen of Virginia, is an "Officer" and "Vice President" of Avondale. His sister Linda Andris, a non-party to this case, is the sole member of Avondale.

In February 2019, Avondale entered into an Amended and Restated Business Loan Agreement (the 2019 Loan Agreement) with Capital Solutions Bancorp, LCC (Capital Solutions or defendant) effective February 12, 2019. Avondale is identified as the "Seller" of certain accounts receivable, while Capital Solutions is identified as the "Purchaser" of the accounts. The 2019 Loan Agreement "amends and restates in its entirety" a prior Business Loan Agreement dated May 24, 2016. The parties agreed that the 2019 Loan Agreement and all transactions under it are governed by the law of Virginia.

The 2019 Loan Agreement provided that from time-to-time Avondale would sell Capital Solutions some or all of its account receivables. In a letter dated February 12, 2019, Avondale advised its customers that it had assigned its present and future accounts receivable to Capital Solutions and directed its customers to make their payments to Capital Solutions. In the 2019 Loan Agreement, Avondale agreed to pay certain fees and expenses to Capital Solutions, the amount of which the parties agreed would not exceed applicable laws, including usury. The 2019 Loan Agreement was amended several times by the parties, but the amendments do not affect the resolution of the motion to dismiss.

The parties further agreed that the provisions of the 2019 Loan Agreement would control over the provisions of other agreements. In one such other agreement, Robert and Linda Andris agreed to an Individual Guaranty and Security Agreement (Guaranty).

> Robert and Linda Andris obligated themselves to
> guarantee the prompt payment and performance of all
> present and future obligations of Avondale to Capital
> Solutions. The Guaranty states that it is governed by
> Florida law and that guarantors waived any claim of
> usury.
>
> Avondale and Robert Andris have filed a five-count
> Amended Complaint against Capital Solutions asserting
> state law claims. Federal jurisdiction is premised on
> diversity of citizenship. In Count I, both plaintiffs
> allege a claim of usury under Florida law. In Count II,
> both plaintiffs allege a claim of breach of contract for
> overcharging fees under the 2019 Loan Agreement. In
> Count III, both plaintiffs allege a claim of violation
> of the Florida Deceptive and Unfair Trade Practice Act
> (FDUTPA) for enforcing a contract calling for usurious
> interest rates. In Count IV, both plaintiffs allege an
> alternative claim for Unjust Enrichment pursuant to
> Florida law. In Count V, both plaintiffs allege a claim
> for injunctive relief to preclude continued enforcement
> of a contract with usurious rates.

(Doc. #17[1], pp. 1-3.)  The claim for injunctive relief previously

set forth in Count V of the Amended Complaint is now set forth in

Count VII of the SAC.  Additionally, the SAC adds three new counts:

Count V alleges a claim of fraudulent misrepresentation; Count VI

alleges a claim of negligent misrepresentation in the alternative;

and Count VIII alleges a claim for rescission of the Loan Agreement

in the alternative.

## II.

The Court's prior Opinion and Order set forth the appropriate

standard of review for a motion to dismiss (Doc. #17, pp. 3-4),

---

[1] <u>Avondale Decor, LLC v. Cap. Sols. Bancorp. LLC</u>, No. 2:25-CV-450-JES-NPM, 2025 WL 2390711, at *1 (M.D. Fla. Aug. 18, 2025).

which the Court adopts without repeating.  The Court adds that "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  "It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting Griffin at 1206).  Thus, "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

### III.

Capital Solutions moves to dismiss the counts brought pursuant to Florida law (Counts I and III) with prejudice, arguing that Virginia law applies, not Florida law.  The Court's prior Opinion and Order set forth the appropriate choice-of-law standard applied in a diversity case(Doc. #17, pp. 4-5), which the Court adopts without repeating.

#### A. Count I: Usury Claim Under Florida Law

Count I of the SAC alleges a claim of criminal usury in violation of Florida law.  (Doc. #25, ¶¶ 68-85.)  Count I asserts that the Loan Agreement was a loan or an advancement of money; that the "service charge" provided in the Loan Agreement was

4

intended to act as an interest on the loan; and that the interest exceeded the 25% per year interest allowed by Florida law.  (Id.) Capital Solutions does not concede the transactions were loans, asserting the Loan Agreement involved "the true sale purchase of" accounts receivables, but acknowledges that the Court must treat plaintiffs' factual allegations as true at the motion to dismiss stage of the proceedings.  (Doc. #27, p. 2.)

Capital Solutions seeks dismissal of Count I because it fails to state a cause of action.  Specifically, Capital Solutions argues that the Agreement is governed by Virginia law, not Florida law, and that Virginia law does not apply usury to transactions exceeding $5 million.  (Id. at 2, 4-6.)  Plaintiffs respond that Florida law does indeed apply because Virginia "bears no reasonable relationship to the Loan Agreement."  (Doc. #28, p. 4.)

The law remains as the Court previously summarized:

> In Florida, "[a]n agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State." Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So. 3d 73, 80 (Fla. 2012) (citing Mazzoni Farms, Inc. v. E.I. DuPont De Nemours Co., 761 So. 2d 306, 311 (Fla. 2000)). See also Viridis Corp. v. TCA Glob. Credit Master Fund, LP, 721 F. App'x 865, 873 (11th Cir. 2018) ("Under Florida law, contractual choice-of-law provisions are presumptively enforceable." (citation omitted)). "This rule is premised on the presumption that choice-of-law provisions are valid unless the party seeking to avoid enforcement of them sufficiently carries the burden of showing that the foreign law contravenes strong public policy of the forum

jurisdiction." <u>Walls v. Quick & Reilly, Inc.</u>, 824 So. 2d 1016, 1018 (Fla. 5th DCA 2002).

(Doc. #17, p. 5.)  The Court previously found that the 2019 Loan Agreement between Avondale and Capital Solutions was governed by Virginia law, that Florida law honors the choice of law agreement unless Virginia law contravenes the strong public policy of Florida, and that plaintiffs had failed to assert such a public policy violation. (<u>Id.</u> at 7-8.)

The SAC adds the following allegations as to the choice of law issues:

> 41. Despite the Loan Agreement's significant relationship with Florida, Capital Solutions attempted to select Virginia law as the choice of law, despite Virginia lacking a serious reasonable relationship to the execution and performance transaction, in an effort to exculpate themselves from liability under Florida's usury laws.

> 42. Capital Solutions chose Virginia Law as the applicable law despite Capital Solutions, as both the lender and the drafter of the Loan Agreement, being located in Florida and the Loan Agreement's actual performance being conducted in Florida, with Capital Solutions being the party responsible for managing all transactions and charges conducted under the Loan Agreement.

> 43. In direct contradiction with their previous provision, Capital Solutions included an additional choice of law provision in the Guaranty Clauses, which lists Florida law as the applicable law, with the intent of misrepresenting or otherwise obscuring the applicable law for the Loan Agreement. See id., p. 27.

> 44. Finally, Capital Solutions misrepresented the character of the Loan Agreement entirely, describing the

agreement as a factoring agreement with a non-usurious interest rate.

45. As a result of these misrepresentations, Andris and Avondale were not aware of the Loan Agreement's effective chosen law or its effect on the validity of the Loan Agreement's interest rate, which they were led to believe would be non-usurious.

46. Therefore, Andris and Avondale did not knowingly agree to and contract for the Loan Agreement's chosen law to be Virginia.

47. The application of Virginia Law in this case would validate these misrepresentations, deprive Andris and Avondale of their right to knowingly contract for the choice of law, and allow Capital Solutions, a Florida Corporation, to contract against liability for an otherwise usurious transaction under the laws of the state the Loan Agreement was drafted and performed.

(Doc. #25 at ¶¶ 41-47.) None of these allegations or plaintiffs' arguments defeat the Virginia choice of law provision in the 2019 Loan Agreement.

**(1) No Public Policy Violation**

As the Florida Supreme Court has stated:

An agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours Co., 761 So. 2d 306, 311 (Fla. 2000). The countervailing public policy must be of sufficient importance and rise above the level of routine policy considerations to warrant invalidation of a party's

choice to be bound by the substantive law of another state. See id. at 312.

Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So. 3d 73, 80 (Fla. 2012). Plaintiffs do not assert there is a public policy which would be violated if Virginia law is applied.

The Florida Supreme Court has held that Florida's usury statutes do not create a strong public policy against recognizing a choice of law provision designating another State's law in an interstate loan contract which calls for interest prohibited as usury under Florida law but supported under the chosen State's law. Cont'l Mortg. Inv'rs v. Sailboat Key, Inc., 395 So. 2d 507, 509-10 (Fla. 1981). See also OFS Equities, Inc. v. Conde, 421 So. 2d 651, 653 (Fla. 3d DCA 1982) ("[T]he mere fact that there exists in Florida a usury statute which prohibits a certain interest rate from being charged does not establish some public policy against either ordinary or criminal usury strong enough to override either the express or constructive intent of the parties that the law of a state which permits higher interest and penalizes usury violations less harshly shall apply.") Accordingly, there is no Florida public policy which prohibits the parties from choosing Virginia law to govern the Loan Agreement.

**(2)  Normal Relation to Transaction**

The SAC alleges that "Virginia lack[s] a serious reasonable relationship to the execution and performance [of the] transaction." (Doc. #25, ¶ 41.) Plaintiffs argue that Virginia

8

law does not apply because Virginia does not have a "normal and reasonable relation to the transaction."  (Doc. #28, p. 4.)  The record, however, establishes that Virginia has "a normal relation to the transaction," and plaintiffs' arguments to the contrary are not convincing.

In the context of a usury claim, Florida has adopted the "traditional rule" which "upholds an agreement against usury by applying foreign law if the foreign jurisdiction has a normal relation to the transaction and would also favor the agreement." Cont'l Mortg. Inv'rs, 395 So. 2d at 512.  The "good faith of the parties is not relevant to a choice of laws question in the usury area unless no substantial or normal relation exists between the foreign jurisdiction and the transaction."  Id.

It is undisputed that plaintiff Avondale Décor, LLC is a Virginia limited liability company and that it is a party to and signatory of the 2019 Loan Agreement.  As such, Avondale Décor is an unincorporated organization that is governed by and must comply with the Virginia Limited Liability Company Act.  Mertz v. Sullivan, 908 S.E.2d 901, 918, 82 Va. App. 762, 797 (Va. App., 2024) (summarizing Virginia's LLC law, Code §§ 13.1-1000 et seq.).  This alone is sufficient to establish a "normal" relationship between Avondale and Virginia as to the business activities of Avondale. E.g., L'Arbalete, Inc. v. Zaczac, 474 F. Supp. 2d 1314, 1323 (S.D. Fla. 2007) ("It is generally accepted that the place of

one parties' residence or incorporation may provide the normal relation to a transaction as contemplated in a choice of usury laws context" (collecting cases)); In re Vision Dev. Group of Broward Cnty., LLC, 411 B.R. 768, 773 (Bankr. S.D. Fla. 2009) (citing L'Arbalete).

Avondale argues that its sole LLC member resides in New Jersey and that its principal place of business is New Jersey, so Avondale is domiciled in New Jersey. (Doc. #28, p. 5.) The citizenship of an LLC for diversity jurisdiction purposes is not what is material to the issue here. Even if domicile was a relevant factor, there is no requirement that there be only one place that has a "normal" relationship to the transaction. OFS Equities, Inc. v. Conde, 421 So. 2d at 653 n.2 ("It matters not that because Conde was a part-time resident of Florida and the note was secured by a mortgage on property owned by Conde in Dade County, Florida, it could also be said that the State of Florida had a normal relation to the transaction. Under the Continental Mortgage Investors[2] analysis, a court does not count the number of contacts with each state, but merely determines if the state which would validate the transaction has a normal relation to it."). The Court finds that Virginia has

---

[2] Continental Mortgage Investors v. SailBoat Key, Inc., 395 So. 2d 507 (Fla. 1981).

a normal and reasonable relation to the Loan Agreement and its transactions.

**(3) Location of Party Drafting Agreement and Performance of Agreement**

The SAC next asserts that Capital Solutions, the lender and drafter of the Loan Agreement, is located in Florida. Additionally, the SAC asserts the actual performance of the Loan Agreement was conducted in Florida, with Capital Solutions being responsible for managing all transactions and charges under the Loan Agreement. (Doc. #25, ¶ 42.)  Plaintiffs argue that this shows a lack of a normal relationship to Virginia. (Doc. #28, pp. 4-5.)

The location of the party drafting an agreement is at best a minor factor, while the location where a contract is performed is a more significant factor.  Neither, however, prevents another location from having a "normal" relationship to the agreement and its transactions.  Here, that normal relationship exists with Virginia.

**(4) Guaranty Agreement's Choice of Law Provision**

The SAC asserts that the choice of law provision in the companion Guaranty designated Florida law as controlling, in "direct contradiction" to the Loan Agreement, and with the intent to misrepresent or obscure the governing law in the Loan Agreement. (Doc. #25, ¶ 43.)  Plaintiffs argue that Capital Solutions included that provision to lead plaintiffs to expect that the Agreement

11

would be interpreted under Florida law, including Florida usury law and its protections.  (Doc. #28, p. 7.)  Plaintiffs argue that in light of the conflict, the choice of law provision in the Loan Agreement should be construed against the drafter, effectively replacing "Virginia" in the Loan Agreement with "Florida" from the Guaranty.  (Id. at 5-6.)

While it is true that an ambiguous contract is construed against the drafter, there is nothing ambiguous in these provisions.  The contracts plainly state that the underlying loan transaction is governed by Virginia law, while the personal guarantee obligation is governed by Florida law.  There is nothing inherently misleading about such provisions, and nothing that requires the parties to choose the same law for both contracts.

Parties to a contract are presumed to know and understand the contents, terms, and conditions of the contract.  Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 166 So. 583, 584 (Fla. 1936). Here the choice of law selections were clearly spelled out in the two agreements.

**(5)  Misrepresentation of "Character" of Loan Agreement**

The SAC asserts that Capital Solutions misrepresented the "character" of the Loan Agreement by describing it as a factoring agreement with a non-usurious interest rate.  This caused plaintiffs to be unaware of the Loan Agreement's chosen law or its effect on the validity of the interest rate.  As a result, neither

12

plaintiff knowingly agreed to, nor contracted for, the Loan Agreement's chosen law to be Virginia.  (Doc. #25, ¶¶ 44-47.)

As the Supreme Court of Florida stated:

> Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.

Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347-48 (Fla. 1977).  "This rule holds true regardless of whether a party simply chooses not to read the agreement or is even physically incapable of reading the agreement."  Calderon v. Sixt Rent a Car, LLC, 114 F.4th 1190, 1204 (11th Cir. 2024) (citations omitted).  The disagreement over whether the contract is a loan, or a sale of assets agreement does not relieve either party of the clear provisions in the contracts.

Plaintiffs argue there can be no waiver of criminal usury under Florida law.  (Doc. #28, pp. 7-8.)  But this is not a criminal prosecution, and the Florida Supreme Court has upheld a contract which adopted a different usury rate than provided by Florida law.

## B. Count III: FDUTPA

The Court is required to make a separate choice of law determination as to each contested issue.  Bayuk v. Prisiajniouk, 2019 WL 4694230, at *3 (M.D. Fla. 2019) (citing Perez v. Fedex Ground Package Sys., 587 F. App'x 603, 606 (11th Cir. 2014)).  The

Court previously found that plaintiffs' Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claim failed because the 2019 Loan Agreement was governed by Virginia's usury law.  (Doc. #17, pp. 9-11.)  Defendant argues that Count III must be dismissed because Virginia law applies, not Florida law, and there is no counterpart to the claim under Virginia law.  (Doc. #27, pp. 6-9.)

The court must first examine the scope of the choice of law provision.  Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009).  "Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001).  Additionally, "[a] choice of law provision that relates only to the agreement will not encompass related tort claims." Cooper, 575 F.3d at 1162 (citing Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1300 (11th Cir. 2003)).

The Loan Agreement contains the following choice-of-law provision: "This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the Chosen State. (Doc. #25-1 at p. 17 ¶27.1.)  The SAC contains the following relevant allegations:

105. Capital Solutions engaged in unconscionable and unfair methods when it charged interest rates higher than the legal limit for non-usurious loans established in Fla. Stat. § 687.03(1).

106. Capital Solutions engaged in unconscionable and unfair methods when it disguised an otherwise usurious interest rate as a weekly "service charge" to avoid liability under Florida's usury laws. *See* **Ex. 1**, p. 23.

107. Capital Solutions engaged in unconscionable and unfair methods when it included a Virginia choice of law provision in the Loan Agreement, despite the Agreement being drafted and performed in Florida and Guaranty Clauses containing a competing Florida choice of law provision, in an effort to further exculpate themselves from liability under Florida's usury laws.

108. Capital Solutions engaged in unconscionable and unfair methods when it required an additional three "clearance days," affecting the fees being charged, despite the payments being processed immediately. *See* **Ex. 1**, p. 8.

109. Capital Solutions engaged in further unconscionable and unfair methods when it calculated the service fee using the original face amount of the invoice, rather than the diluted value used to calculate advancements made to Avondale.

110. Finally, Capital Solutions engaged in unconscionable and unfair methods when it applied the late payment fee retroactively, in violation of the process defined in the Loan Agreement, resulting in late payment fees for times when the accounts were not past due. *See* ***Ex. 1, p. 21.***

(Doc. #25 at ¶¶ 105-110.)  None of the allegations establish that

Virginia is an *improper* choice of law.

15

The Court finds that the choice of law clause applies to the FDUTPA claim, thereby requiring the application of Virginia law. All of the allegations relate to "transactions" stemming from the Loan Agreement, which is governed by Virginia law. "[U]nder Florida law 'a choice-of-law provision that provides for the application of non-Florida law precludes a claim under the FDUTPA.'" Barnes v. StubHub, Inc., No. 19-80475-CIV, 2019 WL 11505575, at *4 (S.D. Fla. Oct. 3, 2019) (quoting Herssein Law Grp. v. Reed Elsevier, Inc., No. 13-23010-CIV, 2014 WL 11370411, at *9 (S.D. Fla. Mar. 5, 2014) (J. Rosenbaum); citing Martin v. Creative Mgmt. Grp., Inc., No. 10-CV-23159, 2013 WL 12061809, at *9 (S.D. Fla. July 25, 2013) (J. Williams) ("Where the parties agreed to a choice-of-law provision in their contract, claims brought under the statutes of other states are generally inapplicable.")). Count III will be dismissed without prejudice.[3]

## IV.

Defendant also argues the SAC fails to state claims in Counts V (fraudulent misrepresentation), VI (negligent misrepresentation, in alternative), and VIII (rescission, in the alternative). As previously noted, Virginia law applies to matters arising from the

---

[3] Plaintiff relies on a line of cases, Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc., 743 So. 2d 627, 632 (Fla. 1st DCA 1999); Am. Online, Inc. v. Pasieka, 870 So. 2d 170, 171 (Fla. 1st DCA 2004), addressing venue and forum selection clauses, not choice of law clauses.

Loan Agreement, including torts that arise from the agreement. While a party can "show both a breach of contract and a tortious breach of duty," "'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 558, 507 S.E. 2d 344, 347 (Va. 1998) (internal citations omitted). "A tort action cannot be based solely on a negligent breach of contract." Id. at 559. The economic loss rule will bar recovery if the duty to plaintiff "arose solely" from the contract. Selective Ins. Co. of the Se. v. Williamsburg Christian Acad., 458 F. Supp. 3d 409, 416 (E.D. Va. 2020); Landfall Tr. LLC v. Fid. Nat'l Title Ins. Co., 647 F. Supp. 3d 464, 474 (E.D. Va. 2022). "Framed this way, the source-of-duty rule attempts to mark off the boundaries of civil liability and to protect our jurisprudence from the modern trend that is intent on 'turning every breach of contract into a tort.'" Tingler v. Graystone Homes, Inc., 298 Va. 63, 82-83, 834 S.E. 2d 244, 255 (2019) (citation omitted).

### A. Count V: Fraudulent Misrepresentation

In Count V, plaintiffs allege that Capital Solutions made misrepresentations of material fact to Avondale and Andris when it: (1) disguised an otherwise usurious interest rate as a weekly service charge; (2) stated that if it charged fees that transcend the limit of validity, it would refund the excess to seller; (3)

17

stated in the Loan Agreement that it would charge the service charge on the undiluted fact amount of the purchased account, or the amount due at time of purchase; (4) stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account became due; and (5) when it included a choice of law provision for Florida law in the Guaranty despite a conflicting provision in the Loan Agreement. (Doc. #25 at ¶¶ 120-125.) Additionally, the SAC alleges:

> 127. Capital Solutions made these representations during negotiations for, and within, the Loan Agreement, in an effort to induce Andris and Avondale to agree to the Loan Agreement.

> 128. Avondale and Andris relied on these representations by Capital Solutions in agreeing to the Loan Agreement. *See* **Ex. 1.**

> 129. As a result of Avondale and Andris' justifiable reliance, Avondale and Andris have suffered damages, with Avondale having spent $1,256,964 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

(Id. at 127-129.)

"[F]raudulent misrepresentation requires that a plaintiff show a 'false representation of a material fact; made intentionally, in the case of actual fraud … reliance on that false representation to their detriment; and resulting damage.'" Caperton v. A.T. Massey Coal Co., Inc., 285 Va. 537, 553, 740 S.E.

2d 1, 9 (2013) (citation omitted).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Under Rule 9(b), a plaintiff who alleges fraud must identify "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" <u>MSP Recovery Claims, Series LLC v. Lundbeck LLC</u>, 130 F.4th 91, 106 (4th Cir. 2025) (quoting <u>Edmonson v. Eagle Nat'l Bank</u>, 922 F.3d 535, 553 (4th Cir. 2019) (citation omitted)).

Plaintiff alleges that Capital Solutions made representations during negotiations for the Loan Agreement.  It may be that plaintiff is relying on statements outside the four corners of the Loan Agreement, but the allegations are not pled with particularity enough to determine the time and place.  Therefore, the motion to dismiss for failure to state a claim will be granted.  The injury is not specific to Andris who only signed the Loan Agreement as an officer of Avondale.  (Doc. #25-1, pp. 19, 24.)  Count V will be dismissed with prejudice as to Andris.

**B. Count VI: Negligent Misrepresentation (in the alternative)**

In Count VI, plaintiffs allege that Capital Solutions made representations of material fact to Avondale and Andris when it: (1) disguised an otherwise usurious interest rate as a weekly service charge; (2) stated that if it charged fees that transcend the limit of validity, it would refund the excess to seller; (3)

stated that it would only charge 0.77% per week with no "nickel and dime fees"; (4) stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account became due; and (5) included a choice of law provision for Florida law in the Guaranty despite a conflicting provision in the Loan Agreement.   (Doc. #25 at ¶¶ 131-136.)

> 137. At the time the representations were made, Capital Solutions owed a duty to Avondale and Andris to truthfully state the terms of the Loan Agreement, and how they would be applied.
>
> 138. When Capital Solutions made these statements, it knew or should have known these statements were false.
>
> 139. Capital Solutions made these representations during negotiations for, and within, the Loan Agreement, in an effort to induce Avondale and Andris to agree to the Loan Agreement.
>
> 140. Avondale and Andris relied on these representations by Capital Solutions in agreeing to the Loan Agreement. *See* **Ex. 1.**
>
> 141. As a result of Avondale and Andris' justifiable reliance, Avondale and Andris have suffered damages, with Avondale having spent $1,256,964 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

(Id. at 137-141.)

"The essence of constructive fraud is negligent misrepresentation."   Richmond Metro. Auth., 256 Va. at 559, 507

S.E. 2d at 347 (citation omitted).  "Virginia courts, therefore, do not recognize negligent misrepresentation as a separate cause of action from that of constructive fraud." Baker v. Elam, 883 F. Supp. 2d 576, 581, 2012 WL 3026363 (E.D. Va. 2012) (citations omitted).  "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." Evaluation Rsch. Corp. v. Alequin, 247 Va. 143, 148, 439 S.E. 2d 387, 390 (1994) (citations omitted).

Construing the count as one for constructive fraud, this "requires clear and convincing evidence 'that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of reliance upon the misrepresentation.'" Self Insured Services Co. v. Panel Sys., Inc., 352 F. Supp. 3d 540, 555, 2018 WL 5260025 (E.D. Va. 2018) (citation omitted).  In other words, "(1) a false representation of material fact; (2) innocently or negligently made; and (3) damage to the injured party as a result of reliance on the misrepresentation." Prince v. Johnson Health Tech Trading, Inc., 653 F. Supp. 3d 307, 315, 2023 WL 1299252 (W.D. Va. 2023) (citation omitted), motion to certify appeal denied, W.D. Va. No. 5:22-CV-00035, 2023 WL 3190403 (W.D. Va. May 1, 2023).

Much like Count V, the Court finds insufficient factual information to determine whether the misrepresentations were outside of the contract, when and where the negotiations took place and if the statements were made negligently. The problem also remains that no reliance or damages exist separate and apart from Avondale or for Andris as an officer of Avondale. Therefore, Count VI will be dismissed without prejudice for failure to state a claim and with prejudice as to Andris.

### C. Count VIII: Rescission (in the alternative)

In Count VIII, plaintiffs allege that Capital Solutions made false representations of material fact to Avondale and Andris when it: (1) disguised an otherwise usurious interest rate as a weekly service charge; (2) stated that if it charged fees that transcend the limit of validity, it would refund the excess to seller; (3) stated in the Loan Agreement that it would charge the service charge on the face amount of the purchased account, or the amount due at the time of purchase; (4) stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account reached 90 days; and (5) when it included a choice of law provision for Florida law in the Guaranty despite a conflicting provision in the Loan Agreement. (Doc. #25 at ¶¶ 149-153.) The SAC alleges:

> 154. In reliance on Capital Solutions' misrepresentations, Andris, on behalf of Avondale, entered into the Loan Agreement. *See* **Ex. 1.**

155.   Capital   Solutions'   multiple misrepresentations hid the true usurious nature of the Loan Agreement, deprived Andris and Avondale of their remedies under the Loan Agreement, and resulted in Avondale being charged in excess of the agreed amount.

156. Avondale and Andris seek to rescind the Loan Agreement as it has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for recission would be.

(Id. at 154-156.)

"'Equitable rescission is a remedy which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties.'" Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co., 3 F.4th 605, 614, 2021 WL 2655043 (4th Cir. 2021) (citation omitted).  If rescission is granted, the contract is terminated.  Young-Allen v. Bank of Am., N.A., 298 Va. 462, 468, 839 S.E. 2d 897, 900 (2020).  "Rescission based upon a breach of contract is not a cause of action in itself, but rather a remedy."  Id. at 469 (collecting cases).  It "presupposes" a breach of contract claim that has caused plaintiff harm.  Montalla, LLC v. Commonwealth, 303 Va. 150, 168, 900 S.E. 2d 290, 299 (2024) (emphasis added).

"'The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of

obligation.'" <u>Sunrise Continuing Care, LLC v. Wright</u>, 277 Va. 148, 154, 671 S.E. 2d 132, 135 (2009) (quoting <u>Filak v. George</u>, 267 Va. 612, 614 (2004)).  Unlike Count II, where plaintiffs allege a specific breach, there are no allegations of a legally enforceable obligation that was violated by Avondale to support a rescission. Therefore, Count VIII will be dismissed without prejudice as to Avondale and with prejudice as to Andris who was not personally a party to the Loan Agreement.

**D. Standing**

Andris has not plausibly pled standing for these counts. Plaintiff argues that Andris suffered a personal injury distinct from Avondale by agreeing to the Guaranty and subjecting himself to financial liability.  The Court previously dismissed all five counts as to Andris without prejudice finding no personal injury alleged as to Andris separate from Avondale.  <u>Avondale</u>, 2025 WL 2390711, at *4.  Andris can only have personal liability under the Guaranty, which has not been drawn on.  Therefore, he has no standing.

Accordingly, it is now

**ORDERED:**

1. Defendant's Partial Motion to Dismiss Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint (Doc. #27) is **GRANTED** as follows:

   A. Counts I and III are dismissed with prejudice.

B.    Counts V, VI, and VIII are dismissed with prejudice as to Robert Andris only.

C.    Counts V, VI, and VIII dismissed without prejudice as to Avondale.

2. The Clerk shall withhold judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of January 2026.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record