**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

AVONDALE DÉCOR, LLC, et al.

    Plaintiff,

v.

CAPITAL SOLUTIONS BANCORP,
LLC,

    Defendant.

Case No.: 2:25-cv-450-JES-NPM

**JURY TRIAL DEMANDED**

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff Avondale Décor LLC, by and through the undersigned counsel, file this Third Amended Complaint against Defendant Capital Solutions Bancorp, LLC, and state as follows:

**PARTIES**

1.      Plaintiff Avondale Décor, LLC ("Avondale") is a Virginia limited liability company that has its principal place of business in Louisa, Virginia. Avondale's sole member is Linda Andris. Linda Andris is a citizen of the United States who is permanently domiciled in Bergen County, New Jersey.

2.      Plaintiff Robert Andris ("Andris") is a natural person and a citizen of the state of Virginia, who is domiciled in Albemarle County, Virginia.

3.      Defendant Capital Solutions Bancorp, LLC ("Capital Solutions") is a Florida limited liability company whose principal address is in Fort Myers, Florida. Upon information and belief, Capital Solutions' sole members are Carlos Weil and Pablo Simko. Carlos Weil is a citizen of the United States who is permanently domiciled in Lee County, Florida. Pablo Simko is a citizen of the United States who is permanently domiciled in Lee County, Florida.

1

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the Defendant, a Florida limited liability corporation whose members are domiciled in Florida, is subject to the personal jurisdiction of this district and a substantial part of the events giving rise to the claim occurred in this district.

6.      All conditions precedent to the bringing of this action have either been performed or they have been waived.

## FACTS

### I.    Background

7.      Avondale is a company that designs and manufactures a variety of home décor.

8.      Capital Solutions is a company that provides financing to other companies using loans and purported factoring agreements.

9.      Capital Solutions represents to prospective and existing customers that its model is distinct from regular loan agreements by stating that there is no guarantee of payment from its borrowers.

10.     In fact, on its public website (located at https://capitalsolutionsbancorp.com/), under its subpage titled "How It Works" Capital Solutions affirmatively represents that it assumes the risk of non-payment, not the borrowers to whom it lends. *See* **Image 1**.

2

11. Specifically Capital Solutions represents that "if one of your client's goes bankrupt, we take the loss, not you!" *See id.*



**Image 1[1]**

12. However, as will be expounded upon below, this is a misrepresentation of the manner in which Capital Solutions operates and shifts the burden of non-payment back onto its borrowers, such as Avondale.

## II. The Loan Agreement

13. On February 12, 2019, Avondale, through its owner, Robert Andris ("Andris"), and his sister, and Capital Solutions agreed to enter into the Accounts Receivable Purchase Agreement (the "Loan Agreement"). *See* Loan Agreement, **Exhibit 1.**

14. In the communications leading up to the Loan Agreement Capital Solutions continued to maintain that it would bear the risk of non-payment.

15. Specifically, within the cover letter at the beginning of the Loan Agreement of February 12, 2019, Capital Solutions C.E.O, Carlos Weil, again represented that it was "not asking

---

[1] Captured from CSB's commercial website at (https://capitalsolutionsbancorp.com/how-it-works/) on May 24, 2025. A complete Exhibit showing the page can be found at **Exhibit 7**.

3

you guaranty the creditworthiness of your customers nor are we asking that you even guaranty the creditworthiness of your own company." **Ex. 1**, p. 2.

16.    Mr. Weil in this letter also recognized that some of the fees described within the Loan Agreement "deserves some explanation" but never provided any.

17.    These false representations were then directly contradicted by the Guaranty that Andris was required to executed in order for Avondale to secure any financing.

18.    Though the Loan Agreement holds itself out to be a non-recourse accounts receivable purchase agreement, in reality it is a disguised loan agreement, which attempts to charge the debtor with usurious interest rates.

19.    Under the Loan Agreement, payments on each account receivable were to be made directly to Capital Solutions.

20.    Paragraph 1.1.2 of the Loan Agreement purports to describe itself as a non-recourse factoring agreement by claiming that Capital Solutions is subject to risk of non-payment of a purchased account receivable in the event the account debtor becomes insolvent.

21.    This representation in Paragraph 1.1.2 is apparently line with Capital Solutions advertisements and statements on its public commercial website, however for the reasons set forth below, this risk of non-payment for Capital Solutions is illusory, and the Loan Agreement creates an unconditional obligation for repayment of the amounts advanced to Avondale. *See* **Ex. 1**., p. 4; *see also* **Image 1**.

22.    At the same time and as part of the same transaction as the Loan Agreement, Andris was required to entered into the Individual Guaranty and Security Agreement ("Guaranty Clauses") with Capital Solutions. *See* **Ex. 1**, p. 27.

4

23.     Under the Guaranty Clauses, Andris was personally obligated to guarantee the payment of any accounts receivable in the case of any default. *See id*, p. 28.

24.     Specifically, the Guaranty Clauses provided that:

Guarantor unconditionally and irrevocably guarantees to [Capital Solutions] the prompt payment and performance of the Guaranteed Obligations whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, ***this being a guaranty of payment*** and not a guaranty of collection.

**Ex. 1**, p. 27.

25.     As defined in the Guaranty Clauses, "Guaranteed Obligations" is defined as:

All present and future obligations of [Avondale] to [Capital Solutions], including but not limited to obligations arising out of the Credit Documents including fees and other compensation to be paid to [Capital Solutions], that, but for the filing of a petition under the Bankruptcy Code with respect to [Avondale], would have accrued on any such obligations, and attorneys' fees.

**Ex. 1**, p. 28.

26.     Additionally, in practice, during the term of the Loan Agreement, Capital Solutions advanced funds to Avondale, and in return they would directly be paid by the vendor for each respective invoice.

27.     This payment would be received by Capital Solutions in Florida, where it would take its calculated deduction, before sending the remaining amount to Avondale.

28.     If an invoice took longer than average to be paid by the vendor, Capital Solutions would arbitrarily declare that invoice void, and use a more recent invoice to pay off its balance of fees.

29.     This structure ensured that there was no risk of non-payment for the loans given by Capital Solutions under the Loan Agreement.

30.     Moreover, Capital Solutions created a "Reserve Account" as discussed within section 2 of the Loan Agreement, wherein Capital Solutions would reserve 20% of the face value,

which could be charged against by Capital Solutions, in the event any account debtors were insolvent or otherwise in default, to further eliminate any risk of non-payment of the loans under its Loan Agreement with Avondale. *See* **Ex. 1**, p. 5-6.

31.    Capital Solutions attempted to describe the Loan Agreement as a factoring agreement accompanied by a personal guaranty in an attempt to disguise the true nature of the Loan Agreement.

32.    Under the Loan Agreement, Avondale, as the seller, bore substantially all, if not all, the risk of loss, as Capital Solutions has near full recourse against Avondale and its owners whenever there is any loss, whether by Andris' personal guaranty or Capital Solutions' ability to charge against the reserves.

33.    Accordingly, the Loan Agreement is subject to usury laws.

34.    Under the Loan Agreement, Avondale would receive an advanced amount in exchange for transferring its accounts receivable to Capital Solutions, which would receive the full amount of its investment in return upon maturity of the receivables. *See* **Ex. 1**, p. 4.

35.    Additionally, Avondale would be charged a service charge of 0.77% of the face amount of the purchased account every week until the date the purchased account is closed. *See* **Ex. 1**, p. 23.

36.    The Loan Agreement defines a "week" as the general seven-day period. *See* **Ex. 1**, p. 23.

37.    Therefore, if the account was closed on day four or five of a week, the fee is charged just the same as if the account was closed on day one. *See id.*

38.    The service charge of 0.77% was applied to the face amount of the invoice, despite twenty percent of the face amount being reserved by Capital Solutions.

6

39.    Therefore, a service charge of 0.77% applied to the face amount, of which Avondale only receives 80%, is equal to an APR of 50.05%.

40.    Depending on the timing of the repayment of the advanced funds and when in the "week" the account is closed, the interest rate would be even higher. *See id.*

41.    Further, Capital Solutions adds an additional three "clearance days," impacting the fees being charged, despite the payment being processed immediately. *See id.*, p. 8.

42.    Even if the service charge of 0.77% was applied to the amount advanced to Avondale, the service charge would be equal to no less than an APR of 40.4%.

43.    Upon information and belief, Capital Solutions knew that the interest rate charged weekly would far exceed the maximum interest rate for non-usurious loans.

44.    Avondale was also responsible for repurchasing any accounts on demand by Capital Solutions. *See* **Ex. 1**, p. 7.

45.    On April 20, 2020, Avondale and Capital Solutions entered into the Second Amendment to the Loan Agreement. *See* Second Amendment, **Exhibit 2.**

46.    Under the Second Amendment, which was applied retroactively, Avondale was required to repurchase any account, at the value of the unpaid face amount of the account at Capital Solutions' demand. *See* **Ex. 2**, p. 2.

47.    On January 1, 2022, Avondale and Capital Solutions entered into the Third Amendment to the Loan Agreement. *See* Third Amendment, **Exhibit 3.**

48.    The Third Amendment added a monthly inflation adjustment, which adjusted the service charge based on changes to the Consumer Price Index, resulting in an even higher effective interest rate. *See id.*

49.     To date, Avondale has already transferred Capital Solutions $13,883,951.50 in invoices "purchased" and incurred $1,256,964.00 in total interest from service fees, despite several of these invoices being paid within no more than a couple of months.

### III.     Overcharging of the Service Charge

50.     According to the Loan Agreement, the "service charge" was calculated by multiplying 0.77% by the "face amount" of a purchased account. *See* **Ex. 1**, p. 23.

51.     The Loan Agreement defines "face amount" as the amount due on an Account at the time of purchase. *See* **Ex. 1**, p. 21.

52.     Capital Solutions regularly diluted the face value of the invoice when calculating the amount to advance to account for any expected chargebacks from retailers.

53.     The result of this dilution is a lower face amount for each account. *See* **Ex. 1**, p. 21.

54.     Capital Solutions regularly used the lower face amount to calculate the amount advanced to Avondale.

55.     However, Capital Solutions, when determining the service charge, regularly calculated the service charge using the undiluted face amount, resulting in frequent overcharged service fees, based on otherwise disregarded face values.

56.     Over the course of the Loan Agreement, Capital Solutions has overcharged Avondale a minimum of $192,590.98.

### IV.     Retroactive Misapplication of Late Payment Fee

57.     Under the Loan Agreement, Avondale was responsible for paying the "Late Payment Fee on the date on which a Purchased Account is closed." **Ex. 1**, p. 7.

58.     The Loan Agreement states the Late Payment Fee, defined as 0.95% per week, would be "multiplied by the Face Amount of a Purchased Account, for each [week]…that any

8

portion thereof remains unpaid, computed from the [ninety days from date on which a Purchased Account was purchased] to and concluding the date on which a Purchased Account is Closed." *See id.*, p. 21.

59.     Therefore, under the Loan Agreement, Capital Solutions was only supposed to apply the late payment fee for each subsequent week after the "Late Payment Date."

60.     However, Capital Solutions, when applying the late payment fee, regularly applied the charge retroactively, applying the late payment fee percentage for every week the account remained open, dating back to the date the account was "purchased."

61.     In effect, Capital Solutions was applying a late payment fee on accounts for dates when the accounts were not even past due, in direct contradiction with the process outlined in the Loan Agreement.

## V.    Secured Promissory Note

62.     By September 2023, Avondale and Capital Solutions no longer wished to continue further invoice transactions.

63.     On September 19, 2023, Avondale and Capital Solutions agreed to the Secured Promissory Note, where Avondale would pay the outstanding balance on all the remaining invoices. *See* Promissory Note, **Exhibit 4.**

64.     Under the Promissory Note, Avondale would pay a total balance of $657,540.00. *See* **Ex. 4.**

65.     In a payment schedule provided by Capital Solutions to Avondale, Capital Solutions divided the total balance into separate balances of principal and interest. *See* Loan Schedule, **Exhibit 5.**

9

66.     Specifically, in the payment schedule, Capital Solutions designated $267,540.00 as scheduled interest on the $390,000.00 principal. *See* **Ex. 5.**

67.     Further, the payment schedule specifically designates the arrangement on Capital Solutions' asset list as a loan. *See* **Ex. 5.**

68.     On September 6, 2024, Avondale and Capital Solutions agreed to the First Amendment to the Promissory Note. *See* Note Amendment, **Exhibit 6.**

69.     To date, Avondale has paid $617,070.00 of the total owed under the Promissory Note, including over $200,000.00 in interest payments. *See* **Ex. 5.**

<u>**COUNT I**</u>
**BREACH OF CONTRACT**
*(Avondale against Capital Solutions)*

70.     Plaintiff incorporates and realleges paragraphs 1 through 69 above, as though fully set forth herein.

71.     On February 12, 2019, Avondale and Capital Solutions agreed to the subject Loan Agreement. *See* **Ex. 1**.

72.     Under the Loan Agreement, Avondale would be charged a service charge of 0.77% of the face amount of the purchased account upon closure of the account. *See* **Ex. 1**, p. 23.

73.     The face amount is defined in the Loan Agreement as the amount due on an Account at the time of purchase. *See* **Ex. 1**, p. 21.

74.     To account for any chargebacks from retailers, Capital Solutions regularly diluted the face value of the invoice, resulting in a lower face amount.

75.     Pursuant to the Loan Agreement, Capital Solutions used the discounted face amount when calculating the amount advanced to Avondale.

10

76. However, in breach of the Loan Agreement's explicit formula for calculating the service charge, Capital Solutions calculated the service charge using the original undiluted face amount, which was no longer being used.

77. Additionally, under the Loan Agreement, Capital Solutions was authorized to charge a late payment on all past due amounts due from Avondale. *See* **Ex. 1**, p. 7.

78. The Loan Agreement specifically states that Capital Solutions would multiply the late payment fee "by the Face Amount of a Purchased Account, for each [week]…that any portion thereof remains unpaid, computed from the [ninety days from the date on which a Purchased Account was purchased] to and concluding the date on which a Purchased Account is Closed." *See* **Ex. 1**, p. 21.

79. However, in breach of the Loan Agreement's specific process for applying the late payment fee, Capital Solutions regularly applied the charge retroactively, applying the late payment fee percentage for every week the account remained open, dating back to the date the account was "purchased."

80. As a result of Capital Solutions' breach of the Loan Agreement's terms regarding the calculation of the service charge and application of the late payment fee, Avondale has suffered damages, being charged incorrect retroactive late payment fees and being otherwise overcharged a minimum of $192,590.98 throughout the term of the Loan Agreement.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

11

**COUNT II**
**UNJUST ENRICHMENT**
*(Avondale against Capital Solutions)*
*(Plead in the Alternative)*

81.    Plaintiffs incorporate and reallege paragraphs 1 through 69 above, as though fully set forth herein.

82.    Virginia law recognizes a claim for unjust enrichment when "(1) plaintiff conferred a benefit on defendant; (2) defendant knew of the benefit and should reasonably have expected to repay plaintiff; and (3) defendant accepted or retained the benefit without paying for its value." *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486 (Va. 2020).

83.    Avondale conferred a benefit to Capital Solutions when it transferred Capital Solutions $13,883,951.50 in invoices "purchased," and spent $1,256,964.00 in interest payments, directly to Capital Solutions.

84.    Throughout the duration of the parties relationship, Capital Solutions regularly misapplied the service charge late payment fee, being resulting in Avondale being charged incorrect retroactive late payment fees and being otherwise overcharged a minimum of $192,590.98 throughout the term of the Loan Agreement.

85.    Capital Solutions voluntarily accepted the benefit of the total $15,140,915.00 in invoices and interest paid, without paying Avondale back any of the amount wrongfully charged.

86.    Therefore, Capital Solutions should have reasonably expected to pay Avondale the amount wrongfully charged.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT III
### FRAUDULENT MISREPRESENTATION
*(Avondale against Capital Solutions)*

87.    Plaintiff incorporates and realleges paragraphs 1 through 69 above, as though fully set forth herein.

88.    Capital Solutions made a representation of material fact to Avondale when it stated in its advertisements and communications with Avondale that it "assume[d] the risk for non-payment." *See* **Image 1**.

89.    Capital Solutions made a representation of material fact to Avondale when it disguised an otherwise usurious interest rate as a weekly "service charge." *See* **Ex. 1**, p. 23.

90.    Capital Solutions made a representation of material fact to Avondale when it stated that in the event it charged fees "transcending the limit of validity," it would refund "such excess to Seller." *See* **Ex. 1**, p. 15.

91.    Capital Solutions made a representation of material fact to Avondale when it stated it would only charge 0.77% per week with no "nickel and dime fees." *See* **Ex. 1**, p. 1.

92.    Capital Solutions made a representation of material fact to Avondale when it stated in the Loan Agreement that it would charge the service charge on the undiluted face amount of the purchased account, or the amount due at time of purchase. *See* **Ex. 1**, p. 21, 23.

93.    Capital Solutions made a representation of material fact to Avondale when it stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account became due, rather than retrospectively. *See* **Ex. 1**, p. 21.

94.    At the time Capital Solutions made these representations, it knew that these representations were false.

13

95.    Capital Solutions made these representations during negotiations for, and within, the Loan Agreement, in an effort to induce Avondale to agree to the Loan Agreement.

96.    Avondale relied on these representations by Capital Solutions in agreeing to the Loan Agreement. *See* **Ex. 1**.

97.    As a result of Avondale justifiable reliance, Avondale has suffered damages, with Avondale having spent $1,256,964.00 in interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
*(Avondale against Capital Solutions)*
*(Plead in the Alternative)*

98.    Plaintiff incorporates and realleges paragraphs 1 through 69 above, as though fully set forth herein.

99.    Capital Solutions made a representation of material fact to Avondale when it stated in its advertisements and communications with Avondale that it "assume[d] the risk for non-payment." *See* **Image 1**.

100.    Capital Solutions made a representation of material fact to Avondale when it disguised an otherwise usurious interest rate as a weekly "service charge." *See* **Ex. 1**, p. 23.

14

101.    Capital Solutions made a representation of material fact to Avondale when it stated that in the event it charged fees "transcending the limit of validity," it would refund "such excess to Seller." *See* **Ex. 1**, p. 15.

102.    Capital Solutions made a representation of material fact to Avondale when it stated it would only charge 0.77% per week with no "nickel and dime fees." *See* **Ex. 1**, p. 1.

103.    Capital Solutions made a representation of material fact to Avondale when it stated in the Loan Agreement that it would charge the service charge on the face amount of the purchased account, or the amount due at the time of purchase. *See* **Ex. 1**, p. 21, 23.

104.    Capital Solutions made a representation of material fact to Avondale when it stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account became due. *See* **Ex. 1**, p. 21.

105.    Capital Solutions made a representation of material fact to Avondale when it included a choice of law provision for Florida Law in the Guaranty Clauses, despite the conflicting provision in the Loan Agreement. *See* **Ex. 1**, p. 20.

106.    At the time the representations were made, Capital Solutions owed a duty to Avondale to truthfully state the terms of the Loan Agreement, and how they would be applied.

107.    When Capital Solutions made these statements, it knew or should have known these statements were false.

108.    Capital Solutions made these representations during negotiations for, and within, the Loan Agreement, in an effort to induce Avondale to agree to the Loan Agreement.

109.    Avondale relied on these representations by Capital Solutions in agreeing to the Loan Agreement. *See* **Ex. 1**.

15

110. As a result of Avondale's justifiable reliance, Avondale has suffered damages, with Avondale having spent $1,256,964.00 in interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

### COUNT V
### INJUNCTIVE RELIEF
*(Avondale against Capital Solutions)*

111. Plaintiff incorporates and realleges paragraphs 1 through 69 above, as though fully set forth herein.

112. As of the filing of this Complaint, Capital Solutions is continuing to enforce both the Loan Agreement and the accompanying Promissory Note. *See* **Ex. 5.**

113. Capital Solutions' actions have caused Avondale to suffer damages, including lost income, additional expenses, and missed financial opportunities.

114. As a result of the lost wages and missed opportunities, Avondale is in danger of insolvency.

115. Therefore, an injunction barring Capital Solutions from enforcing the Loan Agreement and the Promissory Note is necessary to protect Avondale from the irreparable danger of pending potential insolvency.

WHEREFORE, Plaintiff Avondale Décor, LLC demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) an injunction barring Capital Solutions from continued enforcement of the Loan Agreement and Promissory Note; (b) costs, interest, and reasonable attorney's fees; and (c) all other relief that this Court deems just and proper.

**COUNT VI**
**RESCISSION**
*(Avondale against Capital Solutions)*
*(Plead in the Alternative)*

116.    Plaintiff incorporates and realleges paragraphs 1 through 69 above, as though fully set forth herein.

117.    Capital Solutions made a false representation of material fact to Avondale when it stated in its advertisements and communications with Avondale that it "assume[d] the risk for non-payment." *See* **Image 1**.

118.    Capital Solutions made a false representation of material fact to Avondale when it disguised an otherwise usurious interest rate as a weekly "service charge." *See* **Ex. 1**, p. 23.

119.    Capital Solutions made a false representation of material fact to Avondale when it stated that in the event it charged fees "transcending the limit of validity," it would refund "such excess to Seller." *See* **Ex. 1**, p. 15.

120.    Capital Solutions made a false representation of material fact to Avondale when it stated in the Loan Agreement that it would charge the service charge on the face amount of the purchased account, or the amount due at the time of purchase. *See* **Ex. 1**, p. 21, 23.

121.    Capital Solutions made a false representation of material fact to Avondale when it stated in the Loan Agreement that the late payment fee would be applied to each subsequent week after the purchased account reached ninety days. *See* **Ex. 1**, p. 21.

122. In reliance on Capital Solutions' misrepresentations, Andris, on behalf of Avondale, entered into the Loan Agreement. *See* **Ex. 1**.

123. Capital Solutions' multiple misrepresentations hid the true usurious nature of the Loan Agreement, deprived Andris of its remedies under the Loan Agreement, and resulted in Avondale being charged in excess of the agreed amount.

124. Avondale seek to rescind the Loan Agreement as it has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for recission would be.

125. Rescission of the Loan Agreement, including the Guaranty Clauses, would be fair and equitable, in light of Capital Solutions' multiple fraudulent and wrongful actions, to the detriment of Avondale.

126. Rescission of the Loan Agreement would not unduly burden Capital Solutions.

WHEREFORE, Plaintiff Avondale Décor, LLC demand judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney fees; (c) rescission of the Loan Agreement; and (d) awarding any other relief that this Court deems just and proper.

## <u>COUNT VII</u>
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(<u>Fla. Stat. § 501.201</u> et seq.)**
*(Andris against Capital Solutions)[2]*

127. Plaintiffs incorporate and reallege paragraphs 1 through 69 as though fully set forth herein.

---

[2] While a claim for FDUTPA was previously dismissed without prejudice when brought by Avondale under the Court's holding as to the choice of law provisions, this claim is being brought on behalf of Andris individually pursuant to this Court's Previous holding that "the personal guarantee obligation is governed by Florida law." D.E. 29, p. 12.

18

128. This is an action for actual damages pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

129. The purpose of this act is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

130. Andris is a "consumer" under FDUTPA. *See* § 501.203(7), Fla. Stat.

131. At all times pertinent to the bringing of this action, Capital Solutions was engaged in "trade or commerce," as defined by FDUTPA. *See* § 501.203(8).

132. Therefore, FDUTPA imposes a duty on Capital Solutions to refrain from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat.

133. "FDUTPA violations can occur two ways: (1) *per se*, when premised on the violation of another law proscribing unfair or deceptive practice, or (2) a traditional violation involving some other unfair or deceptive practice." *Tymar Distrib. LLC v. Mitchell Grp. United States, LLC*, 558 F. Supp. 3d 1275, 1289 (S.D. Fla. 2021).

134. In this case, Capital Solutions has committed both *per se* and traditional violations of FDUTPA.

135. Capital Solutions engaged in unconscionable and unfair methods when it stated in its advertisements and communications that it "assume[d] the risk for non-payment" and that "if one of your client's goes bankrupt, we take the loss, not you!", but then required Andris to execute a personal guaranty in order for his company to secure financing. *See* **Image 1**.

136. This personal Guaranty provided that:

Guarantor unconditionally and irrevocably guarantees to [Capital Solutions] the prompt payment and performance of the Guaranteed Obligations whether or not the

19

Guaranteed Obligations are found to be invalid, illegal or unenforceable, ***this being a guaranty of payment*** and not a guaranty of collection.

**Ex. 1**, p. 27.

137.    As defined in the Guaranty Clauses, "Guaranteed Obligations" is defined as:

All present and future obligations of [Avondale] to [Capital Solutions], including but not limited to obligations arising out of the Credit Documents including fees and other compensation to be paid to [Capital Solutions], that, but for the filing of a petition under the Bankruptcy Code with respect to [Avondale], would have accrued on any such obligations, and attorneys' fees.

**Ex. 1**, p. 28.

138.    Capital Solutions engaged in unconscionable and unfair methods when it charged, and subjected Andris to a personal guaranty, on a loan with interest rates higher than the legal limit for non-usurious loans established in Fla. Stat. § 687.03(1).

139.    Capital Solutions engaged in unconscionable and unfair methods when it disguised an otherwise usurious interest rate as a weekly "service charge" to avoid liability under Florida's usury laws. *See* **Ex. 1**, p. 23.

140.    Capital Solutions engaged in unconscionable and unfair methods when it included a Virginia choice of law provision in the Loan Agreement, despite the Agreement being drafted and performed in Florida and Guaranty Clauses containing a competing Florida choice of law provision, in an effort to further exculpate themselves from liability under Florida's usury laws.

141.    Capital Solutions engaged in unconscionable and unfair methods when it required an additional three "clearance days," affecting the fees being charged, despite the payments being processed immediately. *See* **Ex. 1**, p. 8.

142.    Capital Solutions engaged in further unconscionable and unfair methods when it calculated the service fee using the original face amount of the invoice, rather than the diluted value used to calculate advancements made to Avondale.

20

143.   Finally, Capital Solutions engaged in unconscionable and unfair methods when it applied the late payment fee retroactively, in violation of the process defined in the Loan Agreement, resulting in late payment fees for times when the accounts were not past due. *See* **Ex. 1**, p. 21.

144.   As a result of these unfair and unconscionable acts, Capital Solutions has caused Andris to suffer damages, being forced to personally guaranty $1,256,964.00 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00.

145.   "In any civil litigation resulting from an act or practice involving a violation of [FDUTPA] . . . the prevailing party . . . may receive his or her reasonable attorney's fees and costs from the nonprevailing party." § 501.2105(1), Fla. Stat.

WHEREFORE, Plaintiff Robert Andris demands judgment against Defendant Capital Solutions Bancorp, LLC for: (a) damages, in an amount to be determined at trial; (b) costs, interest, and reasonable attorney's fees; and (c) any such further relief that this Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiffs demand trial by jury of all issues so triable.

Dated: June 11, 2026

Respectfully submitted,

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
Ryan M. Sawal, Esq.

21

Florida Bar No. 1038500
rsawal@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiffs*

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
Eduardo A. Maura, Esq.
Florida Bar No. 91303

22