**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

AVONDALE DECOR, LLC et al.,    |

    Plaintiffs,    |

v.    |    Case No. 2:25-cv-00450-KCD

CAPITAL SOLUTIONS BANCORP, LLC,  |

    Defendant.    |

_____|

**PLAINTIFFS' RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS COUNT VII OF PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs Avondale Decor, LLC ("Avondale") and Robert J. Andris ("Andris"), through the undersigned attorneys, submit this response in opposition to Defendant Capital Solutions Bancorp, LLC's ("CSB") Partial Motion to Dismiss Count VII of Plaintiffs' Third Amended Complaint (the "Motion") [D.E. 41], and state:

**FACTUAL BACKGROUND**

Avondale is a company that designs and manufactures a variety of home décor, while CSB provides financing to other companies using loans and purported factoring agreements. *See* Third Amended Complaint, D.E. 40, ¶¶ 7-8. CSB represents to consumers that, unlike with regular loan agreements, it assumes the risk of non-payment, stating: "If one of your clients goes bankrupt, we take the loss, not you!" *See id.*, ¶¶ 9-11. However, this is not the manner in which CSB operates; rather, it shifts the burden of non-payment back onto its borrowers, like Avondale. *See id.*, ¶ 12.

On February 12, 2019, Avondale and CSB entered into an "Accounts Receivable Purchase Agreement" (the "Loan Agreement"). *See id.*, ¶ 13. In the communications leading up to the Loan Agreement, CSB reiterated that it would bear the risk of non-payment. *See id.*, ¶ 14. Specifically, a cover letter from Carlos Weil, CEO of CSB, stated that it was not asking Avondale to "guaranty

1

the creditworthiness of your customers" nor "that you even guaranty the creditworthiness of your own company." *See id.*, ¶ 15. These representations, however, were contradicted by the Individual Guaranty and Security Agreement (the "Guaranty") that Andris was required to execute in order for Avondale to secure financing. *See id.*, ¶¶ 17, 22. Indeed, under the Guaranty, Andris was obliged to personally guarantee the payment of any accounts receivable in the case of any default. *See id.*, ¶ 23. Specifically, the Guaranty provided that Andris "unconditionally and irrevocably guarantees to [CSB] the prompt payment and performance of the Guaranteed Obligations[1] whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, this being a guaranty of payment and not a guaranty of collection." *See id.*, ¶ 24.

While the Loan Agreement styles itself as non-recourse for account debtor insolvency, the risk transfer is illusory, and the deal is a disguised usurious loan. *See id.*, ¶¶ 18-21. During the term of the Loan Agreement, CSB would advance funds to Avondale while the payments on receivables went directly from the vendors to CSB, which applied deductions and remitted the net proceeds to Avondale. *See id.*, ¶¶ 26-27. Notably, if an invoice took longer than average to be paid, CSB would void such invoice and use newer invoices to cover fees, ensuring no real risk of non-payment. *See id.*, ¶¶ 28-29. Additionally, CSB created a "Reserve Account" that retained 20% of the face value, which could be charged against by CSB in the event of account debtor insolvency or any default, further eliminating any risk of non-payment. *See id.*, ¶ 30. Under the Loan Agreement, Avondale bore substantially all the risk of loss, since CSB had near full recourse against Plaintiffs, whether through Andris' personal guaranty or CSB's ability to charge against the reserves. *See id.*, ¶ 32.

---

[1] "Guaranteed Obligations" are defined in the Guaranty as: "All present and future obligations of [Avondale] to [CSB], including but not limited to obligations arising out of the Credit Documents, including fees and other compensation to be paid to [CSB], that . . . would have accrued on any such obligations, and attorneys' fees." *See* D.E. 40, ¶ 25.

2

Under the Loan Agreement, Avondale was charged a weekly "service charge" of 0.77% of the face amount until account closure. *See id.*, ¶ 35. This 0.77% service charge was applied to the face amount of the invoice, despite 20% of the face amount being reserved by CSB. *See id.*, ¶ 38. A service charge of 0.77% applied to the face amount is equal to an effective APR of 50.05%. *See id.*, ¶ 39. Even if the 0.77% service charge was applied only to the amount advanced to Avondale (80% of the face value), the effective APR would be no less than 40.4%. *See id.*, ¶ 42. Depending on the timing of repayment of the advanced funds and when in the "week" the account was closed, the interest rate would be even higher. *See id.*, ¶ 40. CSB would also add a further three "clearance days," impacting the fees charged, despite the payment being processed immediately. *See id.*, ¶ 41.

Avondale was also obligated to repurchase accounts on demand by CSB, including through amendments expanding full recourse repurchase duties. *See id.*, ¶ 44. On April 20, 2020, Avondale and CSB entered into a Second Amendment, which amended the Loan Agreement to full recourse, deleted non-recourse provisions, and broadened repurchase triggers. *See id.*, ¶¶ 45-46. On January 1, 2022, Avondale and CSB entered into the Third Amendment, which added a Monthly Inflation Adjustment based on CPI, increasing the service charges and therefore the effective interest rate. *See id.*, ¶¶ 47-48. To date, Avondale has transferred to CSB $13,883,951.50 in invoices purchased, and incurred $1,256,964.00 in total interest from service charges, despite several of these invoices being paid within no more than a couple of months. *See id.*, ¶ 49.

During the term of the Loan Agreement, CSB regularly diluted the face amount of invoices to calculate the advances to Avondale, but calculated the service charges using the undiluted face amount, overcharging at least $192,590.98 in service fees. *See id.*, ¶¶ 52-56. CSB also regularly applied Late Payment Fees of 0.95% per week retroactively from the purchase date of the account rather than from ninety days, contrary to the Loan Agreement. *See id.*, ¶¶ 58-61. By September 19,

3

2023, the parties entered into a Secured Promissory Note for $657,540.00, representing the balance on all the remaining invoices. *See id.*, ¶¶ 63-64. The payment schedule provided by CSB allocated $390,000.00 as principal and $267,540.00 as interest and labeled the arrangement as a loan. *See id.*, ¶¶ 65-67. To date, Avondale has paid $617,070.00 of the total owed under the Promissory Note, including over $200,000.00 in interest payments. *See id.*, ¶ 69.

## **PROCEDURAL BACKGROUND**

On May 28, 2025, Plaintiffs filed their initial Complaint against CSB, asserting claims for: (i) criminal usury; (ii) breach of contract; (iii) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (iv) unjust enrichment; and (v) injunctive relief. *See* D.E. 1. On June 2, 2025, Plaintiffs filed an Amended Complaint to include additional facts regarding the citizenship of the parties. *See* D.E. 5. On July 14, 2025, CSB moved to dismiss Counts I and III of Plaintiffs' Amended Complaint, arguing that Virginia law, not Florida law, applied. *See* D.E. 15. On August 18, 2025, the Court granted CSB's motion, dismissing Counts I and III of the Amended Complaint without prejudice. *See* D.E. 17, pp. 6-11. Moreover, the Court *sua sponte* dismissed all counts by Andris without prejudice for lack of standing. *See id.*, pp. 11-12.

On September 8, 2025, Plaintiffs filed their Second Amended Complaint, asserting claims for: (i) criminal usury; (ii) breach of contract; (iii) violation of FDUTPA; (iv) unjust enrichment; (v) fraudulent misrepresentation; (vi) negligent misrepresentation; (vii) injunctive relief; and (viii) rescission. *See* D.E. 25. On September 18, 2025, CSB moved to dismiss Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint, once again arguing that Virginia law, not Florida law, applied, and that Andris lacked standing. *See* D.E. 27. On January 21, 2026, the Court granted CSB's motion, dismissing Counts I, III, V, VI, and VIII of Plaintiffs' Second Amended Complaint. *See* D.E. 29, pp. 4-24. The Court dismissed all counts by Andris with prejudice for lack of standing

4

despite Plaintiffs' contention that he "suffered a personal injury distinct from Avondale by agreeing to the Guaranty and subjecting himself to financial liability." *Id.*, p.24.

On February 11, 2026, Plaintiffs filed a Notice of Appeal of the Court's January 21, 2026, Order. *See* D.E. 30. On April 27, 2026, the United States Court of Appeals for the Eleventh Circuit dismissed the appeal for lack of jurisdiction because "Counts II, IV, and VII were not dismissed," and therefore "the court's order was not a final or appealable decision." D.E. 33, p.2.

On June 11, 2026, Plaintiffs moved the Court for leave to amend. *See* D.E. 38. On June 26, 2026, the Court granted Plaintiffs' motion for leave to amend. *See* D.E. 39. In their Third Amended Complaint ("TAC"), Plaintiffs assert claims for: (i) breach of contract; (ii) unjust enrichment; (iii) fraudulent misrepresentation; (iv) negligent misrepresentation; (v) injunctive relief; (vi) rescission; and (vii) violation of FDUTPA. *See* D.E. 40. On July 8, 2026, CSB moved to dismiss Count VII, the only claim asserted by Andris, for lack of standing. *See* D.E. 41.

## LEGAL STANDARD

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. However, "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). "When ruling on standing at the motion to dismiss stage, a court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Colceriu v. Barbary*, 543 F. Supp. 3d 1277, 1280 (M.D. Fla. 2021). The Court may dismiss a claim "only if it is beyond doubt that a plaintiff can prove no set of facts in support of a claim which would entitle

5

him to relief." *Marshall v. Miller*, 873 F. Supp. 628, 632 (M.D. Fla. 1995). If warranted, "dismissal for lack of standing is not on the merits and must be made without prejudice." *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 678 (11th Cir. 2014).

**ARGUMENT**

**I.      Andris has standing to sue.**

In its Motion, CSB argues "Count VII must be dismissed because Andris has no standing." D.E. 41, p.4. It is well settled that a party has standing to sue when it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Jackson v. Jones*, 179 F.4th 846, 856 (11th Cir. 2026). CSB only challenges the first element, asserting that "Andris has not alleged any personal injury separate from injuries incurred by Avondale." D.E. 41, p.4.

"An injury in fact is one that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical." *Jackson*, 179 F.4th at 856. Prior to summary judgment, meeting these elements of standing is "not a particularly onerous task and will be completed by asserting general factual allegations of injury resulting from the defendant's conduct." *Ford v. Koutoulas*, 348 F.R.D. 724, 734 (M.D. Fla. 2025); *see also Light v. LVNV Funding, LLC*, 176 F.4th 1288, 1294 (11th Cir. 2026) ("At the pleading stage of a case, general factual allegations of injury can suffice to show an injury."). As alleged in the TAC, as a result of the unfair and unconscionable acts described therein, CSB has caused Andris to suffer damages, "being forced to personally guaranty $1,256,964.00 in usurious interest payments, being charged incorrect retroactive late payment fees, being otherwise overcharged $192,590.98 through the term of the Loan Agreement, and being forced to accept the usurious Promissory Note, which required payment of $657,540.00." D.E. 40, ¶ 144.

6

CSB contends that these injuries alleged by Andris in the TAC are insufficient because, as the Court previously noted, he "can only have personal liability under the Guaranty, which has not been drawn on." D.E. 29, p.24. However, Andris' liability does not depend on whether or not the Guaranty has been drawn on. The Guaranty provides that Andris "unconditionally and irrevocably guarantees to [CSB] the prompt payment and performance of the Guaranteed Obligations." D.E. 40, ¶ 24. "If a written contract in unambiguous terms expresses an unconditional guarantee, then the guaranty is absolute." *Bensusan v. Design Eng'g Grp., LLC*, 427 So. 3d 26, 29 (Fla. Dist. Ct. App. 2025). When a guaranty is absolute, "the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." *Jain v. Buchanan Ingersoll & Rooney PC*, 322 So. 3d 1201, 1204 (Fla. Dist. Ct. App. 2021). Therefore, the fact "CSB has not drawn on the Guaranty and CSB is not seeking relief under the Guaranty," does not mean Andris is not liable under the Guaranty. D.E. 41, p.4. Nor does Andris need to wait for the Guaranty to be drawn on or to be sued by CSB to satisfy the "injury in fact" requirement of standing. "An allegation of future injury satisfies this prong of standing so long as the alleged injury is imminent or real and immediate and not merely conjectural or hypothetical." *31 Foster Child. v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003).

"It is hardly controversial that exposure to liability constitutes injury-in-fact." *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 758 (10th Cir. 2010). Indeed, as explained by the Tenth Circuit, "courts—including the Supreme Court, both explicitly and implicitly—have recognized that contingent liability may present an injury in fact." *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1299 (10th Cir. 2008). In *Leavitt*, the Tenth Circuit recognized that although "a contingent liability, by definition, may not arise for a considerable time, if ever, . . . [t]he consequences of a contingent liability . . . may well be actual or imminent." *Id.* In particular, the Tenth Circuit found standing

where the contingent liability produced present effects such as decreased company value, impaired ability to plan revenue use, and chilled discussions with potential investors. *See id.* These present-day economic consequences, caused by the hanging uncertainty of the potential liability, satisfied the injury in fact requirement of standing. *Leavitt* relied on the Supreme Court's opinion in *Clinton v. City of New York*, which found standing where "[t]he revival of a substantial contingent liability immediately and directly affects the borrowing power, financial strength, and fiscal planning of the potential obligor." 524 U.S. 417, 431 (1998). The Court held that these immediate and direct effects constituted actual and imminent injury, even though the ultimate liability remained contingent on future events. Other courts have similarly held. *Cf.*, e.g., *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005) ("[T]he present impact of a future though uncertain harm may establish injury in fact for standing purposes."); *Silva v. Burwell*, 2017 WL 5891753, at *3 (D.N.M. Nov. 28, 2017) ("Contingent liability can constitute an injury-in-fact so long as there is an actual or imminent present impact."); *Bryant v. Holder*, 2011 WL 710693, at *7 (S.D. Miss. Feb. 3, 2011) ("The present detrimental effects on a plaintiff of a future contingent liability can constitute an injury in fact.").

Here, the TAC alleges that Andris personally executed the Guaranty, which unconditionally guarantees prompt payment and performance of Avondale's obligations, and contends that Andris was personally subjected to CSB's unfair and deceptive practices directed at him as guarantor. The TAC further alleges that, as a result of CSB's practices, Andris suffered present, concrete injuries like being forced to personally guaranty $1,256,964.00 in usurious interest payments; exposure to retroactive late fees and overcharges of $192,590.98; as well as being forced to accept the usurious Promissory Note requiring payment of $657,540.00. These allegations establish a particularized and non-derivative injury. The injury is not merely that Avondale paid fees; it is that Andris himself

8

entered a binding personal obligation, an immediate legal detriment and present impairment of his financial position, engineered through CSB's unfair and deceptive acts. That personal obligation alters his rights and liabilities today, not at some uncertain future time, because it is a guaranty of payment, creates security interests in his property, and subjects him directly to CSB's enforcement leverage. *Cf. Renasant Bank v. Park Nat. Corp.*, 2013 WL 1499580, at \*4 (S.D. Ala. Apr. 10, 2013) ("The guarantors' obligation to pay the full debt exists in the present [. . .]. That is a present injury by any definition.").

**II.    Andris has sufficiently alleged "actual damages" under FDUTPA; alternatively, non-monetary relief is available.**

Under FDUTPA, any person who has suffered a loss as a result of a violation of the statute may recover "actual damages." Fla. Stat. § 501.211(2). "Actual damages consist of the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Dawson v. Generac Power Sys., Inc.*, 820 F. Supp. 3d 1306, 1333 (M.D. Fla. 2025). Moreover, "actual damages do not include consequential damages, precluding recovery of future lost profits." *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1115 (M.D. Fla. 2019). "But lost profits already suffered constitute 'actual damages' for purposes of FDUTPA." *Id.*

CSB argues that "[c]ontingent exposure under an undrawn guaranty is not 'actual damages' under FDUTPA." D.E. 41, p.5. However, Count VII asserts that Andris suffered damages by being forced to personally guaranty $1,256,964.00 tied to usurious service charges and retroactive late fees, being overcharged $192,590.98 through the term, and being forced to accept a $657,540.00 Promissory Note. All those claims plausibly allege measurable harm to Andris' pecuniary interests caused by CSB's deceptive scheme. *Cf. Perreault v. Sage Credit Co.*, 2010 WL 1644887, at \*2 (M.D. Fla. Apr. 2, 2010) (holding plaintiff was entitled to recover under FDUTPA loan origination

9

fee, prepayment penalty for prior mortgage loan, and difference between payments plaintiff would have made under prior mortgage and those that plaintiff was obligated to make under adjustable-rate loan). Moreover, while CSB cites *Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006), for the general requirement of actual damages, the Motion identifies no binding authority holding that a guarantor who personally executed a guaranty induced by deceptive practices, and who plausibly alleges being forced into a separate $657,540 note as part of the scheme, fails to allege "actual damages." The TAC alleges a present legal detriment and economic harm to Andris personally, not merely the possibility of future payment.

Even if the Court were to conclude that actual damages are not present, Andris' FDUTPA claim should still not be dismissed as Andris may obtain non-monetary relief.[2] Under the statute, "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211(1). Undoubtedly, Andris is entitled to a declaratory judgment that CSB's acts or practices violate FDUTPA, since such a judgment would necessarily extinguish Andris' liability under the Guaranty. *Cf. Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1332 (10th Cir. 2022) (holding that "a declaratory judgment to avoid contingent liability would provide the basis . . . for Article III standing"). Likewise, Andris is entitled to an injunction against CSB to

---

[2] This is true even if Andris did not specifically request declaratory or injunctive relief. "Requesting an improper remedy is not fatal to a claim. A complaint is sufficient if it alleges facts that establish that the plaintiff is entitled to any relief that the court can grant." *A.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024). In Count VII, Andris requests "any such further relief that this Court deems just and proper," which may include equitable relief. D.E. 40, p.21; *cf. also Doe v. Campbell Drive K-8 Ctr.*, 2024 WL 5165882, at *3 (S.D. Fla. Dec. 19, 2024) (denying motion to dismiss where "in addition to the damages Defendant identifies in its Motion, Plaintiff requests . . . other relief allowed under the law.").

prevent similar acts or practices in the future. *Cf. Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla.

Dist. Ct. App. 2000) (finding "Section 501.211(1), Florida Statutes is broadly worded to authorize

declaratory and injunctive relief even if those remedies might not benefit the individual consumers

who filed the suit"). Thus, Count VII should not be dismissed.

### III.    Dismissal with prejudice is improper.

In its Motion, CSB argues that "Count VII fails to state a claim and should be dismissed,

with prejudice." D.E. 41, p.5. As explained above, however, "dismissal for lack of standing is not

on the merits and must be made without prejudice." *Arthur*, 569 F. App'x at 678; *see also Wiand*

*v. ATC Brokers Ltd.*, 96 F.4th 1303, 1311 (11th Cir. 2024) (noting that "ordinarily, absent standing,

a court must dismiss the plaintiff's claim without prejudice"); *McGee v. Solic. Gen. of Richmond*

*Cnty., Ga.*, 727 F.3d 1322, 1326 (11th Cir. 2013) (same). Consequently, should the Court find any

pleading deficiency in Count VII as to Andris' standing or as to the measure or nature of Andris's

damages or requested relief, dismissal should be without prejudice to permit amendment.

### CONCLUSION

WHEREFORE, Plaintiffs Avondale Decor, LLC and Robert J. Andris respectfully request

the Court enters an order denying Defendant Capital Solutions Bancorp, LLC's Partial Motion to

Dismiss Count VII of Plaintiffs' Third Amended Complaint [D.E. 41] in its entirety, and grant all

other relief this Court deems just, proper, and equitable.

Dated: July 29, 2026

Respectfully submitted,

By: */s/Luis F. Quesada Machado*
Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com

11

Ryan M. Sawal, Esq.
Florida Bar No. 1038500
rsawal@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel and parties of record.

By: */s/Luis F. Quesada Machado*
Luis F. Quesada Machado, Esq.
Florida Bar No. 1010305

12